Case Nos. 14-4765 & 15-3562

# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

BANK OF AMERICA, N.A., successor in interest to MERRILL LYNCH CREDIT CORPORATION, by and through its servicer and attorney-in-fact, PHH MORTGAGE CORPORATION,

　　　Plaintiff-Appellee,

v.

KIRBY WESTHEIMER,

　　　Defendant-Appellant.

---

**On Appeal From the September 21, 2015 Order of the United States District Court For the District of New Jersey, Case No. 3:12-cv-07080-AET-LHG**

---

## APPENDIX VOLUME II OF II
## A-10 to A-272

---

LUM, DRASCO & POSITAN LLC
103 Eisenhower Parkway
Roseland, New Jersey 07068-1049
(973) 403-9000
Paul A. Sandars, III, Esq.
Attorney for Defendant-Appellant, Kirby Westheimer

APPEAL,CLOSED,STAYED

**U.S. District Court**
**District of New Jersey [LIVE] (Trenton)**
**CIVIL DOCKET FOR CASE #: 3:12-cv-07080-AET-LHG**

| | |
|---|---|
| BANK OF AMERICA, N.A. v. WESTHEIMER et al | Date Filed: 11/14/2012 |
| Assigned to: Judge Anne E. Thompson | Date Terminated: 02/28/2014 |
| Referred to: Magistrate Judge Lois H. Goodman | Jury Demand: None |
| Case in other court: Third Circuit, 14-04765 | Nature of Suit: 220 Real Property: |
| 3d Cir. USCA, 15-03622 | Foreclosure |
| Cause: 28:1345 Foreclosure | Jurisdiction: Diversity |

**Plaintiff**

**BANK OF AMERICA, N.A.**
*successor in interest to MERRILL*
*LYNCH CREDIT CORPORATION, by*
*and through its servicer and attorney-in-*
*fact, PHH MORTGAGE*
*CORPORATION*

represented by **JONATHAN PETER VUOTTO**
RIKER DANZIG
HEADQUARTERS PLAZA
ONE SPEEDWELL AVENUE
P.O. BOX 1981
MORRISTOWN, NJ 07962
973-538-0800
Email: jvuotto@riker.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**KIRBY WESTHEIMER**

represented by **KEVIN J. O'CONNOR**
LUM, DRASCO & POSITAN, LLC.
103 EISENHOWER PARKWAY
ROSELAND, NJ 07068-1049
(973) 403-9000
Email: koconnor@lumlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**PAUL A. SANDARS , III**
LUM, DRASCO & POSITAN LLC
103 EISENHOWER PARKWAY
ROSELAND, NJ 07068
(973) 403-9000
Fax: (973) 403-9021
Email: psandars@lumlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

A-10

**PAUL J. LINKER**
GRUHIN & GRUHIN, P.A.
155 Prospect Avenue
Suite 100
West Orange, NJ 07052
973-325-7000
Email: sgruhin@gruhinlaw.com
*TERMINATED: 10/15/2013*
*ATTORNEY TO BE NOTICED*

**Defendant**

**JOHN DOE #1 through JOHN DOE #40, inclusive**

**Counter Claimant**

**KIRBY WESTHEIMER**              represented by **PAUL A. SANDARS , III**
                                                (See above for address)
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

                                                **PAUL J. LINKER**
                                                (See above for address)
                                                *TERMINATED: 10/15/2013*
                                                *ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**KIRBY WESTHEIMER**              represented by **PAUL A. SANDARS , III**
                                                (See above for address)
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

                                                **PAUL J. LINKER**
                                                (See above for address)
                                                *TERMINATED: 10/15/2013*
                                                *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 11/14/2012 | 1 | COMPLAINT against JOHN DOE #1 through JOHN DOE #40, inclusive, KIRBY WESTHEIMER ( Filing fee $ 350 receipt number 4671643), filed by BANK OF AMERICA, N.A.. (Attachments: # 1 Civil Cover Sheet)(kas, ) (Entered: 11/15/2012) |
| 11/14/2012 | 3 | Corporate Disclosure Statement by BANK OF AMERICA, N.A. identifying NONE as Corporate Parent. (kas, ) (Entered: 11/15/2012) |
| 11/15/2012 | 2 | SUMMONS ISSUED as to KIRBY WESTHEIMER Attached is the official court Summons, please fill out Defendant and Plaintiffs attorney information and serve. |

A-11

| | | Issued By *KIM STILLMAN* (kas, ) (Entered: 11/15/2012) |
|---|---|---|
| 12/04/2012 | 4 | AFFIDAVIT of Service for Summons, Complaint and Civil Cover Sheet served on Kirby Westheimer on 11/28/2012, filed by BANK OF AMERICA, N.A.. (VUOTTO, JONATHAN) (Entered: 12/04/2012) |
| 12/18/2012 | 5 | NOTICE of Lis Pendens by BANK OF AMERICA, N.A. (VUOTTO, JONATHAN) (Entered: 12/18/2012) |
| 01/16/2013 | 6 | STIPULATION *Extending Defendant's Time to Answer or Otherwise Move with Respect to the Verified Complaint* by KIRBY WESTHEIMER. (LINKER, PAUL) (Entered: 01/16/2013) |
| 01/17/2013 | | CLERK'S QUALITY CONTROL MESSAGE - The Stipulation 6 submitted by Paul Linker on 1/16/2013 must be executed by a Judicial Officer before filing. Please forward to the appropriate Judicial Officer in accordance with his/her preferred practice as found on our website. This submission will remain on the docket unless otherwise ordered by the court. This message is for informational purposes only. (kas, ) (Entered: 01/17/2013) |
| 01/17/2013 | 7 | STIPULATION AND ORDER extending Defendant's time to answer or otherwise move with respect to the complaint through 2/15/2013. Signed by Magistrate Judge Lois H. Goodman on 1/17/2013. (eaj) (Entered: 01/17/2013) |
| 02/15/2013 | 8 | *Kirby Westheimer's* ANSWER to Complaint , *Affirmative Defenses and*, COUNTERCLAIM *against Bank of America, N.A., et al., as to Complaint of Plaintiffs* against KIRBY WESTHEIMER by KIRBY WESTHEIMER.(LINKER, PAUL) (Entered: 02/15/2013) |
| 03/08/2013 | 9 | STIPULATION re 8 Answer to Complaint, Counterclaim by BANK OF AMERICA, N.A.. (VUOTTO, JONATHAN) (Entered: 03/08/2013) |
| 03/11/2013 | | CLERK'S QUALITY CONTROL MESSAGE - The Stipulation 9 submitted by Jonathan Vuotto on 3/8/2013 must be executed by a Judicial Officer before filing. Please forward to the appropriate Judicial Officer in accordance with his/her preferred practice as found on our website. This submission will remain on the docket unless otherwise ordered by the court. This message is for informational purposes only. (kas, ) (Entered: 03/11/2013) |
| 03/11/2013 | 10 | Letter re QC - Proposed Orders, 8 Answer to Complaint, Counterclaim. (Attachments: # 1 Text of Proposed Order Stipulation & Consent Order Extending Plaintiff's Time to Respond to Defendant's Counterclaim Until April 25, 2013) (VUOTTO, JONATHAN) (Entered: 03/11/2013) |
| 03/12/2013 | 11 | ORDER SCHEDULING CONFERENCE: Scheduling Conference set for 5/15/2013 at 10:00 AM in Trenton - Courtroom 7E before Magistrate Judge Lois H. Goodman. Signed by Magistrate Judge Lois H. Goodman on 3/11/2013. (eaj) (Entered: 03/12/2013) |
| 03/12/2013 | 12 | STIPULATION AND CONSENT ORDER Extending Plaintiff's time to respond to Defendants Counterclaim until 4/25/2013. Signed by Magistrate Judge Lois H. Goodman on 3/12/2013. (eaj) (Entered: 03/12/2013) |
| 04/25/2013 | 13 | Letter from Jonathan P. Vuotto Enclosing Proposed Stipulation & Consent Order. |

| | | |
|---|---|---|
| | | (Attachments: # 1 Text of Proposed Order Stipulation And Consent Order Extending Plaintiffs Time To Respond To Defendants Counterclaim Until May 6, 2013)(VUOTTO, JONATHAN) (Entered: 04/25/2013) |
| 04/29/2013 | 14 | STIPULATION AND ORDER extending the time in which Plaintiff may respond to Defendants counterclaim until 5/6/2013. Signed by Magistrate Judge Lois H. Goodman on 4/29/2013. (eaj) (Entered: 04/29/2013) |
| 05/06/2013 | 15 | Letter from Jonathan P. Vuotto to Court dated 5.6.13 enclosing proposed Stipulation and Consent Order. (Attachments: # 1 Text of Proposed Order /Stipulation and Consent Order extending Plaintiff's time to respond until June 7, 2013)(VUOTTO, JONATHAN) (Entered: 05/06/2013) |
| 05/07/2013 | 16 | STIPULATION AND CONSENT ORDER extending Plaintiff's time to Respond to Defendants Counterclaim until 6/7/2013. Signed by Magistrate Judge Lois H. Goodman on 5/7/2013. (eaj) (Entered: 05/07/2013) |
| 05/14/2013 | | ATTENTION COUNSEL: The Initial Conference scheduled for 5/15/13 with Magistrate Judge Lois H. Goodman has been rescheduled to 7/19/13 at 10:00 a.m. (ij, ) (Entered: 05/14/2013) |
| 06/07/2013 | 17 | MOTION to Dismiss *Kirby Westheimer's Counterclaims and for Summary Judgment* by BANK OF AMERICA, N.A.. Responses due by 6/17/2013 (Attachments: # 1 Brief, # 2 Declaration of Jonathan P. Vuotto (part 1 of 2), # 3 Declaration of Jonathan P. Vuotto (part 2 of 2), # 4 Local Civil Rule 56.1 Statement, # 5 Text of Proposed Order)(VUOTTO, JONATHAN) (Entered: 06/07/2013) |
| 06/07/2013 | 18 | CERTIFICATE OF SERVICE by BANK OF AMERICA, N.A. re 17 MOTION to Dismiss *Kirby Westheimer's Counterclaims and for Summary Judgment* (VUOTTO, JONATHAN) (Entered: 06/07/2013) |
| 06/10/2013 | | Set Deadlines as to 17 MOTION to Dismiss *Kirby Westheimer's Counterclaims and for Summary Judgment*. Motion set for 7/1/2013 before Judge Joel A. Pisano. The motion will be decided on the papers. No appearances required unless notified by the court. (kas, ) (Entered: 06/10/2013) |
| 06/14/2013 | 19 | Letter from Paul J. Linker, Esq.. (LINKER, PAUL) (Entered: 06/14/2013) |
| 06/17/2013 | 20 | LETTER ORDER adjourning the return date for the 17 MOTION to Dismiss *Kirby Westheimer's Counterclaims and for Summary Judgment* until 7/15/2013. Signed by Judge Joel A. Pisano on 6/17/2013. (eaj) (Entered: 06/17/2013) |
| 06/17/2013 | | RESET Deadlines as to 17 MOTION to Dismiss *Kirby Westheimer's Counterclaims and for Summary Judgment*. Motion set for 7/15/2013 before Judge Joel A. Pisano. The motion will be decided on the papers. No appearances required unless notified by the court. (eaj) (Entered: 06/17/2013) |
| 06/28/2013 | 21 | Letter from Paul J. Linker, Esq.. (LINKER, PAUL) (Entered: 06/28/2013) |
| 07/01/2013 | 22 | LETTER ORDER adjourning the return date for the 17 MOTION to Dismiss until 8/19/2013. Signed by Judge Joel A. Pisano on 7/1/2013. (eaj) (Entered: 07/01/2013) |
| 07/01/2013 | | RESET Deadlines as to 17 MOTION to Dismiss *Kirby Westheimer's Counterclaims and for Summary Judgment*. Motion set for 8/19/2013 before Judge |

| | | |
|---|---|---|
| | | Joel A. Pisano. The motion will be decided on the papers. No appearances required unless notified by the court. (eaj) (Entered: 07/01/2013) |
| 07/11/2013 | | ATTENTION COUNSEL: The Initial Conference scheduled for 7/19/13 with Magistrate Judge Lois H. Goodman has been cancelled pending decision on the 17 Motion to Dismiss/Summary Judgment. (ij, ) (Entered: 07/11/2013) |
| 08/07/2013 | 23 | Letter from Paul J. Linker, Esq.. (LINKER, PAUL) (Entered: 08/07/2013) |
| 08/12/2013 | 24 | Letter from Jonathan P. Vuotto regarding defendant's August 7, 2013 letter re 23 Letter. (VUOTTO, JONATHAN) (Entered: 08/12/2013) |
| 08/13/2013 | 25 | Letter from Paul J. Linker, Esq.. (LINKER, PAUL) (Entered: 08/13/2013) |
| 08/14/2013 | 26 | Letter from Anthony J. Sylvester re 25 Letter. (VUOTTO, JONATHAN) (Entered: 08/14/2013) |
| 08/14/2013 | 27 | Letter from Paul J. Linker, Esq.. (LINKER, PAUL) (Entered: 08/14/2013) |
| 08/15/2013 | 28 | LETTER ORDER granting defendant's request that the Court continue to hold the Motion to Dismiss in abeyance until counsel is able to meet with Defendant. Signed by Judge Joel A. Pisano on 8/15/2013. (mmh) (Entered: 08/15/2013) |
| 08/15/2013 | 29 | LETTER ORDER granting defendant's request that the Court not consider the pending motion to be unopposed. Signed by Judge Joel A. Pisano on 8/15/2013. (mmh) (Entered: 08/15/2013) |
| 09/10/2013 | 30 | Letter from Jonathan P. Vuotto Regarding Plaintiff's Dispositive Motion. (VUOTTO, JONATHAN) (Entered: 09/10/2013) |
| 09/27/2013 | 31 | MOTION to Withdraw , MOTION to Withdraw as Attorney by KIRBY WESTHEIMER. (LINKER, PAUL) (Entered: 09/27/2013) |
| 09/30/2013 | | Set Deadlines as to 31 MOTION to Withdraw MOTION to Withdraw as Attorney . Motion set for 10/21/2013 before Judge Joel A. Pisano. The motion will be decided on the papers. No appearances required unless notified by the court. (kas, ) (Entered: 09/30/2013) |
| 10/03/2013 | 32 | LETTER ORDER that the Court has scheduled an in-person Hearing on the Motion to Withdraw 31 for 10/21/2013 at 01:00 PM in Trenton - Courtroom 7E before Magistrate Judge Lois H. Goodman, A representative for Defendant is hereby Ordered to attend. Signed by Magistrate Judge Lois H. Goodman on 10/3/2013. (eaj) (Entered: 10/03/2013) |
| 10/04/2013 | 33 | DECLARATION of Paul J. Linker, Esq. regarding notice of pending motion to withdraw by KIRBY WESTHEIMER. (LINKER, PAUL) (Entered: 10/04/2013) |
| 10/15/2013 | 34 | Substitution of Attorney - Attorney PAUL J. LINKER terminated. Attorney PAUL A. SANDARS, III for KIRBY WESTHEIMER,PAUL A. SANDARS, III for KIRBY WESTHEIMER,PAUL A. SANDARS, III for KIRBY WESTHEIMER added.. (O'CONNOR, KEVIN) (Entered: 10/15/2013) |
| 10/16/2013 | 35 | Letter from Jonathan P. Vuotto Regarding Plaintiff's Pending Motion. (VUOTTO, JONATHAN) (Entered: 10/16/2013) |
| 10/17/2013 | | ATTENTION COUNSEL: The Oral Argument hearing set for 10/21/13 at 1:00 |

| | | |
|---|---|---|
| | | p.m. with Magistrate Judge Lois H. Goodman has been converted into a Telephone Conference Call. Plaintiff's counsel to initiate the call at that time. (ij, ) (Entered: 10/17/2013) |
| 10/17/2013 | 36 | Letter re 35 Letter. (O'CONNOR, KEVIN) (Entered: 10/17/2013) |
| 10/17/2013 | 37 | LETTER ORDER granting request that the pending Motion to Dismiss be adjourned to 11/18/2013. Signed by Judge Joel A. Pisano on 10/17/2013. (mmh) (Entered: 10/17/2013) |
| 10/17/2013 | | Reset Deadlines as to 17 MOTION to Dismiss *Kirby Westheimer's Counterclaims and for Summary Judgment*. Motion reset for 11/18/2013 before Judge Joel A. Pisano. The motion will be decided on the papers. No appearances required unless notified by the court. (mmh) (Entered: 10/17/2013) |
| 10/18/2013 | 38 | LETTER ORDER granting request that the pending Motion to Dismiss 17 be adjourned to 12/16/2013. Signed by Judge Joel A. Pisano on 10/18/2013. (eaj) (Entered: 10/18/2013) |
| 10/18/2013 | | RESET Deadlines as to 17 MOTION to Dismiss *Kirby Westheimer's Counterclaims and for Summary Judgment*. Motion set for 12/16/2013 before Judge Joel A. Pisano. The motion will be decided on the papers. No appearances required unless notified by the court. (eaj) (Entered: 10/18/2013) |
| 10/25/2013 | 39 | TEXT ORDER setting a Telephone Conference for 11/14/13 at 1:30 p.m. with Magistrate Judge Lois H. Goodman. Plaintiff's counsel to initiate the call at that time. Ordered by Magistrate Judge Lois H. Goodman on 10/25/13. (ij, ) (Entered: 10/25/2013) |
| 11/14/2013 | | Text Minute Entry for proceedings held before Magistrate Judge Lois H. Goodman: Telephone Conference held on 11/14/2013. (ij, ) (Entered: 11/18/2013) |
| 11/20/2013 | 40 | TEXT ORDER setting a Telephone Conference for 12/2/13 at 4:00 p.m. with Magistrate Judge Lois H. Goodman. Plaintiff's counsel to initiate the call at that time. Ordered by Magistrate Judge Lois H. Goodman on 11/20/13(ij, ) (Entered: 11/20/2013) |
| 12/02/2013 | | Text Minute Entry for proceedings held before Magistrate Judge Lois H. Goodman: Telephone Conference held on 12/2/2013. (ij, ) (Entered: 12/03/2013) |
| 12/04/2013 | 41 | Letter from Counsel for Defendant confirming extension to December 16, 2013 of Defendant's time to file opposition to Plaintiff's Motion to Dismiss re 17 MOTION to Dismiss *Kirby Westheimer's Counterclaims and for Summary Judgment*. (O'CONNOR, KEVIN) (Entered: 12/04/2013) |
| 12/05/2013 | | ATTENTION COUNSEL: Telephone Conference set for 12/6/13 at 12:30 p.m. with Magistrate Judge Lois H. Goodman. Plaintiff's counsel to initiate the call at that time. (ij, ) (Entered: 12/05/2013) |
| 12/16/2013 | 42 | BRIEF in Opposition filed by KIRBY WESTHEIMER re 17 MOTION to Dismiss *Kirby Westheimer's Counterclaims and for Summary Judgment* (Attachments: # 1 Statement of Facts Local Rule 56.1, # 2 Declaration of Kirby Westheimer, # 3 Exhibit A, # 4 Exhibit B, # 5 Declaration of Myra DiDonato, # 6 Exhibit A) (O'CONNOR, KEVIN) (Entered: 12/16/2013) |

| 12/17/2013 | 43 | Letter from Paul A. Sandars, III mailed with Volumes I and II of the Preliminary Deficiency List which is referred in the Declaration of Kirby Westheimer. **These documents have been forwarded to Chambers. (mmh) (Entered: 12/18/2013) |
| 12/23/2013 | 44 | REPLY BRIEF to Opposition to Motion filed by BANK OF AMERICA, N.A. re 17 MOTION to Dismiss *Kirby Westheimer's Counterclaims and for Summary Judgment* (VUOTTO, JONATHAN) (Entered: 12/23/2013) |
| 01/02/2014 | 45 | RESPONSE in Support filed by KIRBY WESTHEIMER re 17 MOTION to Dismiss *Kirby Westheimer's Counterclaims and for Summary Judgment Letter responding to 12/27/13 submission by Plaintiff with supplemental authority* (O'CONNOR, KEVIN) (Entered: 01/02/2014) |
| 02/28/2014 | 46 | OPINION filed. Signed by Judge Joel A. Pisano on 2/28/2014. (jjc) (Entered: 02/28/2014) |
| 02/28/2014 | 47 | ORDER that Plaintiff's Motion to Dismiss Defendant's Counterclaim is GRANTED; that Plaintiff's Motion for Summary Judgment on the Complaint is GRANTED. Signed by Judge Joel A. Pisano on 2/28/2014. (jjc) (Entered: 02/28/2014) |
| 02/28/2014 | | ***Civil Case Terminated. (jjc) (Entered: 02/28/2014) |
| 05/19/2014 | 48 | MOTION for Final Judgment of Foreclosure by BANK OF AMERICA, N.A.. (Attachments: # 1 Certification of Jonathan P. vuotto (part 1 of 3), # 2 Certification of Jonathan P. Vuotto (part 2 of 3), # 3 Certification of Jonathan P. Vuotto (part 3 of 3), # 4 Affidavit of Amount Due, # 5 Certification of Service of 14-Day Notice, # 6 Certification of Attorney's Fees, Costs and Expenses, # 7 Final Judgment of Foreclosure, # 8 Writ of Execution)(VUOTTO, JONATHAN) (Entered: 05/19/2014) |
| 05/20/2014 | | Set Deadlines as to 48 MOTION for Final Judgment of Foreclosure . Motion set for 6/16/2014 before Judge Joel A. Pisano. The motion will be decided on the papers. No appearances required unless notified by the court. (jjc) (Entered: 05/20/2014) |
| 05/20/2014 | 49 | Rule 7.1(d)(5) Letter for an automatic extension of the return date of a dispositive motion filed by KIRBY WESTHEIMER re 48 MOTION for Final Judgment of Foreclosure (O'CONNOR, KEVIN) (Entered: 05/20/2014) |
| 05/20/2014 | 50 | Letter from Jonathan P. Vuotto re adjournment request re 49 Letter Rule 7.1. (VUOTTO, JONATHAN) (Entered: 05/20/2014) |
| 05/20/2014 | 51 | Letter from Counsel for Defendant re 50 Letter, 49 Letter Rule 7.1. (O'CONNOR, KEVIN) (Entered: 05/20/2014) |
| 05/20/2014 | | Reset Deadlines as to 48 MOTION for Final Judgment of Foreclosure . Motion reset for 7/7/2014 before Judge Joel A. Pisano. The motion will be decided on the papers. No appearances required unless notified by the court. (jjc) (Entered: 05/20/2014) |
| 06/23/2014 | 52 | BRIEF in Opposition filed by KIRBY WESTHEIMER re 48 MOTION for Final Judgment of Foreclosure (O'CONNOR, KEVIN) (Entered: 06/23/2014) |
| 06/27/2014 | 53 | REPLY to Response to Motion filed by BANK OF AMERICA, N.A. re 48 MOTION for Final Judgment of Foreclosure (Attachments: # 1 Text of Proposed |

| | | |
|---|---|---|
| | | Order Proposed Final Judgment and Writ)(VUOTTO, JONATHAN) (Entered: 06/27/2014) |
| 11/18/2014 | 54 | ORDER AND JUDGMENT granting 48 Motion for Final Judgment of Foreclosure; that Plaintiff is entitled to have the sum of $1,260,446,72; that the Mortgaged Premises be sold to raise and satisfy the moneys due Plaintiff. Signed by Judge Joel A. Pisano on 11/18/2014. (jjc) (Entered: 11/18/2014) |
| 12/10/2014 | 55 | Letter request to issue Writ of Execution from Jonathan P. Vuotto. (jjc) (Entered: 12/10/2014) |
| 12/10/2014 | | Writ of Execution Issued recorded in Book T14 Page 40 of Executions (Sent to USM). (jjc) (Entered: 12/10/2014) |
| 12/16/2014 | 56 | NOTICE OF APPEAL as to 47 Order on Motion to Dismiss, 54 Order on Motion for Miscellaneous Relief, by KIRBY WESTHEIMER. Filing fee $ 505, receipt number 0312-6105819. The Clerk's Office hereby certifies the record and the docket sheet available through ECF to be the certified list in lieu of the record and/or the certified copy of the docket entries. (O'CONNOR, KEVIN) (Entered: 12/16/2014) |
| 12/18/2014 | 57 | USCA Case Number 14-4765 for 56 Notice of Appeal (USCA) filed by KIRBY WESTHEIMER. USCA Case Manager Tonya (Document Restricted - Court Only) (ca3kr) (Entered: 12/18/2014) |
| 01/13/2015 | 58 | MOTION to Stay *Pending Appeal and For Waiver or Modification of Supersedeas Bond* by KIRBY WESTHEIMER. (Attachments: # 1 Letter Brief, # 2 Declaration of Paul A. Sandars, III, Esq., # 3 Exhibit A to Sandars Decl., # 4 Exhibit B to Sandars Decl., # 5 Exhibit C to Sandars Decl., # 6 Declaration of Kirby Westheimer, # 7 Exhibit A to Westheimer Decl., # 8 Exhibit B to westheimer Decl., # 9 Text of Proposed Order)(O'CONNOR, KEVIN) (Entered: 01/13/2015) |
| 01/13/2015 | | Set Deadlines as to 58 MOTION to Stay *Pending Appeal and For Waiver or Modification of Supersedeas Bond*. Motion set for 2/17/2015 before Judge Joel A. Pisano. The motion will be decided on the papers. No appearances required unless notified by the court. (jjc) (Entered: 01/13/2015) |
| 01/15/2015 | 59 | RESPONSE to Motion filed by BANK OF AMERICA, N.A. re 58 MOTION to Stay *Pending Appeal and For Waiver or Modification of Supersedeas Bond* (VUOTTO, JONATHAN) (Entered: 01/15/2015) |
| 01/15/2015 | | **CLERK'S QUALITY CONTROL MESSAGE** - The Letter 59 filed by Jonathan Vuotto on 1/15/2015 was submitted incorrectly as a Response to Motion. PLEASE RESUBMIT THE Letter USING the event Letter. This submission will remain on the docket unless otherwise ordered by the court. (jjc) (Entered: 01/15/2015) |
| 01/15/2015 | | **CLERK'S QUALITY CONTROL MESSAGE** - The Brief in Support of Motion 35 filed by Maxiel Gomez on 1/15/2015 was submitted incorrectly as a Letter. PLEASE RESUBMIT THE Brief in Support of Motion USING the event Brief in Support of Motion. This submission will remain on the docket unless otherwise ordered by the court. (jjc) (Entered: 01/15/2015) |
| 01/19/2015 | 60 | Letter from Jonathan P. Vuotto in Response to Motion for Stay and Waiver of Bond. (VUOTTO, JONATHAN) (Entered: 01/19/2015) |

| 01/21/2015 | 61 | RESPONSE to Motion filed by BANK OF AMERICA, N.A. re 58 MOTION to Stay *Pending Appeal and For Waiver or Modification of Supersedeas Bond Proposed Order on Defendant's Motion* (VUOTTO, JONATHAN) (Entered: 01/21/2015) |
| 01/21/2015 | | <span style="color:red">CLERK'S QUALITY CONTROL MESSAGE</span> - The Proposed Order 61 submitted by Jonathan Vuotto on 1/21/2015 must be executed by a Judicial Officer before filing. Please forward to the appropriate Judicial Officer in accordance with his/her preferred practice as found on our website. This submission will remain on the docket unless otherwise ordered by the court. This message is for informational purposes only. (jjc) (Entered: 01/21/2015) |
| 01/22/2015 | 62 | Letter from Counsel for Defendant re modification of proposed form of order submitted by BOA re 61 Response to Motion. (Attachments: # 1 Exhibit sample Interest Billing statement)(O'CONNOR, KEVIN) (Entered: 01/22/2015) |
| 01/22/2015 | 63 | Letter from Jonathan P. Vuotto. (Attachments: # 1 Text of Proposed Order) (VUOTTO, JONATHAN) (Entered: 01/22/2015) |
| 01/28/2015 | 64 | ORDER granting Defendant's 58 Motion to Stay; that the foreclosure and any and all other proceedings herein are STAYED pending the resolution of Defendant's appeal. Signed by Judge Joel A. Pisano on 1/28/2015. (jjc) (Entered: 01/28/2015) |
| 02/09/2015 | 65 | Writ of Execution Returned Executed by USMS on 1/13/2015. (kas, ) (Entered: 02/09/2015) |
| 08/14/2015 | 66 | First MOTION to Reopen Case *3:12-cv-07080-JAP-LHG*, First MOTION to Set Aside Judgment , First MOTION to Vacate 47 Order on Motion to Dismiss, 46 Opinion by KIRBY WESTHEIMER. (Attachments: # 1 Brief, # 2 Declaration of Kirby Westheimer, # 3 Declaration of Paul A. Sandars, III, Esq., # 4 Text of Proposed Order, # 5 Cover Letter Filing Rule 60(b)(2) Motion)(SANDARS, PAUL) (Entered: 08/14/2015) |
| 08/17/2015 | 67 | TEXT ORDER REASSIGNING CASE. Case reassigned to Judge Anne E. Thompson for all further proceedings. Judge Joel A. Pisano no longer assigned to case. So Ordered by Chief Judge Jerome B. Simandle on 8/17/15. (mem, ) (Entered: 08/17/2015) |
| 08/17/2015 | | Set Deadlines as to 66 First MOTION to Reopen Case *3:12-cv-07080-JAP-LHG*First MOTION to Set Aside Judgment First MOTION to Vacate 47 Order on Motion to Dismiss, 46 Opinion . Motion set for 9/8/2015 before Judge Anne E. Thompson. The motion will be decided on the papers. No appearances required unless notified by the court. (kas, ) (Entered: 08/17/2015) |
| 08/18/2015 | 68 | DECLARATION of Paul A. Sandars, III, Esq. re 66 First MOTION to Reopen Case *3:12-cv-07080-JAP-LHG*First MOTION to Set Aside Judgment First MOTION to Vacate 47 Order on Motion to Dismiss, 46 Opinion by KIRBY WESTHEIMER. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit) (SANDARS, PAUL) (Entered: 08/18/2015) |
| 08/25/2015 | 69 | BRIEF in Opposition filed by BANK OF AMERICA, N.A. re 66 First MOTION to Reopen Case *3:12-cv-07080-JAP-LHG*First MOTION to Set Aside Judgment First MOTION to Vacate 47 Order on Motion to Dismiss, 46 Opinion (Attachments: # 1 |

| | | |
|---|---|---|
| | | Certificate of Service)(VUOTTO, JONATHAN) (Entered: 08/25/2015) |
| 08/28/2015 | 70 | Letter from Paul A. Sandars, III, Esq. on behalf of Defendant, Kirby Westheimer. (Attachments: # 1 Text of Proposed Order)(SANDARS, PAUL) (Entered: 08/28/2015) |
| 08/31/2015 | 71 | LETTER ORDER adjourning the return date for the 66 First MOTION to Reopen until 9/21/2015; Defendant must file his reply in support by 9/15/2015. Signed by Judge Anne E. Thompson on 8/31/2015. (eaj) (Entered: 08/31/2015) |
| 08/31/2015 | | Reset Deadlines as to 66 First MOTION to Reopen Case *3:12-cv-07080-JAP-LHG*First MOTION to Set Aside Judgment First MOTION to Vacate 47 Order on Motion to Dismiss, 46 Opinion . Motion set for 9/21/2015 before Judge Anne E. Thompson. The motion will be decided on the papers. No appearances required unless notified by the court. (eaj) (Entered: 08/31/2015) |
| 09/11/2015 | 72 | Letter from Jonathan P. Vuotto. (Attachments: # 1 Text of Proposed Order) (VUOTTO, JONATHAN) (Entered: 09/11/2015) |
| 09/14/2015 | 73 | Letter from Jonathan P. Vuotto Withdrawing Application. (VUOTTO, JONATHAN) (Entered: 09/14/2015) |
| 09/15/2015 | 74 | REPLY BRIEF to Opposition to Motion filed by KIRBY WESTHEIMER re 66 First MOTION to Reopen Case *3:12-cv-07080-JAP-LHG*First MOTION to Set Aside Judgment First MOTION to Vacate 47 Order on Motion to Dismiss, 46 Opinion (Attachments: # 1 Declaration, # 2 Certification, # 3 Cover Letter) (SANDARS, PAUL) (Entered: 09/15/2015) |
| 09/16/2015 | 75 | LETTER ORDER granting counsels request to withdraw the application for a supersedeas bond. Signed by Judge Anne E. Thompson on 9/16/2015. (eaj) (Entered: 09/16/2015) |
| 09/21/2015 | 76 | OPINION filed. Signed by Judge Anne E. Thompson on 9/21/2015. (eaj) (Entered: 09/21/2015) |
| 09/21/2015 | 77 | ORDER denying 66 Defendant Kirby Westheimer's Motion to Vacate this court's Order dismissing Defendant's counterclaims and granting summary judgment on Plaintiffs foreclosure complaint. Signed by Judge Anne E. Thompson on 9/21/2015. (eaj) (Entered: 09/21/2015) |
| 10/20/2015 | 78 | NOTICE OF APPEAL as to 77 Order on Motion to Reopen Case, by KIRBY WESTHEIMER. Filing fee $ 505, receipt number 0312-6709144. The Clerk's Office hereby certifies the record and the docket sheet available through ECF to be the certified list in lieu of the record and/or the certified copy of the docket entries. (O'CONNOR, KEVIN) (Entered: 10/20/2015) |
| 10/28/2015 | 79 | USCA Case Number 15-3562 for 78 Notice of Appeal (USCA), filed by KIRBY WESTHEIMER. USCA Case Manager Tonya (Document Restricted - Court Only) (Tonya) (Entered: 10/28/2015) |

**PACER Service Center**

**Transaction Receipt**

12/20/2015                    CM/ECF LIVE - U.S. District Court for the District of New Jersey

| 12/20/2015 11:21:47 | | | |
|---|---|---|---|
| **PACER Login:** | lh0032:2587297:0 | **Client Code:** | 25161-0001+ERC |
| **Description:** | Docket Report | **Search Criteria:** | 3:12-cv-07080-AET-LHG Start date: 1/1/1970 End date: 12/21/2015 |
| **Billable Pages:** | 8 | **Cost:** | 0.80 |

**A-20**

RIKER, DANZIG, SCHERER, HYLAND & PERRETTI LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, New Jersey 07962-1981
(973) 538-0800
Attorneys for Plaintiff

<div align="center">

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

</div>

| | |
|---|---|
| BANK OF AMERICA, N.A., successor in interest to MERRILL LYNCH CREDIT CORPORATION, by and through its servicer and attorney-in-fact, PHH MORTGAGE CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> KIRBY WESTHEIMER and JOHN DOE #1 through JOHN DOE #40, inclusive, <br><br> Defendants. | Civil Action No. 12-7080-JAP-LHG <br><br><br><br><br> **NOTICE OF MOTION TO DISMISS KIRBY WESTHEIMER'S COUNTERCLAIMS AND FOR SUMMARY JUDGMENT** |

**PLEASE TAKE NOTICE** that, in accordance with Federal Rule of Civil Procedure 12(b)(6) and Local Civil Rule 7.1, on July 1, 2013, or such time thereafter as the Court shall determine, plaintiff, Bank of America, N.A., successor in interest to Merrill Lynch Credit Corporation, by and through its servicer and attorney-in-fact, PHH Mortgage Corporation ("Plaintiff"), shall apply to the Honorable Joel A. Pisano, U.S.D.J., United States District Court for the District of New Jersey, Clarkson S. Fisher Federal Building & U.S. Courthouse, 402 E. State Street, Trenton, New Jersey 08608, for an order: (i) dismissing the Counterclaim of defendant Kirby Westheimer; (ii) granting Plaintiff summary judgment on its Cause of Action for Foreclosure of Mortgage; and (iii) granting Plaintiff such other and further relief as the Court deems just and equitable.

<div align="center">

A-21

</div>

**PLEASE TAKE FURTHER NOTICE** that, opposition, if any, to the relief requested must be made in writing and in the form prescribed by the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of New Jersey and served on Plaintiff's counsel and filed with this Court not later than June 17, 2013.

**PLEASE TAKE FURTHER NOTICE** that Plaintiff's reply papers, if necessary, shall be served and filed with this Court not later than June 24, 2013.

**PLEASE TAKE FURTHER NOTICE** that Plaintiff shall rely upon the Memorandum of Law and Declaration of Jonathan P. Vuotto annexed hereto filed in support of the motion, the record of the proceedings and oral argument, if required.

**PLEASE TAKE FURTHER NOTICE** that the undersigned requests oral argument if timely opposition is submitted.   Pursuant to L. Civ. R. 7.1(e), a proposed form of Order accompanies this motion.

Dated: June 7, 2013

RIKER, DANZIG, SCHERER, HYLAND &
PERRETTI, LLP
Attorneys for Plaintiff


By:____/s/Jonathan P. Vuotto ___ ____
Jonathan P. Vuotto

**TO:**

Paul J. Linker, Esq.
Gruhin & Gruhin, P.A.
155 Prospect Avenue, Suite 100
West Orange, New Jersey 07052
Attorneys for Kirby Westheimer

2

**A-22**



RIKER, DANZIG, SCHERER, HYLAND & PERRETTI LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, New Jersey 07962-1981
(973) 538-0800
Attorneys for Plaintiff

RECEIVED

NOV 1 8 2014

· r 6:30_____M
WILLIAM T. WALSH CLERK

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BANK OF AMERICA, N.A., successor in interest to MERRILL LYNCH CREDIT CORPORATION, by and through its servicer and attorney-in-fact, PHH MORTGAGE CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>KIRBY WESTHEIMER and JOHN DOE #1 through JOHN DOE #40, inclusive,<br><br>Defendants. | Civil Action No.  12-7080-JAP-LHG<br><br><br><br><br><br><br>**FINAL JUDGMENT<br>OF FORECLOSURE** |

THIS MATTER having been opened to the Court by Bank of America N.A. successor in

interest to Merrill Lynch Credit Corporation, by and through its servicer and attorney-in-fact,

PHH Mortgage Corporation (collectively, "Plaintiff"), for a Final Judgment of Foreclosure

against Kirby Westheimer, and the promissory note and mortgage and other relevant documents

that are the subject of this action having been presented and marked as exhibits by the Court; and

proof having been submitted of the amount due on Plaintiff's mortgage; and sufficient cause

appearing;

Case: 15-3562     Document: 003112161259     Page: 16     Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 54   Filed 11/18/14   Page 2 of 3 PageID: 649
Case 3:12-cv-07080-JAP-LHG   Document 53   Filed 06/27/14   Page 4 of 9 PageID: 635

IT is on this ___18th___ day of __Nov✓__, 2014,

ORDERED AND ADJUDGED that Plaintiff is entitled to have the sum of $1,260,446.72, consisting of $1,252,946.72 being the amount owed to the Bank on the Note, dated September 15, 2008, as of May 15, 2014, and lawful interest thereafter, together with costs of this action to be taxed including counsel fees in the amount of $7,500.00 raised and paid out of the mortgaged premises referred to in the application for final judgment as the Mortgaged Premises; and

IT IS FURTHER ORDERED AND ADJUDGED that the Mortgaged Premises be sold to raise and satisfy the moneys due Plaintiff and that an execution issue for that purpose to the United States Marshals Service, commanding it to hold a sale in accordance with applicable New Jersey Law, including the New Jersey Fair Foreclosure Act, of said Mortgaged Premises and out of the moneys arising from sale that it pay the Plaintiff's debt as set forth in the aforementioned paragraph, with lawful interest thereon and costs as aforesaid, to Plaintiff or its attorney, and that in case there is a surplus remaining after said sale that such surplus be brought into court to abide the further order of the court and that the United States Marshals Service make its report of the said sale detailing the result of the sale, and disbursements made from the proceeds of the sale, if any; and

IT IS FURTHER ORDERED AND ADJUDGED that all of the defendants to this action claiming an interest in the Mortgaged Premises and each of them stand absolutely debarred and foreclosed of and from all equity of redemption of, in and to said mortgaged premises referred to as the Mortgaged Premises shall be sold as aforesaid by virtue of this judgment; and

IT IS FURTHER ORDERED AND ADJUDGED that Plaintiff and any purchaser(s) under the foreclosure sale duly recover against the defendants and all parties holding by, through

2

A-24

or claiming under them, possession of the premises mentioned and described in the complaint as the Properties, with the appurtenances and that a writ of possession issue thereon.

_____
Hon. Joel A. Pisano, U.S.D.J.

3

**LUM, DRASCO & POSITAN LLC**
103 Eisenhower Pkwy
Roseland, New Jersey 07068
Tel: 973-403-9000
Fax: 973-403-9021
Attorneys for Defendant, Kirby Westheimer

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BANK OF AMERICA, N.A., | Civil Action No. 12-cv-7080-JAP |
| Plaintiff, | |
| -vs- | |
| KIRBY WESTHEIMER, | **NOTICE OF APPEAL** |
| Defendant. | |

**PLEASE TAKE NOTICE** that Defendant, Kirby Westheimer, hereby appeals to the United States Court of Appeals for the Third Circuit from the Order (Dkt. # 47) and Opinion (Dkt. # 48) of the Hon. Joel A. Pisano, U.S.D.J. entered in this action on February 28, 2014 and the Order and Judgment granting motion for final judgment of foreclosure entered in this action on November 18, 2014 (Dkt. # 54).

> **LUM, DRASCO & POSITAN LLC**
> Attorneys for Defendant, Kirby Westheimer
>
> /s Paul A. Sandars, III
> PAUL A. SANDARS, III
>
> /s Kevin J. O'Connor
> KEVIN J. O'CONNOR

Dated: December 16, 2014

1

**A-26**

## CERTIFICATE OF SERVICE

The undersigned certifies that on December 16, 2014, the undersigned electronically filed the forgoing Notice of Appeal with the Clerk of the Court, using the CM/ECF system, which will send notification of such filing to counsel of record in this matter who are registered on the CM/ECF system.

/s Kevin J. O'Connor
KEVIN J. O'CONNOR, ESQ.

2

A-27

RIKER, DANZIG, SCHERER, HYLAND & PERRETTI  LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, New Jersey 07962-1981
(973) 538-0800
Attorneys for Plaintiff

RECEIVED

JAN 2 8 2015

AT 8:30_____M
WILLIAM T WALSH CLERK

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| BANK OF AMERICA, N.A., successor in interest to MERRILL LYNCH CREDIT CORPORATION, by and through its servicer and attorney-in-fact, PHH MORTGAGE CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>KIRBY WESTHEIMER and JOHN DOE #1 through JOHN DOE #40, inclusive,<br><br>Defendants. | Civil Action No.  12-7080-JAP-LHG<br><br><br><br><br>**ORDER ON DEFENDANT'S MOTION FOR STAY AND WAIVER OF BOND REQUIREMENT** |

**THIS MATTER** coming before the Court upon the motion of Lum, Drasco & Positan,

LLC, attorneys for defendant Kirby Westheimer ("Defendant"), for an Order staying the

foreclosure in this action pending appeal and to waive Defendant's obligation to post a

supersedeas bond, and a response to the motion having been submitted by Riker, Danzig,

Scherer, Hyland & Perretti, LLP, attorneys for plaintiff, Bank of America, N.A., successor in

interest to Merrill Lynch Credit Corporation, by and through its servicer and attorney-in-fact,

PHH Mortgage Corporation ("Plaintiff"), whereby Plaintiff consented to Defendant's requested

relief on the conditions that: (i) Defendant continue monthly interest payments to Plaintiff in lieu

of posting a bond; and (ii) if Defendant defaults the required payments, then Defendant be

required to post a bond immediately; and for good cause shown;

**A-28**

IT IS on this _28_ day of _Jan_, 2015:

ORDERED that Defendant's motion be and hereby is **GRANTED**; and it is further

ORDERED that the foreclosure and any and all other proceedings herein are **STAYED** pending the resolution of Defendant's appeal; and it is further

ORDERED that, in lieu of posting a supersedeas bond, Defendant shall continue monthly payments to Plaintiff of interest on the subject Note at the rate provided therein, as will be contained in the Interest Billing Statements provided by Plaintiff to Defendant; and it is further

ORDERED that, if Defendant fails to make any such monthly payment and such default remains uncured for five (5) days then, within five (5) days after demand by Plaintiff, Defendant shall post a supersedeas bond in an amount sufficient to secure any damages potentially sustained by Plaintiff during the pendency of the appeal for the use and detention of the subject property, appellate costs and interest; and it is further

ORDERED that Defendant's counsel shall serve a copy of this Order upon all interested parties within _10_ days of the date hereof.

_____
HON. JOEL A. PISANO, U.S.D.J.

2

**A-29**

**LUM, DRASCO & POSITAN LLC**
103 Eisenhower Parkway
Roseland, NJ  07068-1049
(973) 403-9000
(973) 403-9021 (FAX)
Attorneys for Defendant, Kirby Westheimer

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| | Case No. 12-cv-07080-JAP-LHG |
| BANK OF AMERICA, N.A., successor in interest to MERRILL LYNCH CREDIT CORPORATION, by and through its servicer and attorney-in-fact PHH MORTGAGE CORPORATION, | *Document Filed Electronically* |
| Plaintiff, | **NOTICE OF MOTION TO REOPEN ORDER GRANTING SUMMARY JUDGMENT AND DISMISSING COUNTERCLAIMS** |
| vs. | |
| KIRBY WESTHEIMER, | **Return Date:  September 8, 2015** |
| Defendant. | |

**TO:**   Jonathan P. Vuotto, Esq.
RIKER, DANZIG, SCHERER, HYLAND & PERRETTI, LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981
*Attorneys for Plaintiff, Bank of America, N.A.*

**PLEASE TAKE NOTICE**, that on September 8, 2015, at 9:00 a.m. or as

soon thereafter as counsel may be heard, the undersigned attorneys for Defendant,

Kirby Westheimer, shall move before a District Court Judge at the United States Courthouse in Trenton, New Jersey for an Order pursuant to Fed. R. Civ. P. 60(b)(2) for relief from the February 28, 2014 Order entered by the Hon. Joel A. Pisano, U.S.D.J. granting Plaintiff's Motion to Dismiss Defendant's Counterclaims and its Motion for Summary Judgment on the basis of newly discovered evidence.

**PLEASE TAKE FURTHER NOTICE** that in support of this Motion, Plaintiff shall rely upon the Letter Brief, Declaration of Counsel and Declaration of Kirby Westheimer filed and served simultaneously herewith.

**PLEASE TAKE FURTHER NOTICE** that a proposed form of Order is being submitted herewith.

<div style="text-align:right">

**LUM, DRASCO & POSITAN LLC**
Attorneys for Defendant, Kirby Westheimer

By:   /s/ Paul A. Sandars, III
    PAUL A. SANDARS, III

</div>

DATED:  August 14, 2015

<div style="text-align:center">

**A-31**

</div>

## CERTIFICATION OF SERVICE

The undersigned hereby certifies and declares that a copy of the foregoing Notice of Motion and supporting papers was served upon counsel of record listed below via service pursuant to the Court's CM/ECF system on this 14th day of August, 2015:

Jonathan P. Vuotto, Esq.
RIKER, DANZIG, SCHERER, HYLAND & PERRETTI, LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981

  /s/ Paul A. Sandars, III
PAUL A. SANDARS, III

Paul A. Sandars, III, Esq.
**LUM, DRASCO & POSITAN LLC**
103 Eisenhower Parkway
Roseland, NJ 07068-1049
Telephone: 973.403.9000
Fax: 973.403.9021
psandars@lumlaw.com
Attorneys for Defendant, Kirby Westheimer

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| BANK OF AMERICA, N.A., successor in interest to MERRILL LYNCH CREDIT CORPORATION, by and through its servicer and attorney-in-fact PHH MORTGAGE CORPORATION,<br><br>            Plaintiff,<br><br>vs.<br><br>KIRBY WESTHEIMER,<br><br>            Defendant. | Case No.:  12-cv-07080-JAP-LHG<br><br><br>**DECLARATION OF KIRBY WESTHEIMER**<br><br><br>*Document Filed Electronically* |

**KIRBY WESTHEIMER**, of full age, hereby certifies and declares under

penalty of perjury as follows:

    1.    I am the named defendant in the above-captioned matter.

    2.    I have personal knowledge of the facts set forth herein and I make this

Declaration in support of this Motion for relief from this Court's February 28,

2014 Order dismissing my Counterclaims and granting Summary Judgment in

favor of Plaintiff, Bank of America, N.A., successor in interest to Merrill Lynch

Credit Corporation, by and through its servicer and attorney-in-fact, PHH

Mortgage Corporation ("Plaintiff" or "BOA").

3.      I am the owner of 210 Mercer Street, Princeton, New Jersey.   I have owned and lived in this home since 1980 when I purchased it. The house is about 10,000 square feet and was built in 1894.

4.      In December 2006, I entered into a contract with Stephen D. Rhoads, LLC as architect and construction manager to rebuild parts of the house (the "Project").  I had never before either built or renovated a house.

5.      In or about June 2008, it became apparent to both Rhoads and me that additional funding would be necessary to complete the Project and I sought construction loan financing to complete the Project.

6.      I entered into negotiations with BOA for financing. After disbursement of the proceeds, the construction loan would automatically convert to permanent financing.

7.      As such, in the spring of 2008 through September 2008, I had communications and meetings with BOA employees and representatives to negotiate the terms and conditions of the construction loan. During these discussions, I advised BOA that the estimated cost of the Project was approximately $2.5 million, towards which I had already paid more than $1.0 million from my personal funds.

8.    In these discussions, BOA made clear to me through its various representatives that construction funds would not be released until several critical variables had been satisfied.

9.    One of these variables was that the debt to equity ratio of the value of my construction loan to the total value of my property had to be at least thirty percent.

10.    Late in the summer of 2008, BOA appraised the value of my residence at $5,000,000. The arithmetic of the Plaintiff's loan conditions were as follows:  Given the value of my residence at $5,000,000 and a permissible loan to value ratio of thirty percent, a construction loan of $1,500,000 would equal thirty percent of the total value of the property (the "Loan proceeds").

11.    Another critical variable that had to be satisfied before BOA would pay out any of the Loan proceeds was that I had to fund the difference between the $1,500,000 in Loan proceeds and the $2,567,123 in construction costs needed to complete the Project. If BOA determined during the term of the Loan that the actual cost to complete the Project may or will exceed the sum of the Loan proceeds and the funds I had paid into the Project, I was required to fund this excess cost before BOA would make any disbursement or further disbursement of the Loan proceeds.

12.    Finally, BOA's construction loan funds would not be released until

**A-35**

BOA or its agents had physically inspected construction progress with its own construction inspectors and approved that construction loan funds could be released. However, it was my responsibility to pay for these inspections.

13.    Through these inspections, Plaintiff would have the knowledge as to whether that the Project was proceeding in a timely manner towards completion by the end of the Construction Period on March 31, 2010 and at the estimated cost of $2,568,123 for the Project.

14.    Beginning on September 24, 2008, BOA made its first payment under the loan of $97,753.42. I understood these funds to have been properly disbursed as I had satisfied the condition precedent of the Construction Loan Agreement by personally investing $1,067,123 of my own funds towards the Project.

15.    I understood that if BOA's inspection revealed that the actual cost to complete the Project exceeded the sum of the Loan proceeds and the funds I had paid into the Project, I was required under the Construction Loan Agreement to fund this excess cost before BOA would make any disbursement of the Loan proceeds.

16.    Accordingly, as BOA never notified me during the course of construction that the Loan Proceeds and my $1,067,123 investment would be insufficient to complete the Project or demanded that I pay any additional funds into the Project, I continued to understand that I had funded approximately forty

percent toward the total construction costs of $2,567,123.

17.    Prior to the "default" under the Construction Loan Agreement, BOA paid out sixteen applications for disbursement of the Loan proceeds. Each and every loan request was accompanied by an affidavit, proving that there were invoices that totaled the amount of the request for payment, and the amount of the request was actually paid.

18.    In entering the Construction Loan Agreement and throughout the construction period, I relied upon the belief that BOA's inspections were being conducted in a proper manner and that I would be notified by BOA if I needed to pay additional funds to complete the Project.

19.    Initially, the inspections were conducted by Lenders Choice Network ("LCN"), but in October 2010, Trinity Inspection Services, LLC ("Trinity Inspection") was substituted as the inspector for the Project. On numerous occasions, I asked Plaintiff to provide me with copies of its inspection reports. However, Plaintiff consistently refused to provide me with copies of the reports.

20.    I finally received the reports in connection with my lawsuit against the various professionals, contractors and subcontractors on the Project venued in the Superior Court of New Jersey, Law Division, Mercer County and encaptioned Kirby Westheimer v. Stephen Rhoads Architect, LLC, et al., Docket No. MER-L-1895-12.

21.     These inspection reports reveal that when BOA made its first payment under the loan on or about September 24, 2008, there was only $383,254.52 in completed work on the Project, rather than the $1,067,123 that I actually paid toward the Project.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 14th day of August, 2015.

KIRBY WESTHEIMER

**LUM, DRASCO & POSITAN LLC**
103 Eisenhower Parkway
Roseland, NJ  07068-1049
(973) 403-9000
(973) 403-9021 (FAX)
Attorneys for Defendant, Kirby Westheimer

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
|  | Case No. 12-cv-07080-JAP-LHG |
| BANK OF AMERICA, N.A., successor in interest to MERRILL LYNCH CREDIT CORPORATION, by and through its servicer and attorney-in-fact PHH MORTGAGE CORPORATION, |  |
|  | **CERTIFICATION OF COUNSEL** |
| Plaintiff, |  |
| vs. |  |
| KIRBY WESTHEIMER, |  |
| Defendant. |  |

I, PAUL A. SANDARS, III, ESQ., of full age, in lieu of oath or affidavit, do hereby certify and say:

1.      I am an attorney-at-law in the State of New Jersey, admitted to practice before this Court, and a Member with the law firm of Lum, Drasco & Positan LLC, attorneys for Defendant, Kirby Westheimer ("Defendant" or "Westheimer").

2.      I submit this Certification in support of Westheimer's Motion for an

Order pursuant to <u>Fed. R. Civ. P.</u> 60(b)(2) for relief from this Court's February 28, 2014 Order dismissing his Counterclaims and granting Summary Judgment in favor of Plaintiff, Bank of America, N.A., successor in interest to Merrill Lynch Credit Corporation, by and through its servicer and attorney-in-fact, PHH Mortgage Corporation ("Plaintiff" or "BOA").

3.      After this firm was substituted as Westheimer's counsel in this action, I contacted Plaintiff's counsel to obtain copies of the inspection reports prepared in connection with the construction loan at issue in this matter.  BOA's attorney did not provide me the reports.

4.      Additionally, I was unable to obtain the inspection reports by way of document requests, as this Court entered its February 28, 2014 Order dismissing Westheimer's Counterclaims and granting summary judgment on Plaintiff's Complaint before the parties had engaged in discovery.

5.      Attached hereto as <u>Exhibit A</u> is a true and correct copy of the Construction Loan Agreement, dated September 15, 2008.

6.      Attached hereto as <u>Exhibit B</u> is a true and correct copy of the Verified Complaint, filed November 14, 2012.

7.      Attached hereto as <u>Exhibit C</u> is a true and correct copy of the Answer, filed February 15, 2013.

8.      Attached hereto as <u>Exhibit D</u> is a true and correct copy of the Order entered on February 28, 2014 by the Hon. Joel A. Pisano, U.S.D.J. granting Plaintiff's Motion to Dismiss Defendant's Counterclaims and its Motion for Summary Judgment as to Plaintiff's Complaint.

9.      Attached hereto as <u>Exhibit E</u> is a true and correct copy of the Opinion by Hon. Joel A. Pisano, U.S.D.J., entered on February 28, 2014.

10.     Attached hereto as <u>Exhibit F</u> is a true and correct copy the report dated September 16, 2008 by Lenders Choice Network, Bates-stamped CHPAVING 117 – 137.

11.     Attached hereto as <u>Exhibit G</u> is a true and correct copy of the Report dated October 15, 2010 by Trinity Inspection Services, LLC, Bates-stamped CHPAVING 1019-1044.

12.     Attached hereto as <u>Exhibit H</u> is a true and correct copy of the Advance Approval/Sign Off, dated September 24, 2008, Bates-stamped CHPAVING 92-100.

13.     Attached hereto as <u>Exhibit I</u> is a true and correct copy of the Cost Breakdown Detail, dated September 24, 2008, Bates-stamped CHPAVING 103-107.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

**LUM, DRASCO & POSITAN LLC**
Attorneys for Defendant, Kirby Westheimer


By: _/s/  PAUL A. SANDARS, III_____
     PAUL A. SANDARS, ESQ.
     A Member of the Firm

DATED: August 14, 2015

# EXHIBIT A

Case: 15-3562    Document: 003112161259    Page: 36    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG    Document 68    Filed 08/18/15    Page 6 of 71 PageID: 759
Case 3:12-cv-07080-JAP-LHG    Document 1    Filed 11/14/12    Page 9 of 56 PageID: 9

## CONSTRUCTION LOAN AGREEMENT

Loan No. 7102396632                          Date:  September 15, 2008

THIS CONSTRUCTION LOAN AGREEMENT (the "Agreement") is made by and between  Kirby    Westheimer,    ("Owner"), whose address is 210  MERCER  STREET    , PRINCETON, NJ  08540 ,

and

Merrill Lynch Credit Corporation , a  Delaware  Corporation    . ("LENDER"), whose address is  5201 Gate Parkway Jacksonville, FL 32256
Recitals

A.   LENDER is making a construction loan to OWNER in the  aggregate principle amount of  $1,500,000 00 (the "Loan")

B.   The Loan is evidenced by the Owner's promissory note of this date (the "Note").

C.   The Loan is secured by a mortgage of this date from Owner to LENDER and, for Mortgage 100℠ accounts, by a Pledge Agreement for Securities Account and related documents, and for Parent Power ® accounts, further secured by either a Parent Power® Guaranty and Security Agreement for Securities Account and related documents or a Parent Power ® Guaranty Agreement for Real Estate and related documents (collectively referred to herein as the "Security Documents").

D.   The Security Document creates a lien in favor of LENDER on the real property and improvements owned by Owner located in MERCER County, New Jersey (the "Property"). The Property is more particularly described on attached Exhibit A.

E.   This Agreement sets forth rights and responsibilities of LENDER and Owner regarding the Loan

NOW, therefore, for good and valuable consideration, Owner and LENDER agree as follows

### ARTICLE 1  DEFINITION OF TERMS

Some terms are defined in the recitals above.  In addition, the following terms shall have the following meanings;

"Construction Contract" is the contract between Owner and the Contractor for the construction of the Improvements.

"Construction Costs" means the  estimated cost of the Improvements of $2,567,123.00, as provided in the Construction Contract.

"Construction Cost Deficiency" means an amount which may be established by LENDER at any time during the term of the Loan if LENDER determines that the actual total cost to complete construction of the Improvements may or will exceed the sum of the Loan Proceeds and the funds representing the Cost Balance, if any.

"Construction Period" means the period ending  03/31/2010 .

"Contractor" means  Madar Construction .

"Cost Balance" means the negative difference, if any, between the Loan Proceeds and the Construction Costs.

"Disbursement Schedule" means the schedule of disbursements attached as Exhibit B, as the same may be amended from time to time.

"Improvements" means the Improvements to be constructed on the Property in accordance with the Plans and Specifications.

"Lien Law" means the mechanics lien law or similar law in force in the State.

"Loan Proceeds" means the net funds available for disbursement as proceeds of the Loan to finance the construction of the Improvements after payment of any applicable closing costs and related expenses.

"Plans and Specifications" means the construction drawings, plans and specifications and addenda for construction of the Improvements, as delivered by Owner to LENDER.

"State" means the State of New Jersey.

A-44

Case: 15-3562     Document: 003112161259     Page: 37     Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68   Filed 08/18/15   Page 7 of 71 PageID: 760
Case 3:12-cv-07080-JAP-LHG   Document 1   Filed 11/14/12   Page 10 of 56 PageID: 10

ARTICLE 2. CONSTRUCTION LOAN AND DISBURSEMENTS

2.1   Construction Loan.

    a.   LENDER makes the Loan to Owner for the purpose of the construction of the Improvements.

    b.   Construction of the Improvements will be completed no later than the end of the Construction Period, unless Borrower has requested an extension of the Construction Period, in accordance with the Security Documents, and Lender has approved such extension request. An extension may be evidenced by a Notice from Lender to Borrower, setting forth the new expiration dated of the Construction Period, the new Commencement Date (as that term is defined in the Note) and the interest rate for the extended Construction Period, which interest rate will be established pursuant to the terms of the Note.

2.2   Cost Balance and Construction Cost Deficiency

    a.   Any Cost Balance will be funded by Owner before the disbursement of any loan proceeds by LENDER.

    b.   If required by LENDER, Owner will fund the Cost Balance, and deliver the Cost Balance to LENDER on the closing of the Loan.

    c.   Owner represents and warrants to LENDER that the Loan Proceeds and the funds representing the Cost Balance, if any, will be sufficient to pay in full the cost of construction of the Improvements.

    d.   At any time during the term of the Loan, LENDER may determine that the actual cost to complete construction of the Improvements may or will exceed the sum of the Loan Proceeds and the funds representing the Cost Balance, if any. In that event, Owner will fund such excess cost prior to any disbursement or further disbursement being made by LENDER. In the alternative, Owner will, upon demand of LENDER, deliver the amount of such excess cost (the "Construction Cost Deficiency") to LENDER

    e.   LENDER will hold any Cost Balance and any Construction Cost Deficiency for subsequent Advances. At LENDER's option, the Cost Balance and/or the Construction Cost Deficiency may be applied in full to the Construction Costs before disbursement of any Loan Proceeds, or may be applied proportionately with the Loan Proceeds to the Construction Costs.

    f.   LENDER has no obligation to pay interest to Owner for sums held by LENDER.

    g.   Owner releases LENDER from any loss resulting from the handling of the funds held by LENDER if LENDER acts in the usual course of business.

    h.   Owner agrees that the holding, application and disbursement of any Cost Balance and any Construction Cost Deficiency will be for the account of Owner. However, it is expressly understood by Owner and LENDER that the holding, application and disbursement of the funds is for the protection of LENDER.

2.3   Disbursement of Funds; Limit on Stored Materials; Retainage; Set-Off.

    a   The Loan Proceeds, any Cost Balance, and any Construction Loan Deficiency will be disbursed by LENDER in accordance with the Disbursement Schedule, subject to the terms and conditions of this Agreement, and subject to the provisions of the Lien Law.

    b   If LENDER and the Owner have executed a Funding Agreement for Lot Acquisition, disbursements will be made as set forth in the Funding Agreement until such time as a Disbursement Schedule is completed.

    c.   Owner and the Contractor have approved the Disbursement Schedule. Upon LENDER's request, Owner will promptly furnish LENDER with an itemized breakdown of the Construction Costs.

    d   Unless otherwise set forth in the Disbursement Schedule, Owner will use the Loan Proceeds only for the payment of costs directly associated with the construction of the Improvements.

    e.   Nothing in this Agreement shall impose upon LENDER any obligation to see to the proper application of any payments made by Owner.

    f.   Disbursements will be made by check made payable to Owner or, LENDER's sole discretion, made payable jointly to Owner and the Contractor and/or subcontractors.

    g.   LENDER in its sole discretion may make payments for labor, services or materials due under the Construction Contract, or otherwise, directly to the Contractor, any lienor, or any other person who has furnished or performed the same.

    h.   No funds will be disbursed for materials stored on the Property without LENDER's prior written consent. Any materials stored on the Property for which LENDER has disbursed funds will be properly identified and inventoried, protected by adequate security measures to prevent theft, vandalism or damage and properly insured for full replacement value. Owner hereby grants LENDER a security interest in such stored materials and any insurance proceeds resulting from a loss of such stored materials, and will, upon LENDER's request, execute and deliver a financing statement meeting the requirements of the Uniform Commercial Code in the State evidencing LENDER's first lien security interest in such stored materials.

Case: 15-3562     Document: 003112161259     Page: 38     Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68   Filed 08/18/15   Page 8 of 71 PageID: 761
Case 3:12-cv-07080-JAP-LHG   Document 1   Filed 11/14/12   Page 11 of 56 PageID: 11

    i      LENDER may, in its discretion, elect to withhold from each disbursement 10% of the scheduled disbursement amount, as retainage. Such retainage, if withheld from each disbursement, will be disbursed with the final scheduled disbursement, subject to the remaining terms and conditions of this Agreement.

    j.     LENDER may, in its discretion, elect to set off any and all sums due or to become due to LENDER from Owner, including but not limited to unpaid interest, inspection fees, and/or appraisal fees from and against any disbursement(s).

2.4    Requests for Disbursement

    a.     LENDER will have no obligation to disburse funds unless.

        1.    Owner has delivered to LENDER a signed request for disbursement in form and content satisfactory to LENDER.

        2.    Payroll and material invoices and/or contracts have been provided by Owner to the satisfaction of LENDER.

        3.    Labor and materials have been delivered to, used upon, and incorporated in the Improvements, in a manner satisfactory to LENDER and in compliance with the Plans and Specifications.

        4     LENDER has conducted such inspections as it may require, and the results of the inspections are satisfactory to LENDER.

        5.    Owner has funded any Cost Balance, or pursuant to demand by LENDER, LENDER has received any required Cost Balance or Construction Cost Deficiency.

        6     Owner is in full compliance with, and is not in default under, this Agreement the Note or the Security Document, and no event has occurred that with the giving of notice and/or the passage of any applicable grace period would constitute a default of Owner under this Agreement, the Note, or the Security Documents.

        7.    LENDER has received such documents and/or information as the title insurance company that is insuring the lien of the Security Document may reasonably require.

        8.    Each request for disbursement is accompanied by such waivers of lien, releases of lien, requisitions for payment for subcontractors, and material men, receipts, and other documents as may be required by LENDER.

        9.    LENDER has received a current notice of title continuation or endorsement to the Title Policy, which notice or endorsement will (i) increase the coverage of the Title Policy to the total amount of the Loan that will be outstanding after the requested advance, (ii) confirm that since the last preceding endorsement received by LENDER there has been no change in the state of the title approved by LENDER and (iii) contain such affirmative assurances as LENDER will require.

        10.    LENDER has received and approved the Foundation Survey (section 3 7b) before any disbursement will be made for construction of structural (as opposed to foundation) improvements.

        11    Such disbursement will be in accordance with the Lien Law and any applicable laws of the State.

        12.    Such disbursement will be in accordance with any rights of LENDER reserved to it under this Agreement

    b.     In addition to the items specified above, and before the first disbursement of funds by LENDER, the Owner will have delivered to LENDER:

        1.    Satisfactory evidence that all permits and/or approvals, including, without limitation, the building permit and zoning and subdivision approvals necessary for the construction of the Improvements have been obtained, are in full force and effect, and will not expire prior to the termination of the Construction Period,

        2.    A letter of the Owner's architect, if any, in the form requested by LENDER.

        3.    Satisfactory evidence that all utility services necessary for the construction and use of the Improvements are or will be available at the proper time to serve the Improvements.

        4.    The Title Policy (section 3.6a).

        5     The Boundary Survey (section 3.7a).

    c.     In addition to the items specified above, and before the final disbursement of funds by LENDER, the Owner will have delivered to LENDER,

        1.    A final, as built survey prepared by a licensed surveyor and certified to Lender and title insurer, showing the Improvements (section 3.7c)

        2.    A permanent certificate of occupancy (or its equivalent), if available (section 3.8c.5).

2.5    Inspection Rights and Fees; Correction of Defects

    a.     LENDER or its agents will have the right at all times during the period of construction to enter upon the Property to conduct inspections. LENDER will have the right to inspect all records related to the construction of the Improvements at any reasonable time.

Page 3

A-46

Case: 15-3562    Document: 003112161259    Page: 39    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG    Document 68    Filed 08/18/15    Page 9 of 71 PageID: 762
Case 3:12-cv-07080-JAP-LHG    Document 1    Filed 11/14/12    Page 12 of 56 PageID: 12

b.  Scheduled inspections will be required for each disbursement under the Disbursement Schedule

c.  Owner will pay all costs of LENDER inspections conducted pursuant to this section. The estimated cost of each inspection is $125.00. At closing of the Loan, Owner will pay to LENDER the sum of 2,000.00 representing the inspection fees payable for 16 inspections. If more than 16 inspections of work in progress are required, then prior to each such additional inspection Owner will pay to LENDER the applicable fee for such inspection. If Owner fails to make such payment, LENDER may disburse to itself such inspection fee out of the Loan Proceeds, the Cost Balance, if any, or such other funds delivered to LENDER pursuant to the terms of this Agreement.

d.  LENDER is under no obligation to supervise construction of the Improvements. LENDER's inspection of the construction of the Improvements is for the sole purpose of protecting and preserving the security of LENDER. No inspection is to be construed as a representation or endorsement that the construction of the Improvements is in fact in compliance with Plans and Specifications, that the construction will be free of defective material or workmanship, or that the construction is in compliance with limitations or requirements imposed by covenants and restrictions of record or by governmental authority.

e.  LENDER has the right to disapprove defective work and materials and may in its discretion, but it is not obligated to, withhold disbursements until any defects are corrected in a good and workmanlike manner and in compliance with applicable law and this Agreement.

2.6  Bond Requirement. At LENDER's option, the Construction Contract will be covered by payment and performance bonds furnished to and acceptable to LENDER in its sole discretion, in an amount not less than 110% of the Construction Costs.

2.7  Signs. LENDER will have the right, at LENDER's expense, to place and maintain a sign or signs on the Property for the purpose of publicizing LENDER's involvement as construction lender for the Improvements. LENDER's sign will be subject to applicable governmental requirements.

2.8  Costs. Owner will be responsible for all costs, fees, and expenses relating to the Loan and to the construction of the Improvements. These include

a.  LENDER's legal counsel.

b.  Preparation of a title insurance of commitment and issuance of a title insurance policy insuring LENDER's interest in the Security Document.

c.  Surveys of the Property.

d.  Appraisal of the Property.

e.  Architecture and engineering services and inspections.

f.  Any taxes or official fees

g.  Construction Inspection fees.

h.  Recording fees and charges.

ARTICLE 3  CONSTRUCTION OF IMPROVEMENTS

3.1  Plans and Specifications.

a.  No change in the Plans and Specifications will be made without the express written approval of LENDER

b.  Any work shown on the construction drawings for the Improvements but not shown in the Plans and Specifications, or vice versa, is to be executed to the same extent as if such work were particularly specified or set forth in the construction drawings or the Plans and Specifications, as the case may be

c  All Plans and Specifications delivered to LENDER are and remain the property of LENDER

3.2  Construction Standards. Owner certifies that the Improvements will be built and constructed:

a  In a first class and workmanlike manner;

b  In full and strict compliance with the Plans and Specifications;

c.  In full and strict compliance with all limitations, reservations, covenants and restrictions of record affecting the Property or the construction of the Improvements;

d.  In accordance with the provisions of any and all applicable Federal, State, county or municipal building and zoning, land use , environmental, construction and mechanics lien laws, and public safety codes, laws, ordinances, rules and regulations.

8761107 (332497).04                                                                                                                    Page 4

A-47

Case: 15-3562     Document: 003112161259     Page: 40     Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG     Document 68     Filed 08/18/15     Page 10 of 71 PageID: 763
Case 3:12-cv-07080-JAP-LHG     Document 1     Filed 11/14/12     Page 13 of 56 PageID: 13

3.3     Selection of Contractor.

    a.     Owner is solely responsible for selecting and retaining the Contractor at Owner's sole risk and expense. The Contractor will be a general contractor licensed in the State, and will be subject to LENDER's prior evaluation and acceptance which may be granted or withheld in LENDER's reasonable discretion. LENDER's right of evaluation and acceptance is given for the purpose of preserving and protecting the value of LENDERS's security for the Loan, and is not an endorsement, guarantee or recommendation of the performance of the Contractor, the quality of his work or his financial condition. Owner accepts full responsibility for selection of the Contractor and any subcontractors and all materials, supplies and equipment to be used in the construction of the Improvements.

    b.     LENDER will have no liability or responsibility for completion of the Improvements, or for any loss, cost, damage or expense sustained by Owner as a result of LENDER's acceptance of or failure to accept any particular general contractor, or otherwise.

    c.     Owner will disclose to LENDER on a current and ongoing basis, the names of all persons with whom Owner has contracted or intends to contract for the construction of the Improvements or for the furnishing of labor, materials or services therefor. When required by LENDER, Owner will obtain the consent of LENDER to the engagement of all such persons. LENDER's review and acceptance of any such persons or parties is intended for the protection of LENDER's security, and is not an endorsement of the workmanship or financial condition of any such person or party.

3.4     Assignment of Construction Contract/Subordination of Vendee's Lien.

    a.     The Owner hereby assigns to LENDER all of the Owner's right, title and interest in and to the Construction Contract and all permits, Plans and Specifications

    b.     LENDER does not assume any of the obligations of the Owner under the Construction Contract, all of which are expressly retained by the Owner.

    c.     Upon payment in full of the Note and fulfillment of all obligations to LENDER under the terms of this Agreement, the Note, the Security Documents, and any other documents required to be delivered in connection herewith or therewith, this assignment will automatically become null and void.

    d.     Owner hereby subordinates any equitable lien which may arise under any purchase and sale contract to the lien of the Security Documents.

3.5     Insurance.

    a     Owner will procure and maintain during the entire term of the Loan pre-paid All Risk Property insurance policies (and during the period of any construction on the Property, "Builder's Risk" All Risk policies) covering the Improvements to be constructed on the Property, including replacement cost coverage and inflation adjustment endorsements, comprehensive general liability policies and such other insurance policies as LENDER reasonably may require. All hazard insurance policies will be in an amount not less than the greater of (i) full replacement value of the Improvements, or (ii) the Loan amount. Liability insurance coverage will include single claim limits satisfactory to LENDER.

    b.     All insurance policies will be issued by companies, on forms and with deductibles all of which will be subject to LENDER's approval, and will recite LENDER's interest as mortgagee in standard non-contributory mortgagee clauses (New York standard) effective as of closing of the Loan; will be maintained throughout the term of the Loan without cost to LENDER; and will contain such provisions as LENDER deems necessary or desirable to protect its interest in the security, including without limitation a provision for thirty (30) days' prior written notice to LENDER of cancellation of or any change in the risk or coverage insured.

    c.     Flood insurance naming LENDER as mortgagee is required if the Property is shown to be in a Special Flood Hazard Area (flood zone "A" or "V") by the Foundation Survey. Owner will provide LENDER with current insurance certificates indicating LENDER's interest and the required insurance coverages in effect at all times and as provided above, and will furnish to LENDER, upon LENDER's request, verification that all insurance premiums have been paid on a timely basis.

3.6     Title Insurance.

    a.     At or prior to closing of the Loan, Owner will at Owner's expense deliver to LENDER a current commitment for title insurance, committing to insure LENDER as the holder of a first lien on the Property pursuant to the Security Document, and subject only to such matters as LENDER may approve in its sole discretion (the "Title Policy")

    b.     Prior to disbursement of any Loan Proceeds, Owner will at Owner's expense cause a title insurance policy to be issued to LENDER on the basis of the title commitment as approved by LENDER.

3.7     Surveys. Owner will at Owner's expense deliver to LENDER the following surveys of the Property:

    a.     A current boundary survey (the "Boundary Survey").

Case: 15-3562     Document: 003112161259     Page: 41     Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68   Filed 08/18/15   Page 11 of 71 PageID: 764
Case 3:12-cv-07080-JAP-LHG   Document 1   Filed 11/14/12   Page 14 of 56 PageID: 14

b.   A foundation survey when the foundation of the Improvements has been substantially completed (the "Foundation Survey").

c.   A final "as-built" survey when the Improvements have been completed (the "Final Survey"). Unless otherwise set forth in the Disbursement Schedule, receipt by LENDER of the Boundary Survey and the Foundation Survey is required prior to disbursement of any Loan Proceeds. Each survey will be certified to LENDER and the title insurer, will meet the minimum technical standards of the State, will include a certificate of whether the Property is located within a Special Flood Hazard Area, and otherwise will be subject to LENDER's approval.

3.8   Commencement and Completion of Construction.

a.   Construction of the Improvements will commence within 15 days following the date of this Agreement, and will proceed continuously and diligently, and in a good and workmanlike manner, so that construction of the Improvements will be completed within the Construction Period, unless extended in writing by LENDER, as set forth in section 2.1b herein.

b.   If Owner and LENDER have executed a Funding Agreement for Lot Acquisition, construction of the Improvements will commence within twelve (12) months from the date of the Funding Agreement.

c.   For purposes of this Agreement and all other documents governing Owner's mortgage loan, the Actual Completion Date is when the following conditions are satisfied.

   1.   An inspector approved by LENDER will have certified to LENDER that (a) the physical construction of the Improvements has been completed in the strict compliance with the Plans and Specifications and (b) all utilities serving the Property have been connected and are operating.

   2.   The Final Survey shows that all Improvements lie entirely within the boundary and setback lines of the Property and do not encroach upon any easements or rights-of-way on the Property and which is otherwise satisfactory to LENDER.

   3.   A final certificate of occupancy (or its equivalent) has been issued for the Improvements by the governmental authorities having jurisdiction over the Improvements which confirms that construction of the Improvements have been completed in accordance with all applicable requirements. If a certificate of occupancy is not required by local law, evidence that the Improvements have passed all inspections and received all approvals which are conditions precedent to occupancy of the Improvements must be furnished.

   4.   LENDER has received a final lender's policy of title insurance in form and substance satisfactory to LENDER in its sole discretion and Owner agrees to execute any and all documents, instruments, and affidavits to induce title company to issue such policy.

   5.   Proof of hazard insurance listing LENDER as loss payee and flood insurance, if applicable.

The "Commencement Date" is the first day of the next calendar month following the later of (i) the Actual Completion Date and (ii) the date of the upon which LENDER has received from Owner fully executed originals of all documents, instruments or affidavits reasonably requested by LENDER in memorializing the agreements of the parties relating to the permanent loan. The Commencement Date is the date Owner's permanent loan interest rate commences.

3.09  Power of Completion. In the event of death or bankruptcy of the Owner or the Contractor, or general assignment for the benefit of creditors by Owner or the Contractor during the period of construction of the Improvements and before completion thereof, or upon any other occasion that might result in cessation of work, LENDER will have full power to take charge of and complete the construction of the Improvements and make disbursements of the Loan Proceeds and funds representing the Cost Balance or such other funds delivered to LENDER as provided herein, but nothing contained herein shall be construed as imposing upon LENDER the obligation to do so

3.10  Licenses/Permits. Owner has obtained or will have obtained prior to commencement of construction all licenses, permits and approvals of governmental authorities necessary or convenient for the construction of the Improvements, including without limitation, licenses, permits and approvals relating to building and construction, zoning, land use, environmental, and other regulations relating to the construction, ownership, development, use or occupancy of the Improvements of the Property.

3.11  Reappraisal Provision. If at any time and for any reason LENDER determines the value of the Property may have declined or be less than LENDER previously anticipated, with three (3) days from LENDER's written notice to Owner, LENDER may order a current appraisal of the Property from an appraiser designated by LENDER and in form and content as required by LENDER. The appraisal shall be at Owner's sole cost and expense. Owner shall cooperate fully with any such appraiser. If the reappraised value of the Property and the Improvements does not at least equal the original appraised value, Owner agrees to deposit with LENDER upon demand cash or other collateral acceptable to LENDER in an equal amount to the decline value. The cash or other collateral shall be pledged to LENDER as additional security for this loan and shall be held in a pledge to LENDER as additional security for this loan and shall be held in a pledged account or other credit arrangement acceptable to LENDER. The pledge of the cash or other collateral shall remain effective until the value of the Property and the Improvements has increased to the original appraised value.

Case: 15-3562     Document: 003112161259     Page: 42     Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68   Filed 08/18/15   Page 12 of 71 PageID: 765
Case 3:12-cv-07080-JAP-LHG   Document 1   Filed 11/14/12   Page 15 of 56 PageID: 15

ARTICLE 4.  LIEN LAW COMPLIANCE

4.1  Lien Law Compliance.  Owner's payment of amounts due under the Construction Contract will be subject to the requirements of the Lien Law.  Owner accepts full responsibility for compliance, and will comply with the Lien Law, and relieves LENDER from any and all liability thereunder of any nature whatsoever.

4.2  LENDER Notification.  Owner will notify LENDER immediately upon the filing of any notice or lien required or permitted under the Lien Law immediately upon Owner's receipt of same.

4.3  LENDER's Right to Disburse.  If LENDER has not received notice of any matters described in section 4.2 above at the time of any disbursement under this Agreement, then LENDER may disburse as directed by this Agreement without notice to Owner and without regard to the provisions of the Lien Law, and without responsibility or liability to Owner or the Contractor, or to any subcontractors, laborers, material men on lien claimants.

4.4  Releases of Lien.  Prior to each disbursement, Owner will furnish to LENDER releases of lien for all persons who have filed liens or have complied with all statutory prerequisites for filing a lien against the Property under the Lien Law and, upon request, releases and waivers of any right to equitable liens on the Property, the undisbursed Loan funds, and proceeds from any sale of the Property.

4.5  Proof of Payment.  Upon completion of construction of the Improvements and contemporaneously with disbursement of the final payment due to the Contractor under the Construction Contract, Owner will furnish to LENDER any documentation required under the Lien Law to evidence that all amounts due to the Contractor and all subcontractors, laborers and material men have been paid to the parties entitled to such payments, and that there are no amounts remaining unpaid for which a lien against the Property could arise under the Lien Law.

4.6  Direct Payments.  Nothing in this Article 4 will in any way restrict LENDER's prerogative for protection of its security interest to make payments directly to subcontractors, laborers, material men or lien claimants.

4.7  Priority of Security Documents.  Owner acknowledges that the lien of the Security Document is intended to be superior to any lien arising under the Lien Law.  If any event will have occurred, including the filing of any notice under the Lien Law, that would cause the lien of the Security Document to become secondary to any lien arising under the Lien Law, LENDER will have the right to cancel this Agreement and Owner will reimburse LENDER for its costs and expenses incurred to date.  Owner certifies that there has been no construction activity or other actions taken on or with respect to the Property as of the date hereof for which a lien could attach to the Property pursuant to the Lien Law that would be superior to the lien of the Security Document (except such activity or actions as have been expressly disclosed in writing to LENDER prior to the closing of the Loan), OWNER agrees to execute any and all documents and do any and all further acts necessary to protect the superiority of LENDER's Security Documents as determined by LENDER in its sole discretion

4.8  Transfer of Lien.  If a lien is filed against the Property under the Lien Law, Owner will at LENDER's request transfer such lien to bond or other security as provided under the Lien Law within 10 days after such lien filed.

4.9  Contested Lien  LENDER has the right to contest any lien filed or to transfer the lien to other security if Owner fails to do so in a timely manner.  The cost of such action will become part of the indebtedness under the Note, and secured by the Security Documents.

ARTICLE 5  REPRESENTATIONS AND WARRANTIES OF OWNER

5.1  Existence.  Owner, if a corporation, is duly authorized, validly existing and in good standing under the laws of the state of its incorporation and the laws of the State, and has all necessary corporate power to enter these agreements.  Owner, if a partnership, is validly existing and in good standing under the laws of the state of its formation and, if required, is qualified to do business in the State, and the partners executing this Agreement and the Note and Security Documents have lawful authority to bind the partnership in accordance with the terms of this Agreement, the Note and Security Documents and any other document being executed by the partnership for the benefit of the LENDER

5.2  No Default.  Owner is not in default and has not breached in any material respect any agreement or instrument to which it is a party or by which it may be bound, the execution and delivery of this Agreement, the Note and Security Documents, and the consummation of the other transactions contemplated herein do not conflict with or result in (i) a violation of any regulation, order, writ, judgment, injunction or decree of any court or governmental or municipal instrumentality or (ii) the breach of or default under an agreement or instrument to which Owner is a party or by which it may be bound.

5.3  Compliance with Laws.  Owner has obtained all necessary governmental approvals, including FHA and VA approvals, if applicable, necessary to commence construction of the Improvements.

5.4  Utilities and Zoning.  Sewer or septic tank systems, water and all other necessary utilities are available to serve the Property and the Improvements in sufficient quantity for their intended use, without necessity of obtaining further approvals, authorizations, waivers, consents, exceptions or variances.  Utility service necessary for the issuance of a certification of occupancy or completion, or its equivalent, is available to the boundaries of the Property in sufficient capacity to serve the Improvements.  The current zoning of the Property permits the construction and intended use of the Improvements and no new or additional governmental approvals or authorizations are, or will be, required.

5.5  Absence of Proceeding and Actions  There are no actions, suits or proceedings pending or, to the knowledge of Owner, threatened against or affecting Owner or the Property, or any guarantors of the Loan.

Case: 15-3562    Document: 003112161259    Page: 43    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68   Filed 08/18/15   Page 13 of 71 PageID: 766
Case 3:12-cv-07080-JAP-LHG   Document 1   Filed 11/14/12   Page 16 of 56 PageID: 16

5.6    Financial Statements.  All financial statements of Owner and any guarantors of the Loan submitted to LENDER are true and correct as of the date of this Agreement.

I'D    Condition of Property.  To the best of the Owner's knowledge, the Property does not contain any materials or substances that are prohibited or regulated by Federal, State or local laws, or that are known to pose a hazard to the environment or human health    The Property is not now being used nor, to the best of the Owner's knowledge, has ever been used for any activities directly or indirectly involving the generation, use, treatment, storage or disposal of any hazardous or toxic substance, except as customarily may be necessary or required for the construction of the Improvements.

ARTICLE 6.  DEFAULT AND REMEDIES

6.1    Owner will be in default if any of the following occurs:

   a.    Owner fails to make any payment due to LENDER under the Note, under this Agreement, or otherwise, when the same is due,

   b.    Owner fails to perform any obligation strictly according to the terms of this Agreement.

   c.    Owner has made any representation or warranty to LENDER which was untrue in any material respect when it was made.

   d.    Owner is in default under the terms of the Note, Security Documents, or any other agreement with LENDER.

   e.    Contractor fails to perform under the terms of the Construction Contract

   f.    Construction of the Improvements is interrupted or suspended for a period of more than 10 days

6.2    In the event of any default, LENDER may, as its option, give Owner 10 days written notice to correct such default.  Upon failure of owner to correct such defaults within the 10 day period and such reasonable extensions thereof as may be granted by LENDER, LENDER may exercise the remedies set forth below.

6.3    If Owner is in default under this Agreement, LENDER has the following remedies:

   a.    LENDER may withhold further disbursement of the Loan Proceeds and such other funds as have been delivered to LENDER pursuant to this Agreement.

   b.    LENDER may credit all funds of Owner then in LENDER's control against the indebtedness due to LENDER under the Note.

   c.    LENDER may declare the obligation evidenced by the Note, plus all other amounts payable to LENDER by Owner, to be immediately due and payable in full.

   d.    LENDER may exercise its remedies under the Note and Security Documents.

   e.    LENDER may assume full charge of the construction of the Improvements and proceed to enter into a contract with the Contractor or a third party contractor for the completion of the Improvements.

LENDER shall have any other remedy or right allowed by law.  The remedies and rights of the LENDER hereunder shall be cumulative

6 4    Payment to LENDER.  In the event LENDER completes the Improvements, either before or after default, Owner will pay to LENDER, upon demand, all amounts that may be disbursed in completing the Improvements, together with reasonable compensation to LENDER for extra services rendered by it in completing the Improvements, in excess of the Loan Proceeds and such other funds which have been delivered to LENDER pursuant to this Agreement.  Owner's obligation to deliver such excess sum will be secured by the lien of the Security Documents

6.5    Reimbursement of LENDER.  Owner shall reimburse LENDER for all costs and expenses incurred by LENDER in connection with any controversy, claim, demand or suit filed in connection with construction of the Improvements, the performance by either party of this Agreement, or Loan Proceeds and such other funds as have been delivered to LENDER pursuant to this Agreement, including all court costs LENDER's reasonable attorneys' fees.

ARTICLE 7.  ADDITIONAL PROVISIONS

7.1    Discretion of LENDER.  Any provision of this Agreement which provides discretion to LENDER (e.g  "LENDER may", "if required by LENDER", "subject to LENDER's approval" etc.) shall mean LENDER's sole discretion, whether or not that standard is explicitly stated.

7 2    Notices and Copies.  All notices or copies referred to herein will be sent certified mail, return receipt requested to LENDER and to Owner at the addresses as shown in the introductory paragraph of this Agreement,

7.3    Amendments.  This written Agreement constitutes the entire agreement between parties with respect to the subject matter hereof, may be modified or amended only by a written instrument signed by both LENDER and Owner, and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements between the parties.  Notwithstanding the foregoing, the Construction Period may be modified solely by LENDER as set forth in Article 2.1 b.  There are no unwritten oral agreements between the parties.  No action or omission of LENDER, nor any waiver, acquiescence or course of dealing, will be deemed to affect the specific rights and obligations of the parties as set forth in this Agreement, or constitute an amendment or modification of this Agreement

A-51

Case: 15-3562     Document: 003112161259     Page: 44     Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68   Filed 08/18/15   Page 14 of 71 PageID: 767
Case 3:12-cv-07080-JAP-LHG   Document 1   Filed 11/14/12   Page 17 of 56 PageID: 17

7.4   Severability. If any of Owner's promises in this Agreement should be held to be unenforceable for any reason, the remaining portions of this Agreement will remain in full force and effect, and be interpreted to the same extent as if such unenforceable provisions originally had not been included in this Agreement. Any part, provision, representation or warranty of the Agreement that is prohibited or unenforceable or is held to be void or unenforceable in any jurisdiction shall be ineffective, as to such jurisdiction, to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof.

7.5   Successors and Assigns. This Agreement will be binding upon, and inure to the benefit of, the heirs, personal representatives, successors and assigns of Owner, and the successor and assigns of LENDER. If the Security Document contains a prohibition against the transfer of Owner's interest in the Property, then Owner's interest in this Agreement will not be assignable without the express written consent of LENDER, which consent may be granted or withheld in LENDER's sole discretion. LENDER may assign its rights without the consent of the Owner.

7.6   Governing Law. This Agreement will be governed by and construed in accordance with the law of the State.

7.7   Time of the Essence. Time is considered of the essence of this Agreement and the satisfaction of the obligations of LENDER and Owner hereunder.

7.8   Borrower-Lender Relationship. This Agreement is made on the basis of a borrower-lender relationship between Owner and LENDER. LENDER will not be considered to constitute a partner, agent or joint venturer of or with Owner or any other party associated with the construction of the Improvements or the ownership of the Property. LENDER will in no manner or respect be liable or responsible, by reason of the provisions hereof, or otherwise, for the payment of any claims growing out of the construction of the Improvements or ownership of the Property by Owner.

7.9   No Third Party Reliance. No third parties, including Contractor, any general contractor, subcontractor, supplier or laborer, will have any rights under this Agreement. This Agreement is made for the sole protection and benefit of Owner and LENDER, and their respective heirs, personal representatives, successors and assigns

7.10 No Waivers of Defaults. Waiver by LENDER of any breach or default by Owner under any terms of the Note, Security Document, or this Agreement shall not be deemed to constitute a waiver of any subsequent breach or default by Owner.

IN WITNESS WHEREOF, Owner and LENDER have executed and delivered this Agreement under seal as of the date first above written.

OWNER:

_____(Seal)        _____(Seal)
Kirby Westheimer

_____(Seal)        _____(Seal)

A-52

# EXHIBIT B

Case: 15-3562    Document: 003112161259    Page: 46    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68   Filed 08/18/15   Page 16 of 71 PageID: 769
Case 3:12-cv-07080-JAP-LHG   Document 1   Filed 11/14/12   Page 1 of 56 PageID: 1

RIKER, DANZIG, SCHERER, HYLAND & PERRETTI LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, New Jersey 07962-1981
(973) 538-0800
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BANK OF AMERICA, N.A., successor in interest to MERRILL LYNCH CREDIT CORPORATION, by and through its servicer and attorney-in-fact, PHH MORTGAGE CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>KIRBY WESTHEIMER and JOHN DOE #1 through JOHN DOE #40, inclusive,<br><br>Defendants. | Civil Action No.<br><br><br><br><br><br><br>**VERIFIED COMPLAINT** |

Plaintiff, Bank of America, N.A., successor in interest to Merrill Lynch Credit Corporation, by and through its servicer and attorney-in-fact, PHH Mortgage Corporation, alleges:

### PARTIES

1.     Bank of America, N.A. is a national bank chartered in, and therefore domiciled in, North Carolina.  PHH Mortgage Corporation ("PHH") is a New Jersey corporation with its principal place of business located at 2001 Bishops Gate Boulevard, Mount Laurel, New Jersey 08054.  PHH is the servicer of the mortgage loan that is the subject of this action and is duly authorized to prosecute, manage and oversee this action on behalf of Bank of America, N.A., successor in interest to Merrill Lynch Credit Corporation ("MLCC").

2.     On information and belief, defendant Kirby Westheimer (the "Borrower"), is an individual who is a citizen and domiciliary of New Jersey, having an address of 210 Mercer Street, Princeton, New Jersey 08540.

3.     On information and belief, defendants John Doe #1 through John Doe #40, inclusive, are fictitious names of individuals and/or entities that may have an interest in the real property that is the subject of this action.

### JURISDICTION AND VENUE

4.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.  The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between the real party in interest, Bank of America, N.A., and defendants.

5.     Venue is proper pursuant to 28 U.S.C. § 1391(a).

### FACTS

6.     On or about September 15, 2008, MLCC and the Borrower entered into a Construction Loan Agreement, whereby, among other things, MLCC agreed to make a construction loan to the Borrower in the aggregate principal amount of $1,500,000.00 (the "Loan").  Under the Construction Loan Agreement, the Borrower was to use the Loan proceeds to finance the construction of certain improvements to certain real property located at 210 Mercer Street, Princeton, New Jersey 08540 (the "Property"), in accordance with certain plans and specifications.  Further, the improvements to the Property were to be completed by March 31, 2010.

7.     A true and correct copy of the Construction Loan Agreement is attached hereto as **Exhibit A**.

2

Case: 15-3562    Document: 003112161259    Page: 48    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG    Document 68    Filed 08/18/15    Page 18 of 71 PageID: 771
Case 3:12-cv-07080-JAP-LHG    Document 1    Filed 11/14/12    Page 3 of 56 PageID: 3

8.     On or about September 15, 2008, to evidence his indebtedness to MLCC, the Borrower executed and delivered to MLCC an Adjustable Rate Note (the "Note") in the principal amount of $1,500,000.00.

9.     A true and correct copy of the Note is attached hereto as **Exhibit B**.

10.     To secure the performance of the Construction Loan Agreement and repayment of the Note, the Borrower executed and delivered to MLCC a certain mortgage (the "Mortgage") dated September 15, 2008, which, among other conditions, rights, duties and privileges as fully set forth therein, encumbers the Property.

11.     A true and correct copy of the Mortgage is attached hereto as **Exhibit C**.

12.     The Mortgage was duly recorded with the Mercer County Clerk's Office at Book 10191, Page 0403, Control No. 200810060528, Inst. No. RD 2008 035182.

13.     The Construction Loan Agreement, Note and Mortgage shall be collectively referred to as the "Loan Documents."

14.     The Borrower defaulted on the Loan Documents because, among other reasons, he has failed to complete the improvements to the Property in accordance with the Construction Loan Agreement.

15.     On May 21, 2012, Plaintiff sent the Borrower a letter advising him, among other things, that he failed to comply with the terms of the Loan Documents by failing to complete the construction of the Project, that accordingly, pursuant to the New Jersey Fair Foreclosure Act, N.J.S.A. 2A:50-53, et seq., Plaintiff provided him with a Notice of Intention to Foreclose, and that, if the Borrower failed to cure his defaults by June 18, 2012, Plaintiff may take steps to terminate his ownership of the Property by commencing a foreclosure action.

Case: 15-3562     Document: 003112161259     Page: 49     Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68   Filed 08/18/15   Page 19 of 71 PageID: 772
Case 3:12-cv-07080-JAP-LHG   Document 1   Filed 11/14/12   Page 4 of 56 PageID: 4

16.     A true and correct copy of the May 21, 2012 letter is attached hereto as **Exhibit D.**

17.     Despite Plaintiff's demands, the Borrower has failed to cure all of his defaults under the Loan Documents.

18.     As of November 12, 2012, the Borrower owes the total amount of $1,234,024.20 under to the Loan Documents, plus all attorneys' fees and costs incurred in connection with collecting the debt, and interest continues to accrue.

19.     Plaintiff has paid or may be compelled during the pendency of this action to pay local taxes, assessments, water rates, insurance premiums and other charges affecting the Property, and Plaintiff requests that any sums thus paid by it for said purposes (together with interest thereon), should be added to the sum otherwise due and be deemed secured by the Mortgage and be adjudged a valid lien on the Property.

20.     Defendants have, or claim to have, some interest in, or lien upon said Property or some part thereof, which interest or lien, if any, has accrued subsequent to the lien of the Mortgage.

21.     There are no pending proceedings at law or otherwise to collect or enforce said sums secured by the Note and/or the Mortgage, or any parts thereof.

22.     A title search of the public record was received by Plaintiff for purposes of identifying any lienholder or other persons and entities with an interest in the Property at issue and that said title search reviewed by the attorney of record.

23.     **Exhibits A, B, C** and **D** are expressly incorporated and made a part of this Verified Complaint for all purposes with the same force and effect as if they were completely and fully set forth herein whenever reference has been made to each or any of them.

4

Case: 15-3562     Document: 003112161259     Page: 50     Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG  Document 68  Filed 08/18/15  Page 20 of 71 PageID: 773
Case 3:12-cv-07080-JAP-LHG  Document 1  Filed 11/14/12  Page 5 of 56 PageID: 5

## CAUSE OF ACTION FOR FORECLOSURE OF MORTGAGE

24.     Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs of this Verified Complaint inclusive as if set forth fully herein.

25.     The Mortgage allows Plaintiff to foreclose on the Property in the event of a default under the Loan Documents.

26.     Defaults have occurred under the Loan Documents.

27.     As holder of the Mortgage on the Property, Plaintiff is entitled to possession of the Property.

28.     The Borrower is now in possession of the Property and, at all relevant times herein, has deprived Plaintiff of possession thereof.

29.     Plaintiff requests that in the event this action will proceed to judgment of foreclosure and sale, said premises should be sold subject to the following:

(a) Any state of facts that an inspection of the Property may show;

(b) Any state of facts that an accurate survey of the Property may show;

(c) Covenants, restrictions, easements, and public utility agreements of record;

(d) Building and zoning ordinances of the municipality in which the Property are located and possible violations of same;

(e) Rights, if any, of tenants or persons in possession, if any;

(f) Prior lien(s) of record, if any; and

(g) Prior mortgage liens held by Plaintiff and any advances and arrears thereunder.

30.     In the event that Plaintiff possesses any other lien(s) against the Property either by way of judgment, junior mortgage or otherwise, Plaintiff requests that such other lien(s) shall not be merged in Plaintiff's cause(s) of action set forth in this Verified Complaint, but that

5

**A-58**

Case: 15-3562    Document: 003112161259    Page: 51    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG    Document 68    Filed 08/18/15    Page 21 of 71 PageID: 774
Case 3:12-cv-07080-JAP-LHG    Document 1    Filed 11/14/12    Page 6 of 56 PageID: 6

Plaintiff shall be permitted to enforce said other lien(s) and/or seek determination of priority thereof in any independent action(s) or proceeding(s), including without limitation, any surplus money proceedings.

31.    Plaintiff shall not be deemed to have waived, altered, released or changed the election hereinbefore made, by reason of any payment after the commencement of this action, of any or all of the defaults mentioned herein, and such election shall remain effective.

**WHEREFORE**, Plaintiff demands judgment against the defendant(s): (i) fixing the amount of indebtedness due to Plaintiff and secured by the Mortgage held by it on the Property; (ii) barring and foreclosing the Borrower and any and all other defendants from all equity of redemption in and to the Property; (iii) directing the Borrower to repay the amount of indebtedness due, together with interest, late charges, extension charges, advances, attorneys' fees, and cost of suit, as provided in the Mortgage; (iv) directing that the Property be sold according to law to satisfy the amount of indebtedness; including, but not limited to interest, late fees, attorneys' fees, and costs due to Plaintiff; (v) for possession of the Property; (vi) for costs of suit and attorneys' fees; and (vi) for such other and further relief as the Court may deem just and equitable.

Dated: November 14, 2012

RIKER, DANZIG, SCHERER, HYLAND &
PERRETTI, LLP
Attorneys for Plaintiff

By:_____
Anthony J. Sylvester
Jonathan P. Vuotto

**A-59**

## **VERIFICATION**

STATE OF FLORIDA       )
                     ) ss:
COUNTY OF DUVAL     )

     I, William Brian Teague, of full age, being duly sworn according to law, upon my oath do

depose and say:

     1.     I am a Vice President of PHH Mortgage Corporation, the servicer and attorney-in-

fact for Bank of America, N.A., successor in interest to Merrill Lynch Credit Corporation, the

plaintiff in this matter.

     2.     I have read the foregoing Verified Complaint and declare under penalty of perjury

that all of the factual allegations contained herein are true and correct to the best of my

knowledge and all documents attached hereto are true and correct copies of said documents.

<div style="margin-left:40%;">

Bank of America, National Association,
successor in interest by merger to
Merrill Lynch Credit Corporation,
by PHH Mortgage Corporation
its attorney in fact



William Brian Teague
Vice President

</div>

Sworn to before me this 14th
Day of November, 2012,
By William Brian Teague who is
personally known to me.

Notary Public

> SHANNON M. PARMENTER
> Commission # EE 009654
> Expires July 16, 2014
> Bonded Thru Troy Fain Insurance 800-385-7019

Case: 15-3562     Document: 003112161259     Page: 53     Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68   Filed 08/18/15   Page 33 of 71 PageID: 786
Case 3:12-cv-07080-JAP-LHG   Document 1   Filed 11/14/12   Page 18 of 56 PageID: 18

# EXHIBIT B
# TO VERIFIED COMPLAINT

Case: 15-3562    Document: 003112161259    Page: 54    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68   Filed 08/18/15   Page 34 of 71 PageID: 787
Case 3:12-cv-07080-JAP-LHG   Document 1   Filed 11/14/12   Page 19 of 56 PageID: 19

*7102396632*

## ADJUSTABLE RATE NOTE

### (LIBOR Index-Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT OF MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

| September 15, 2008 | PRINCETON | New Jersey |
|---|---|---|
| [Date] | [City] | [State] |

210 MERCER STREET, PRINCETON, NJ 08540

[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 1,500,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is Merrill Lynch Credit Corporation .

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. Until 04/01/2010, which is the date my permanent loan interest rate commences (the "Commencement Date"), I will pay interest at the yearly rate set forth in paragraph 1 of the Addendum to Note Construction/Permanent Loans attached to this Note. Beginning on the Commencement Date, I will pay interest at a yearly rate based upon the Index (as defined in Section 4(B) below) plus the margin set forth in Section 4(C) below. Solely for the purpose of calculating the initial permanent interest rate, the Note Holder will use the most recent Index figure available as of the date that construction is actually completed ("Actual Completion Date"), as determined in accordance with the terms of the Construction Loan Agreement of even date. I will pay interest at this rate until the first Change Date, set forth in Section 4(A). The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3. PAYMENTS**

**(A) Time and Place of Payments**

Beginning on May 1st, 2010, and on the first day of each month thereafter, I will pay interest only on the unpaid principal balance of the Note until 03/31/2020 . Thereafter, I will pay principal and interest by making payments every month as provided below. I will make my monthly payments on the first day of each month beginning May, 2020 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on April 1st, 2035, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 371458 Pittsburgh, PA 15250-7458, or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

I will be notified by Note Holder of the amount of each of my monthly payments. This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my Loan and in the interest rate that I must pay . The Note Holder will determine my new interest and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**(D) Withholding**

If I am a nonresident client, I understand that all payments due hereunder shall be paid without reduction for any taxes, deductions or withholding of any nature. If such tax, deduction or withholding is required by any law to be made from any payment to the Note Holder, I shall continue to pay this Note in accordance with the terms hereof, such that the Note Holder will receive such amount as it would have received had no such tax, deduction or withholding been required.

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay will change on the first day of June, 2010, and on that day every month thereafter. Each date on which my adjustable rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for 1-month U.S. dollar-denominated deposits in the London market ("LIBOR") as published in *The Wall Street Journal*. The most recent Index figure available as of the date twenty-five (25) days before each Change Date is called the "Current Index."

Multistate Adjustable Rate Note One Month Libor - CONSTRUCTION
0761394 (040903)44

Initials

*Original*

A-62

Case: 15-3562     Document: 003112161259     Page: 55     Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68   Filed 08/18/15   Page 35 of 71 PageID: 788
Case 3:12-cv-07080-JAP-LHG   Document 1   Filed 11/14/12   Page 20 of 56 PageID: 20

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding One and Eight Hundred Seventy-Five / Thousandths percentage point(s) (1.875%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

**(i) Interest-Only Period.**

The "interest-only period" is the period from the Commencement Date through 03/31/2020. For the interest-only period, after calculating my new interest rate as provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to pay the interest which accrues on the unpaid principal of my loan. The result of this calculation will be the new amount of my monthly payment.

**(ii) Amortization Period.**

The "amortization period" is the period after the interest-only period. For the amortization period, after calculating my new interest rate as provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

My permanent interest rate, commencing on the first Change Date, will never be greater than my initial permanent interest rate plus five percent (5%), or twelve percent (12%), whichever is greater. My permanent interest rate on the Commencement Date will not be greater than 18%.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.   BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6.   LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then; (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.   BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.00% of my overdue payment of interest, or principal and interest, as applicable. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

Multistate Adjustable Rate Note One Month Libor – CONSTRUCTION
6731376 (040513).03

Initials _____
(Page 2 of 3)

A-63

Case: 15-3562    Document: 003112161259    Page: 56    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68   Filed 08/18/15   Page 36 of 71 PageID: 789
Case 3:12-cv-07080-JAP-LHG   Document 1   Filed 11/14/12   Page 21 of 56 PageID: 21

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.   WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.   SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, and a Mortgage 100℠ Pledge Agreement for Securities Account, if applicable, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower.  If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**12.   OUR COPY**

We/I acknowledge receipt of a signed copy of this Note.

**CAUTION-IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS NOTE BEFORE SIGNING.**

WITNESS the hand(s) and seal(s) of the undersigned.

_____ (Seal)          _____ (Seal)
Kirby Westheimer        -Borrower                                   -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                                   -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                                   -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                                   -Borrower

[Sign Original Only]

Note: For Florida property only, the State Documentary Tax due on this Note has been paid on the mortgage securing this indebtedness.

Multistate Adjustable Rate Note One Month Libor - CONSTRUCTION                    Initials_____ (Page 3 of 3)

Case: 15-3562    Document: 003112161259    Page: 57    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG    Document 68    Filed 08/18/15    Page 37 of 71 PageID: 790
Case 3:12-cv-07080-JAP-LHG    Document 1    Filed 11/14/12    Page 22 of 56 PageID: 22

**ADDENDUM TO NOTE CONSTRUCTION/PERMANENT LOANS**

**THIS ADDENDUM TO NOTE,** is made this 15th day of September 2008 and is incorporated and shall be deemed to amend and supplement the Note made by the undersigned (the "Borrower") to Merrill Lynch Credit Corporation and dated the same date as this Addendum (the "Note").

In addition to the covenants and agreements made in the Note, Borrower and Lender further covenant and agree as follows:

1.  Construction Interest Rate. The proceeds of the loan evidenced by the Note are to be disbursed according to the terms of the Construction Loan Agreement of same date between Borrower and Lender (the "Construction Loan Agreement"). Notwithstanding the terms of the Note, until the Commencement Date (as defined in the Note) the annual interest rate on the principal balance outstanding at any time under the Note shall be equal to the sum of -0.5% plus the Prime Rate, except as set forth in paragraph 3 (a) below. The "Prime Rate" is the highest Prime Rate published in *The Wall Street Journal.* The Prime Rate for any date on which *The Wall Street Journal* is not published shall be the Prime Rate in effect on the most recent date on which *The Wall Street Journal* was published. As of the date of this Addendum to Note, interest shall be paid at the rate of 4.5000% per annum. The interest may change on the first day of each month based on any change in the Prime Rate as of the last day of the preceding month. Until the Commencement Date, the interest will never be greater than 18% per annum.

2.  Payments During Construction Term. Commencing on the first day of the month following the date hereof and continuing on the same day of each succeeding month thereafter, through and including the Commencement Date, Borrower shall make regular scheduled payments of interest only on the amounts disbursed and outstanding.

3.  Commencement Date Change (if applicable). If the improvements described in the Construction Loan Agreement are to be completed before or after the Commencement Date, Lender may, at its option, move the Commencement Date to a date which is earlier or later than the date defined in such Note, as more particularly set forth below:

(a)    Interest Rate During Extended Construction Phase. Borrower shall request an extension of the construction phase at least five days before the Commencement Date, but in no event earlier than sixty days before the Commencement Date. If Lender approves the extension of the term of the construction phase, the interest rate during the extension period shall be calculated by adding -0.5% to the Prime Rate, plus the Construction Extension Margin .2500%. For each additional extension period approved by Lender, the interest rate to be paid by Borrower during such additional extension period shall be calculated precisely in the manner described in the preceding Sentence, except that, for each such extension, the Construction Extension Margin shall increase by an additional .2500%. Lender may evidence the extension of the construction phase by providing written notice of such extension to the Borrower. With the exception of the interest rate, all the terms and conditions of this addendum shall continue to apply during any such extension and Borrower agrees to make payments, at the then applicable interest rate during such extended period(s).

(b)    Rate Reservation. If the Borrower has entered into a rate reservation agreement, such rate reservation expires on the day preceding the Commencement Date. If Borrower requests an extension of the term of the construction phase, within the frame set forth in subparagraph (a) above, the Borrower has the option either to cap the permanent interest rate or initial permanent rate, as applicable, or "lock-in" such rate, for the duration of the extended construction loan period. Otherwise, the permanent interest rate or initial permanent interest rate, as applicable, will "float" until permanent interest rate is established in accordance with the terms of the Note. If the Borrower does not elect to re-establish rate reservation after it expires, the Borrower's permanent interest rate may be higher than the original rate reserved rate. In the event Borrower elects to re-establish rate reservation, the new rate reservation may result in a rate that is higher than the original capped or locked interest rate and/or the Borrower may have to pay points, depending on the then current market interest rate. In the event construction is not timely completed and the Borrower does not request an extension to the construction phase, the Borrower's interest rate will "float" until the permanent rate is established in accordance with the terms of the Note.

07013191 (03 02.08)

Case: 15-3562     Document: 003112161259     Page: 58     Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68   Filed 08/18/15   Page 38 of 71 PageID: 791
Case 3:12-cv-07080-JAP-LHG   Document 1   Filed 11/14/12   Page 23 of 56 PageID: 23

(c)  Extension of Construction Term.  In the event the construction term is extended, Borrower agrees to execute any additional documentation which Lender may request to confirm the extension, the construction interest rate, the maturity date, the permanent interest rate cap or any other term of the Note.  Notwithstanding the foregoing, Lender may unilaterally modify the dates and interest rate consistent with the terms of this Addendum by sending notice to the Borrower and Borrower agrees to be bound by the modified dates and interest rate in making payments.

4.  Change of Permanent Loan Programs.  Provided that no default exists under the terms of the loan documents, Borrower may, prior to the Commencement Date and with the consent of Lender, elect to amend the interest rate provisions of the Note that are applicable as of the Commencement Date.  Lender may offer Borrower a selection from any one or all interest rate programs then being offered by Lender on comparable mortgage loans, provided that Borrower (i) qualifies at that time for the loan type selected based on Lender's then current underwriting criteria, (ii) provides Lender any current financial information requested, and (iii) provided that Lender's lien position is not impaired.  Depending on the Borrower's circumstances, the program may change from a fixed interest rate to an adjustable interest rate, an adjustable interest rate to a fixed interest rate or from one adjustable interest rate program to a different adjustable interest rate program.  Any rate protection agreement in effect will no longer be applicable in the event the Borrower elects to change loan programs.  If Borrower elects to amend the interest rate provisions of the Note, Borrower agrees to execute any and all modification agreements, replacement notes, or other documents that Lender may reasonably require to effectuate the requested change and pay any and all additional closing costs.

In order to exercise the option to select another interest rate program, Borrower must notify Lender in writing of Borrower's selection at least five days before the Commencement Date, but in no event earlier than sixty days before the Commencement Date.

5.  Modification Agreement.  Following the Actual Completion Date, in order to convert the loan to its permanent phase, the Lender will prepare a Modification Agreement reflecting the correct Commencement Date, loan product, maturity date, permanent interest rate and other terms of the permanent loan.  The Modification Agreement shall be executed by the Borrower in accordance with the instructions provided by the Lender and returned to the Lender within twenty calendar days of the date it is mailed to the Borrower by the Lender.  Failure to timely return the Modification Agreement will result in the Modification Agreement being invalid and shall constitute a default under the Note and the Security Instrument and Lender shall be entitled to exercise any and all remedies set forth in the Note and the Security Instrument.  In the event the Borrower fails to timely return the Modification Agreement, Lender, in its sole discretion, may elect to prepare a new Modification Agreement and modify the interest rate to the higher of the interest rate reflected in the Modification Agreement or the interest rate then being charged by Lender on comparable Loan Products.  Interest shall continue to accrue and be payable at the then construction interest rate until receipt by Lender of the executed Modification Agreement.

6.  Waiver of Breach.  The waiver of any breach of the terms of the Note shall not be a construed to be a waiver of any other or subsequent breach.

7.  Cross Default.  A default under the terms of the Construction Loan Agreement shall also constitute a default under the terms of the Note.

07013193 (04.08.97)

A-66

Case: 15-3562     Document: 003112161259     Page: 59     Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68   Filed 08/18/15   Page 39 of 71 PageID: 792
Case 3:12-cv-07080-JAP-LHG   Document 1   Filed 11/14/12   Page 24 of 56 PageID: 24

**BY SIGNING BELOW,** Borrower accepts and agrees to the terms and covenants contained in this Addendum to Note.

_____
Kirby Westheimer                    -Borrower

_____
                                    -Borrower

_____
                                    -Borrower

_____
                                    -Borrower

_____
                                    -Borrower

_____
                                    -Borrower

_____
                                    -Borrower

_____
                                    -Borrower

0701319 (091695).3

Case: 15-3562    Document: 003112161259    Page: 60    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68   Filed 08/18/15   Page 40 of 71 PageID: 793
Case 3:12-cv-07080-JAP-LHG   Document 1   Filed 11/14/12   Page 25 of 56 PageID: 25

# SIGNATURE/NAME AFFIDAVIT

DATE: September 15, 2008

LOAN #:  7102396632

BORROWER: Kirby Westheimer

THIS IS TO CERTIFY THAT MY LEGAL SIGNATURE IS AS WRITTEN AND TYPED BELOW.
(This signature must exactly match signatures on the Note and Mortgage or Deed of Trust.)

Kirby Westheimer

_____          _____
(Print or Type Name)                      Signature

(If applicable, complete the following.)

I AM ALSO KNOWN AS:

_____          _____
(Print or Type Name)                      Signature

_____          _____
(Print or Type Name)                      Signature

_____          _____
(Print or Type Name)                      Signature

and that                                                           are one

and the same person,

State/Commonwealth of NJ
County/Parish of MERCER

Subscribed and sworn (affirmed) before me this
this 15th          day of September          , 2008

                                        Notary Public in and for
                                        the State/Commonwealth of NJ
                                        County/Parish of MERCER
                                        My Commission Expires:

VMP-304 (0103) 01                VMP Mortgage Solutions (800)521-7291              3/01

9/11/2008 12:23 PM

Case: 15-3562     Document: 003112161259     Page: 61     Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68   Filed 08/18/15   Page 41 of 71 PageID: 794
Case 3:12-cv-07080-JAP-LHG   Document 1   Filed 11/14/12   Page 26 of 56 PageID: 26

# EXHIBIT C
# TO VERIFIED COMPLAINT

Case: 15-3562     Document: 003112161259     Page: 62     Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68   Filed 08/18/15   Page 42 of 71 PageID: 795
Case 3:12-cv-07080-JAP-LHG   Document 1   Filed 11/14/12   Page 27 of 56 PageID: 27

Return To:
**Merrill Lynch Credit
Corporation
9700 Bissonnet Street ,
Suite #1500, HOUSTON, TX
77036**

Prepared By:

**5201 Gate Parkway
Jacksonville, FL 32256**

*MHg (21095) PRB*

*9850*

*230.00 pd*

---[Space Above This Line For Recording Data]---

# MORTGAGE     Loan #: 7102396632

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **September 15, 2008**
together with all Riders to this document.
**(B) "Borrower"** is **Kirby Westheimer, AN UNMARRIED MAN**

Borrower is the mortgagor under this Security Instrument.
**(C) "Lender"** is **Merrill Lynch Credit Corporation**

Lender is a **Corporation**
organized and existing under the laws of **Delaware**

**NEW JERSEY** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3031 1/01

*VMP* -6(NJ) (0005)
Page 1 of 16          Initials *K W*
VMP MORTGAGE FORMS - (800)521-7291

VOL I 0 I 9 I PG 0 4 0 4

Original

Case: 15-3562    Document: 003112161259    Page: 63    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68   Filed 08/18/15   Page 43 of 71 PageID: 796
Case 3:12-cv-07080-JAP-LHG   Document 1   Filed 11/14/12   Page 28 of 56 PageID: 28

Lender's address is **5201 Gate Parkway Jacksonville, FL 32256**

Lender is the mortgagee under this Security Instrument.
**(D) "Note"** means the promissory note signed by Borrower and dated **September 15, 2008**
The Note states that Borrower owes Lender **One Million Five Hundred Thousand Dollars
and Zero Cents**                                                                 Dollars
(U.S. **$1,500,000.00**        ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than **April 1st, 2035**
**(E) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(F) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(G) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] |
| | | CONSTRUCTION TO PERM LOAN RIDER |

**(H) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(I) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
**(J) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
**(K) "Escrow Items"** means those items that are described in Section 3.
**(L) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
**(M) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
**(N) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(O) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA.

-6(NJ) (0005)                         Page 2 of 15          Initials                    Form 3031 1/01

Case: 15-3562     Document: 003112161259     Page: 64     Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68   Filed 08/18/15   Page 44 of 71 PageID: 797
Case 3:12-cv-07080-JAP-LHG   Document 1   Filed 11/14/12   Page 29 of 56 PageID: 29

**(P) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For these purposes, Borrower does hereby mortgage, grant, and convey to Lender the following described property located in the **COUNTY** of **MERCER** :
        [Type of Recording Jurisdiction]           [Name of Recording Jurisdiction]
**Being more particularly described by a legal description attached hereto and made a part thereof.**

Property Account Number: **09-00038-0001-00002**                          which currently has the address of
**210 MERCER STREET**                                                                                  [Street]
**PRINCETON**                                              [City], New Jersey **08540**         [Zip Code]
("Property Address"):

     TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."
     BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.
     THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.
     UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
     **1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this

-6(NJ) (0005)                             Page 3 of 15              Initials: [initials]          Form 3031 1/01

VOL 10191 PG 0406

Original

Case: 15-3562     Document: 003112161259     Page: 65     Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68   Filed 08/18/15   Page 45 of 71 PageID: 798
Case 3:12-cv-07080-JAP-LHG   Document 1   Filed 11/14/12   Page 30 of 56 PageID: 30

*Commonwealth Land Title Insurance Company of New Jersey*

## SCHEDULE C
## LEGAL DESCRIPTION

File No. **ELTS-004323-08**

ALL that certain lot, parcel or tract of land, situate and lying in the Borough of Princeton and Township of Princeton, County of Mercer, State of New Jersey, and being more particularly described as follows:

BEGINNING at a point Beginning at a point in the Southeasterly line of Mercer Street at the northerly corner of the lot of Grace D.E. Richardson and running thence .

(1)     along Mercer Street North 39 degrees 28 minutes East, 121.94 feet to the corner of the lot of John H. Westcott; thence

(2)     along the same South 50 degrees 32 minutes East, 419.30 feet to a point in the line of lands formerly of Charles H. Olden; thence

(3)     along the same South 39 degrees 28 minutes West, 270.10 feet to the easterly corner of lot of Grace D. E. Richardson; thence

(4)     along the same North 31 degrees 04 minutes West, 444.72 feet to the place of BEGINNING.

FOR INFORMATIONAL PURPOSES ONLY: Also known as Lot 2 in Block 38.01 on the Borough of Princeton Tax Map and Lot 12 in Block 10605 on the Township of Princeton Tax Map..

New Jersey Land Title
Insurance Rating Bureau
ALTA Plain Language Commitment 2006          VOL 0 1 9 1 PG 0 4 0 7

NJRB 3-08
Effective 2/15/2007
FANJ 3-08

A-73

Case: 15-3562    Document: 003112161259    Page: 66    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG    Document 68    Filed 08/18/15    Page 46 of 71 PageID: 799
Case 3:12-cv-07080-JAP-LHG    Document 1    Filed 11/14/12    Page 31 of 56 PageID: 31

## ADJUSTABLE RATE RIDER
### (LIBOR Index – Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 15th day of September, 2008 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to Merrill Lynch Credit Corporation ("Lender") of the same date and covering the property described in the Security Instrument and located at:

210 MERCER STREET, PRINCETON, NJ 08540

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** As used below, the "Commencement Date" is 04/01/2010 . In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
(A) Change Dates
The interest rate I will pay may change on the first day of June , 2010 and on that day every one (1) month thereafter. Each date on which my interest rate could change is called a "Change Date."

Multistate One Month Adjustable Rate Rider - Construction
0701329 (102602) 01                              *(Page 1 of 3)*

VOL I 0 I 9 I PG 0 4 0 8

A-74

Case: 15-3562    Document: 003112161259    Page: 67    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68   Filed 08/18/15   Page 47 of 71 PageID: 800
Case 3:12-cv-07080-JAP-LHG   Document 1   Filed 11/14/12   Page 32 of 56 PageID: 32

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for 1 month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date twenty-five (25) days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding One and Eight Hundred Seventy-Five / Thousandths percentage point(s) ( 1.875 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

**(i) Interest-Only Period.** The "interest-only period" is the period from the Commencement Date through 03/31/2020 . For the interest-only period, after calculating my new interest rate as provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to pay the interest which accrues on the unpaid Principal of my loan. The result of this calculation will be the new amount of my monthly payment.

**(ii) Amortization Period.** The "amortization period" is the period after the interest-only period. For the amortization period, after calculating my new interest rate as provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

My permanent interest rate, commencing on the first Change Date, will never be greater than my initial permanent interest rate plus five percent (5%), or twelve percent (12%), whichever is greater. My permanent interest rate on the Commencement Date will not be greater than 18%.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

Multistate One Month Adjustable Rate Rider - Construction
0701339 (100702).02                                                                  *(Page 2 of 3)*

VOL I 0 I 9 I PG 0 4 0 9

Case: 15-3562    Document: 003112161259    Page: 68    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68   Filed 08/18/15   Page 48 of 71 PageID: 801
Case 3:12-cv-07080-JAP-LHG   Document 1   Filed 11/14/12   Page 33 of 56 PageID: 33

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____(Seal)          _____(Seal)
Kirby Westheimer          -Borrower                                 -Borrower

_____(Seal)          _____(Seal)
                          -Borrower                                 -Borrower

_____(Seal)          _____(Seal)
                          -Borrower                                 -Borrower

_____(Seal)          _____(Seal)
                          -Borrower                                 -Borrower

**Multistate One Month Adjustable Rate Rider -Construction**
0701329 (100702).03                                              *(Page 3 of 3)*

VOL 10191 PG 0410

Case: 15-3562    Document: 003112161259    Page: 69    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68   Filed 08/18/15   Page 49 of 71 PageID: 802
Case 3:12-cv-07080-JAP-LHG   Document 1   Filed 11/14/12   Page 34 of 56 PageID: 34

## CONSTRUCTION/PERMANENT LOAN RIDER

**THIS CONSTRUCTION/PERMANENT LOAN RIDER**, dated September 15, 2008 , is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to Merrill Lynch Credit Corporation (the "Lender") of the same date.

**ADDITIONAL COVENANTS:** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

1. Future Advances. The Security Instrument secure advances made, and future advances to be made, pursuant to the terms of a Construction Loan Agreement between Borrower and Lender of the same date. A default under the terms of Construction Loan Agreement and/or the Note shall also constitute a default under the terms of the Security Instrument.

2. Construction Interest Rate. During the period of construction as set forth in the Construction Loan Agreement and until the 03/31/2010 (the "Scheduled Termination Date"), the interest rate may change on the first day of each month and shall be equal to the sum of -0.5% plus the highest prime rate published in *The Wall Street Journal* as of the last business day of the preceding month (the "Prime Rate"), except as set forth in paragraph 3 below. During this period and until the permanent financing phase of the loan begins, the interest rate will never be greater than 18%.

3. Commencement Date Change (if applicable). If the improvements described in the Construction Loan Agreement are to be completed before or after 04/01/2010 (the "Commencement Date"), Lender may, at its option, move the Commencement Date to a date which is earlier or later than the date defined as such in the Note, as more particularly set forth below:

(a) Interest Rate During Extended Construction Phase. Borrower shall request an extension of the construction phase at least five days before the Commencement Date, but in no event earlier than sixty days before the Commencement Date. If the Lender approves the extension of the terms of the construction phase, the interest rate during the extension periods shall be calculated by adding -0.5% to the Prime Rate, plus the Construction Extension Margin of .2500% . For each additional extension period approved by Lender, the interest rate to be paid by Borrower during such additional extension period shall be calculated precisely in the manner described in the preceding sentence, except that, for each such extension, the Construction Extension Margin shall increase by an additional .2500% . Lender may evidence the extension of the construction phase by providing written notice of such extension to the Borrower. An extension of the term of the construction phase may result in an extension of the maturity date of the Security Instrument. With the exception of the interest rate, all the terms and conditions of this Rider shall continue to apply during any such extension and Borrower agrees to make payments, at the then applicable interest rate during such extended period(s)

(b) Rate Protection. If the Borrower has entered into a rate protection agreement, such rate protection expires on the day preceding the Commencement Date. If Borrower request and extension of the term of the construction phase, within the time frame set forth in subparagraph (a) above, the Borrower has the option to cap the permanent interest rate or initial permanent interest rate, as applicable, for the duration of the extended construction loan period or allow the permanent interest rate or initial permanent interest rate, as applicable, to "float" until the permanent interest rate is established in accordance with the terms of the Note. If the Borrower does not elect to re-cap the interest rate, the Borrower's permanent interest rate may be higher than the original capped rate. In the event the Borrower elects to re-cap the interest rate, the new capped rate may be higher than the original capped interest rate and/or the Borrower may have to pay points, depending on the then current market interest rate. In the event construction is not timely completed and the Borrower does not request an extension to the construction phase, the Borrower's interest rate will "float" until the permanent rate is established in accordance with the terms of the Note.

6701492 (12172)1.01

A-77

Case: 15-3562     Document: 003112161259     Page: 70     Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68   Filed 08/18/15   Page 50 of 71 PageID: 803
Case 3:12-cv-07080-JAP-LHG   Document 1   Filed 11/14/12   Page 35 of 56 PageID: 35

(c) Extension of Construction Term. In the event the construction term is extended, Borrower agrees to execute any additional documentation which Lender may request to confirm the extension, the construction interest rate, the maturity date, the permanent interest rate cap or any other term of the Note. Notwithstanding the foregoing, Lender may unilaterally modify the dates and interest rate consistent with the terms of this Rider by sending notice to the Borrower and Borrower agrees to be bound by the modified dates and interest rate in making payments.

4. Change of Permanent Loan Programs. Provided that no default exists under the terms of the loan documents, Borrower may, prior to the Commencement Date and with the consent of Lender, elect to amend the interest rate provisions of the Note that are applicable as of the Commencement Date. Lender may offer Borrower a selection from any one or all of the interest rate programs then being offered by Lender on comparable loan products, provided that Borrower (i) qualifies at the time for the loan type selected based on Lender's then current underwriting criteria, (ii) provides Lender any current financial information requested, and (iii) provided that Lender's lien position is not impaired. Depending on the Borrower's circumstances, the program may change from a fixed interest rate to an adjustable rate, an adjustable interest rate to a fixed interest rate or from one adjustable interest rate program to a different adjustable interest rate program. Any rate protection agreement in effect will no longer be applicable in the event the Borrower elects to change loan programs. If Borrower elects to amend the interest rate provisions of the Note, Borrower agrees to execute any and all modification agreements, replacement notes, or other documents that Lender may reasonably require to effectuate the requested change and pay any and all additional closing costs.

In order to exercise the option to select another interest rate program, Borrower must notify Lender in writing of Borrower's selection at least five days before the Commencement Date, but in no event earlier than sixty days before Commencement Date.

5. Modification Agreement. Following the Actual Completion Date, as defined in the Construction Loan Agreement, in order to convert the loan to its permanent phase, the Lender will prepare a Modification Agreement reflecting the correct Commencement Date, loan product, maturity date, permanent interest rate and other terms of the permanent loan. The Modification Agreement shall be executed by the Borrower in accordance with instructions provided by the Lender and returned to the Lender within twenty calendar days of the date it is mailed to the Borrower by the Lender. Failure to timely return the Modification Agreement will result in the Modification Agreement being invalid and shall constitute a default under the Note and the Security Instrument and Lender shall be entitled to exercise any and all remedies set forth in the Note and Security Instrument. In the event the Borrower fails to timely return the Modification Agreement, Lender, in its sole discretion, may elect to prepare a new Modification Agreement and modify the interest rate to the higher of the interest rate reflected in the Modification Agreement or the interest rate then being charged by Lender on comparable loan products. Interest shall continue to accrue and be payable at the then construction interest rate until receipt by Lender of the executed Modification Agreement.

BY SIGNING BELOW, Borrower(s) accepts and agrees to the terms and covenants contained in this Rider.

_____ (Seal)          _____ (Seal)
Kirby Westheimer

_____ (Seal)          _____ (Seal)

_____ (Seal)          _____ (Seal)

_____ (Seal)          _____ (Seal)

6781492 (060485).01

Case: 15-3562     Document: 003112161259     Page: 71     Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68   Filed 08/18/15   Page 51 of 71 PageID: 804
Case 3:12-cv-07080-JAP-LHG   Document 1   Filed 11/14/12   Page 36 of 56 PageID: 36

Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future. If Lender accepts such payments, it shall apply such payments at the time such payments are accepted. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts

Original

VOL.1 0 1 9 1 PG 0 4 1 3

A-79

Case: 15-3562     Document: 003112161259     Page: 72     Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68   Filed 08/18/15   Page 52 of 71 PageID: 805
Case 3:12-cv-07080-JAP-LHG   Document 1   Filed 11/14/12   Page 37 of 56 PageID: 37

due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

-6(NJ) (0005)                              Page 5 of 15                    Initials: XW                Form 3031 1/01

VOL I 0 I 9 I PG 0 4 I 4                                              Original

A-80

Case: 15-3562     Document: 003112161259     Page: 73     Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68   Filed 08/18/15   Page 53 of 71 PageID: 806
Case 3:12-cv-07080-JAP-LHG   Document 1   Filed 11/14/12   Page 38 of 56 PageID: 38

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

VOL 1 0 1 9 1 PG 0 4 1 5                                    Original

A-81

Case: 15-3562     Document: 003112161259     Page: 74     Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68   Filed 08/18/15   Page 54 of 71 PageID: 807
Case 3:12-cv-07080-JAP-LHG   Document 1   Filed 11/14/12   Page 39 of 56 PageID: 39

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

-6(NJ) (0005).02                     Page 7 of 15                                      Form 3031 1/01

VM10191PG0416

A-82

Case: 15-3562     Document: 003112161259     Page: 75     Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68   Filed 08/18/15   Page 55 of 71 PageID: 808
Case 3:12-cv-07080-JAP-LHG   Document 1   Filed 11/14/12   Page 40 of 56 PageID: 40

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

-6(NJ) (0005).02                    Page 8 of 15                    Initials: KW                    Form 3031 1/01

VOL I 0 I 9 I PG 0 4 I 7

A-83

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

-6(NJ) (0005)    Page 9 of 15    Initials: KW    Form 3031 1/01

VOL 1 0 1 9 1 PG 0 4 1 8

A-84

Case: 15-3562    Document: 003112161259    Page: 77    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68   Filed 08/18/15   Page 57 of 71 PageID: 810
Case 3:12-cv-07080-JAP-LHG   Document 1   Filed 11/14/12   Page 42 of 56 PageID: 42

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

-6(NJ) (0005)             Page 10 of 15          Initials: (KW)          Form 3031 1/01

VOL 1 0 1 9 1 PG 0 4 1 9

A-85

Case: 15-3562    Document: 003112161259    Page: 78    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG    Document 68    Filed 08/18/15    Page 58 of 71 PageID: 811
Case 3:12-cv-07080-JAP-LHG    Document 1    Filed 11/14/12    Page 43 of 56 PageID: 43

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the

-6(NJ) (0005)                           Page 11 of 15          Initials: TW          Form 3031 1/01

VOL I 0 I 9 I PG 0 4 2 0

A-86

Case: 15-3562     Document: 003112161259     Page: 79     Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68   Filed 08/18/15   Page 59 of 71 PageID: 812
Case 3:12-cv-07080-JAP-LHG   Document 1   Filed 11/14/12   Page 44 of 56 PageID: 44

new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

VMP ®-6(NJ) (0005)                    Page 12 of 15                    Initials: TW                    Form 3031 1/01

VOL 10191 PG 0421

A-87

Case: 15-3562     Document: 003112161259     Page: 80     Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68   Filed 08/18/15   Page 60 of 71 PageID: 813
Case 3:12-cv-07080-JAP-LHG   Document 1   Filed 11/14/12   Page 45 of 56 PageID: 45

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property; (e) the Borrower's right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure; and (f) any other disclosure required under the Fair Foreclosure Act, codified at Sections 2A:50-53 et seq. of the New Jersey Statutes, or other Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. No Claim of Credit for Taxes.** Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

-6(NJ) (0005)                    Page 13 of 15         Initials: KW         Form 3031 1/01

VOL 1 0 1 9 1 PG 0 4 2 2

Case: 15-3562     Document: 003112161259     Page: 81     Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68   Filed 08/18/15   Page 61 of 71 PageID: 814
Case 3:12-cv-07080-JAP-LHG   Document 1   Filed 11/14/12   Page 46 of 56 PageID: 46

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____

_____ (Seal)
**Kirby Weatheimer**                    -Borrower

_____

_____ (Seal)
                                        -Borrower

_____ (Seal)          _____ (Seal)
                      -Borrower                                          -Borrower

_____ (Seal)          _____ (Seal)
                      -Borrower                                          -Borrower

_____ (Seal)          _____ (Seal)
                      -Borrower                                          -Borrower

-6(NJ) (0005)                    Page 14 of 15                    Form 3031 1/01

VOL 1 0 1 9 1 PG 0 4 2 3

**A-89**

Case: 15-3562     Document: 003112161259     Page: 82     Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68   Filed 08/18/15   Page 62 of 71 PageID: 815
Case 3:12-cv-07080-JAP-LHG   Document 1   Filed 11/14/12   Page 47 of 56 PageID: 47

STATE OF NEW JERSEY, MERCER                                    County ss:

On this 15th            day of September, 2008              , before me, the subscriber,
personally appeared Kirby Westheimer

                                                        who, I am satisfied,
is/are the person(s) named in and who executed the within instrument, and thereupon acknowledged that
he/she/they signed, sealed and delivered the same as his/her/their act and deed, for the purposes therein
expressed.

_____
Notary Public

-8 (NJ) (0005).02                    Page 15 of 15                    Form 3031 1/01

VOL 10191 PG 0424

END OF DOCUMENT

A-90

Case: 15-3562     Document: 003112161259     Page: 83     Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68   Filed 08/18/15   Page 63 of 71 PageID: 816
Case 3:12-cv-07080-JAP-LHG   Document 1   Filed 11/14/12   Page 48 of 56 PageID: 48

Mercer County Clerk's Office


Return To:

    MERRILL LYNCH CREDIT CORP
    9700 BISSONNET STREET
    SUITE 1500
    HOUSTON  TX  77036




WESTHEIMER
KIRBY
MERRILL LYNCH CREDIT CORP

Index  MORTGAGE BOOK

Book   10191   Page  0403

No. Pages   0022

Instrument  MORTGAGES

Date :   10/06/2008

Time :   3:07:30

Control #   200810060528

INST#      RD 2008 035182


Employee ID   LISAC

| | | |
|---|---|---|
| RECORDING | $ | 55.00 |
| RECORDING | $ | 70.00 |
| DARM $3 | $ | 63.00 |
| NMD1PA | $ | 42.00 |
| | $ | .00 |
| | $ | .00 |
| | $ | .00 |
| | $ | .00 |
| | $ | .00 |
| Total: | $ | 230.00 |

STATE OF NEW JERSEY
Mercer County Clerk's Office

*********PLEASE NOTE***********************
* DO NOT REMOVE THIS COVER SHEET –        *
*IT CONTAINS ALL RECORDING INFORMATION    *
*******************************************

      Paula Sollami-Covello
      Mercer County Clerk

M101910403MTGPRB

VOL 1 0 1 9 1 PG 0 4 0 3

**A-91**

Case: 15-3562     Document: 003112161259     Page: 84     Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68   Filed 08/18/15   Page 64 of 71 PageID: 817
Case 3:12-cv-07080-JAP-LHG   Document 1   Filed 11/14/12   Page 49 of 56 PageID: 49

# EXHIBIT D
# TO VERIFIED COMPLAINT



**RIKER**
**DANZIG**
**SCHERER**
**HYLAND**
**PERRETTI**llp

A T T O R N E Y S   A T   L A W

Jonathan P. Vuotto
*Attorney*

Direct:
t: 973.451.8573
f: 973.451.8721
jvuotto@riker.com
Reply to: Morristown

May 21, 2012

*Via Certified Mail, R.R.R., and Regular Mail*

Mr. Kirby Westheimer
210 Mercer Street
Princeton, New Jersey 08540

### NOTICE OF INTENTION TO ACCELERATE AND FORECLOSE

Re:     **Adjustable Rate Note, by Kirby Westheimer ("Borrower" or "you"), dated September 15, 2008 in the original principal amount of $1,500,000.00 (the "Note"), Mortgage dated September 15, 2008 ("Mortgage") by Borrower granting 210 Mercer Street, Princeton, New Jersey 08540, (Borough of Princeton Tax Map: Lot 2, Block 38.01; Township of Princeton Tax Map: Lot 12, Block 10605) as collateral (the "Mortgaged Premises"), and Construction Loan Agreement, Loan No. 7102396632, dated September 15, 2008 (the Note, Mortgage, and Construction Loan Agreement are collectively referred to as the "Loan Documents"); Loan Number 7102396632**

Dear Mr. Westheimer:

This firm represents the Bank of America, Successor in Interest to Merrill Lynch Credit Corporation (the "Lender"), in connection with the above-referenced loan. We refer you to the above-referenced Loan Documents and the documents executed in connection therewith. All capitalized terms herein shall have the same meaning as prescribed in the Loan Documents, unless otherwise indicated.

You have failed to comply with the terms of the Loan Documents by failing to complete the construction of the project contemplated within the Loan Documents by April 1, 2010. Pursuant to the New Jersey Fair Foreclosure Act ("FFA"), N.J.S.A. 2A:50-53, *et seq.,* the Lender is providing you with this Notice of Intention to Foreclose.

**Pursuant to the FFA, you have the right to cure your default and reinstate the Note and Mortgage.** To cure the default, you must complete the construction project, as contemplated in the Loan Documents and specified in the Plans and Specifications delivered to and approved by the Lender. As provided in the Construction Loan Agreement § 3.8, the following conditions must be met in order to cure the default:

Headquarters Plaza, One Speedwell Avenue, Morristown, NJ 07962-1981 • t: 973.538.0800 f: 973.538.1984
50 West State Street, Suite 1010, Trenton, NJ 08608-1220 • t: 609.396.2121 f: 609.396.4578
500 Fifth Avenue, New York, NY 10110 • t: 212.302.6574 f: 212.302.6628
London Affiliate: 33 Cornhill, London EC3V 3ND, England • t: +44 (0) 20.7877.3270 f: +44 (0) 20.7877.3271
www.riker.com

Mr. Kirby Westheimer
May 21, 2012
Page 2

1.  An inspector approved by the Lender must certify to Lender that (a) the physical construction of the improvements has been completed in strict compliance with the Plans and Specifications and (b) all utilities serving the Property must be connected and operating;

2.  The Final Survey must show that all improvements lie entirely within the boundary and setback lines of the Property and do not encroach upon any easements or rights-of-way on the Property and which is otherwise satisfactory to Lender;

3.  The final certificate of occupancy (or its local equivalent) must be issued for the improvements by the governmental authorities having jurisdiction over the improvements which confirms that construction of the improvements have been completed in accordance with all applicable requirements. If a certificate of occupancy is not required by local law, evidence that the improvements have passed all inspections and received all approvals which are conditions precedent to occupancy of the improvements must be furnished;

4.  The Lender must receive a final lender's policy of title insurance in form and substance satisfactory to the Lender in its sole discretion and Owner must execute any and all documents, instruments, and affidavits to induce title company to issue such policy; and

5.  Proof of hazard insurance listing the Lender as loss payee and flood insurance, if applicable.

Proof of satisfaction of the above requirements shall be provided to PHH Mortgage Services and addressed to 5201 Gate Parkway, Jacksonville, FL  32256, attn: Julie Halliday, who can be reached at 1-888-421-0879, ext. 94177.

**If you fail to cure your default by June 18, 2012, the Lender may take steps to terminate your ownership of the Mortgaged Premises by commencing a foreclosure suit in a court of competent jurisdiction.** If the Lender takes steps to commence a foreclosure action, you will still have the right to cure your default, but will be responsible for the Bank's attorneys' fees and costs of suit in an amount not to exceed the amount permitted by the New Jersey Rules of Court. You may have the right to transfer the property to another person subject to the security interest and the transferee may have the right to cure the default as provided by the FFA.

**You are advised to seek counsel from an attorney of your choosing concerning your residential mortgage default situation.** If you are unable to obtain an attorney, you may communicate with the New Jersey Bar Association or Lawyer Referral Services in Mercer County. If you are unable to afford an attorney, you may communicate with the Legal Services Office in Mercer County. A list of the addresses and phone numbers of these offices is attached.

Be advised that there may be the possible availability of financial assistance for curing a default from programs operated by the State or federal government or non-profit organizations, if any, as identified by the Commissioner of Banking and Insurance. Section 5 of the "Fair Foreclosure

Case: 15-3562     Document: 003112161259     Page: 87     Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68   Filed 08/18/15   Page 67 of 71 PageID: 820
Case 3:12-cv-07080-JAP-LHG   Document 1   Filed 11/14/12   Page 52 of 56 PageID: 52

Mr. Kirby Westheimer
May 21, 2012
Page 3

Act" provides that this requirement shall be satisfied by attaching a list, a copy of which is attached, of such programs promulgated by the commissioner.

**If you disagree with the Lender's assertion that (i) a default under the Loan has occurred or (ii) with the performance identified above that is required to cure the default, you may contact the undersigned or Julie Halliday at 1-888-421-0879, ext. 94177.**

UNLESS YOU NOTIFY US IN WRITING WITHIN THIRTY (30) DAYS AFTER RECEIPT OF THIS LETTER THAT THE OUTSTANDING PERFORMANCE, OR ANY PART OF IT, IS DISPUTED, THE LENDER WILL ASSUME THAT THE SUCH DEMAND FOR PERFORMANCE IS VALID.  IF YOU DO NOTIFY US OF A DISPUTE, WE WILL OBTAIN VERIFICATION OF THE OUTSTANDING PERFORMANCE AND MAIL IT TO YOU.  FURTHER, UPON YOUR WRITTEN REQUEST WITHIN THIRTY (30) DAYS, WE WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR IF DIFFERENT FROM THE CURRENT CREDITOR.  THIS COMMUNICATION IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Sincerely,

Jonathan D. Vuocco

Enclosure

cc:    Stephen Winkles, Esq. (via regular mail only)

Case: 15-3562    Document: 003112161259    Page: 88    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG    Document 68    Filed 08/18/15    Page 68 of 71 PageID: 821
Case 3:12-cv-07080-JAP-LHG    Document 1    Filed 11/14/12    Page 53 of 56 PageID: 53

**NEW JERSEY STATE BAR ASSOCIATION**
New Jersey Law Center
One Constitution Square
New Brunswick, New Jersey 08901-1520
Phone: (732) 249-5000

**MERCER COUNTY BAR ASSOCIATION LAWYER REFERRAL SERVICE**
1245 Whitehorse Mercerville Road, Suite 420
Mercerville, New Jersey 08619-3894
Phone: (609) 585-6200

**MERCER COUNTY LEGAL SERVICES**
Central Jersey Legal Services
198 West State Street
Trenton, New Jersey 08608
Phone: (609) 695-6249

4244208v1

Case: 15-3562     Document: 003112161259     Page: 89     Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68   Filed 08/18/15   Page 69 of 71 PageID: 822
Case 3:12-cv-07080-JAP-LHG   Document 1   Filed 11/14/12   Page 54 of 56 PageID: 54

## Fair Foreclosure Notice Publication for Financial List of Entities Providing Assistance to Debtors

The following is a list of governmental and non-profit entities that may provide financial assistance or counseling to borrowers in foreclosure.

| | | |
|---|---|---|
| **American Credit Alliance, Inc.**<br>26 S. Warren St.<br>Trenton, NJ 08608<br>609-393-5400 | **Atlantic Human Resources, Inc.**<br>1 S. New York Ave.<br>Atlantic City, NJ 08401<br>609-348-4131 | **Consumer Credit Counseling Service of Central New Jersey**<br>1931 Nottingham Way<br>Hamilton, NJ 08619<br>609-586-2574 |
| **Consumer Credit Counseling Service of New Jersey**<br>185 Ridgedale Ave.<br>Cedar Knolls, NJ 07927-1812<br>973-267-4324 | **Fair Housing Council of Northern New Jersey**<br>131 Main St.<br>Hackensack, NJ 07601<br>201-489-3552 | **Garden State Consumer Credit Counseling, Inc.**<br>225 Willowbrook Road<br>Freehold, NJ 07728<br>1-800-992-4557 |
| **Jersey Counseling & Housing Development, Inc.**<br>29 S. Blackhorse Pike<br>Blackwood, NJ 08012<br>856-227-3683 | **Jersey Counseling & Housing Development, Inc.**<br>1840 S. Broadway<br>Camden, NJ 08104<br>856-541-1000 | **Mercer County Hispanic Association**<br>200 E. State St., 2nd Floor<br>Trenton, NJ 08607<br>609-392-2446 |
| **Middlesex County Economic Opportunities Corporation**<br>1215 Livingston Ave.<br>North Brunswick, NJ 08902<br>732-790-3344 | **Monmouth County Human Services**<br>Housing Services Unit<br>P.O. Box 3000<br>Freehold, NJ 07728<br>732-431-7998 | **NJ Citizen Action** *(main office/financial education center)*<br>744 Broad St., Suite 2080<br>Newark, NJ 07102<br>973-643-8800<br>1-800-NJ-OWNER (loan counseling)<br>1-888-TAXES-11 (free tax preparation assistance) |
| **NJ Citizen Action** *(Central Jersey)*<br>85 Raritan Ave., Suite 100<br>Highland Park, NJ 08904<br>732-246-4772 | **NJ Citizen Action** *(South Jersey)*<br>2 Riverside Drive, Suite 362<br>Camden, NJ 08103<br>856-966-3091 | **Ocean Community Economic Action Now, Inc.**<br>22 Hyers St.<br>Toms River, NJ 08753-0773<br>732-244-2351, ext. 2 |
| **Paterson Coalition for Housing, Inc.**<br>262 Main St., 5th Floor<br>Paterson, NJ 07505<br>973-684-5998 | **Paterson Task Force for Community Action, Inc.**<br>155 Ellison St.<br>Paterson, NJ 07505<br>973-279-2333 | **Puerto Rican Action Board**<br>Housing Coalition Unit<br>90 Jersey Ave.<br>New Brunswick, NJ 08903<br>732-249-9700 |
| **Tri-County Community Action Agency, Inc.**<br>110 Cohansey St.<br>Bridgeton, NJ 08302<br>856-451-6330 | **Urban League for Bergen County**<br>106 W. Palisade Ave.<br>Englewood, NJ 07631<br>201-568-4988 | **Urban League for Essex County**<br>508 Central Ave.<br>Newark, NJ 07101<br>973-624-9535 |
| **Urban League of Union County**<br>288 N. Broad St.<br>Elizabeth, NJ 07208<br>908-351-7200 | **Homelessness Prevention Program**<br>New Jersey Department of Community Affairs<br>(866) 889-6270* | |

*Basic eligibility is limited to: (a) single family owner/occupied dwellings with all those on the deed and mortgage occupying the house; (b) no more than one mortgage or lien encumbrance on the property; (c) no initiated or ongoing bankruptcy. Assistance will be in the form of a loan, and a lien will be placed on the property. The family must document the financial reason for nonpayment. At the time of the eligibility decision, the household must have and document income sufficient to support the household and repay the loan. There is a fee for the credit check and property search.

A-97

Case: 15-3562     Document: 003112161259     Page: 90     Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68   Filed 08/18/15   Page 70 of 71 PageID: 823
Case 3:12-cv-07080-JAP-LHG   Document 1   Filed 11/14/12   Page 55 of 56 PageID: 55





# EXHIBIT C

Case: 15-3562    Document: 003112161259    Page: 93    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG    Document 68-1    Filed 08/18/15    Page 2 of 67 PageID: 826
Case 3:12-cv-07080-JAP-LHG    Document 8    Filed 02/15/13    Page 1 of 43 PageID: 68

GRUHIN & GRUHIN, P.A.
Paul J. Linker (PL8642)
155 Prospect Avenue
Suite 100
West Orange, New Jersey 07052
(973) 325-7000
Attorneys for Defendant-Counterclaimant, Kirby Westheimer

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| BANK OF AMERICA, N.A., successor in interest to MERRILL LYNCH CREDIT CORPORATION, by and through its servicer and attorney-in-fact, PHH MORTGAGE CORPORATION, | : : : : : | Civil Action No.: 12-7080-JAP-LHG |
| Plaintiff-Counterclaim/Defendant, | : : | |
| vs. | : : : | |
| KIRBY WESTHEIMER and JOHN DOE #1 through JOHN DOE #40, inclusive, | : : : | **ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM** |
| Defendant-Counterclaimant. | : : : | |

Defendant, Kirby Westheimer ("Defendant"), through his attorneys, Gruhin & Gruhin,

P.A., by way of answer to the Verified Complaint ("Complaint") of plaintiff, Bank of America,

N.A. ("Plaintiff"), successor in interest to Merrill Lynch Credit Corporation, by and through its

servicer and attorney-in-fact, PHH Mortgage Corporation, says:

## PARTIES

1.     Answering paragraph 1, Defendant lacks knowledge or information sufficient to

form a belief as to the allegations contained therein.

2.     Answering paragraph 2, except to admit that he is an individual, citizen and

domiciliary of New Jersey, Defendant denies the remaining allegation contained therein.

s:\io0\vidua\westheimer, kirby\216 answer street, princeton - bank of america foreclosure action\answer 2-6-13_v3.doc

**A-101**

Case: 15-3562    Document: 003112161259    Page: 94    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68-1   Filed 08/18/15   Page 3 of 67 PageID: 827
Case 3:12-cv-07080-JAP-LHG   Document 8   Filed 02/15/13   Page 2 of 43 PageID: 69

3.      Answering paragraph 3, Defendant makes no response to the allegations contained therein as same are not directed against him, and accordingly, no response is required.

## JURISDICTION AND VENUE

4.      Answering paragraph 4, except to admit that the amount in controversy exceeds $75,000.00, Defendant denies the remaining allegations contained therein.

5.      Answering paragraph 5, Defendant states that no answer is required to the extent that the allegations contained therein call for a legal conclusion.  To the extent a response is required, Defendant admits that the Complaint seeks to lay venue in this district.

## FACTS

6.      Answering paragraph 6, except to admit his execution of the Construction Loan Agreement ("Loan Agreement") in the aggregate principal amount of $1,500,000.00, Defendant states that no answer is required as the allegations contained therein call for a legal conclusion. To the extent a response is required, Defendant refers to the Agreement for a complete and accurate statement of its terms.

7.      Answering paragraph 7, Defendant admits that a partial copy of the Loan Agreement purports to be attached as **Exhibit A** to the Complaint, notwithstanding that said document was not executed by Plaintiff or on its behalf and is incomplete.

8.      Answering paragraph 8, except to admit his execution and delivery of the Adjustable Rate Note ("Note") in the aggregate principal amount of $1,500,000.00, Defendant states that no answer is required as the allegations contained therein call for a legal conclusion. To the extent a response is required, Defendant refers to the Note for a complete and accurate statement of its terms.

2

n:\individuals\weitz\weitz\weitzner, kirby\216 mercer street, princeton - bank of america foreclosure action\answer 2-6-13_v.3_clean.doc

**A-102**

Case: 15-3562    Document: 003112161259    Page: 95    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG    Document 68-1    Filed 08/18/15    Page 4 of 67 PageID: 828
Case 3:12-cv-07080-JAP-LHG    Document 8    Filed 02/15/13    Page 3 of 43 PageID: 70

9.      Answering paragraph 9, Defendant admits that a copy of the Note purports to be attached as **Exhibit B** to the Complaint.

10.     Answering paragraph 10, except to admit his execution and delivery of the Mortgage, Defendant states that no answer is required to the remaining allegations contained therein as same call for a legal conclusion.  To the extent a response is required, Defendant refers to the Mortgage for a complete and accurate statement of its terms.

11.     Answering paragraph 11, Defendant admits that a copy of the Mortgage purports to be attached as **Exhibit C** to the Complaint, inasmuch as the document is not complete.

12.     Answering paragraph 12, Defendant lacks knowledge or information sufficient to form a belief as to the allegations contained therein.

13.     Answering paragraph 13, Defendant makes no response thereto as it does not contain factual allegations, and accordingly, no response is required.

14.     Answering paragraph 14, Defendant denies the allegations contained therein.

15.     Answering paragraph 15, except to admit his receipt of the May 21, 2012 letter, Defendant refers to same for a complete and accurate statement of its contents.

16.     Answering paragraph 16, Defendant admits that a copy of the letter purports to be attached as **Exhibit D** to the Complaint.

17.     Answering paragraph 17, Defendant denies the allegations contained therein.

18.      Answering paragraph 18, Defendant denies the allegations contained therein.

19.     Answering paragraph 19, Defendant lacks knowledge or information sufficient to form a belief as to the allegations contained therein.

20.     Answering paragraph 20, Defendant denies the allegations contained therein.

n:\individual\wordheimer, kirby\216 mercer street, princeton - bank of america foreclosure action\answer 2-6-13_v3_clean.doc

Case: 15-3562    Document: 003112161259    Page: 96    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG    Document 68-1    Filed 08/18/15    Page 5 of 67 PageID: 829
Case 3:12-cv-07080-JAP-LHG    Document 8    Filed 02/15/13    Page 4 of 43 PageID: 71

21.     Answering paragraph 21, Defendant lacks knowledge or information sufficient to form a belief as to the allegations contained therein.

22.     Answering paragraph 22, Defendant lacks knowledge or information sufficient to form a belief as to the allegations contained therein.

23.     Answering paragraph 23, Defendant makes no response thereto as it does not contain factual allegations, and accordingly, no response is required.

### CAUSE OF ACTION FOR FORECLOSURE OF MORTGAGE

24.     Answering paragraph 24, Defendant repeats and realleges each of his responses to the allegations contained in paragraphs 1-23, inclusive, as if set forth *verbatim* and at length herein.

25.     Answering paragraph 25, Defendant states that no answer is required to the extent that the allegations contained therein call for a legal conclusion, and otherwise, refers to the Mortgage for a complete and accurate statement of its terms.

26.     Answering paragraph 26, Defendant denies the allegations contained therein.

27.     Answering paragraph 27, Defendant denies the allegations contained therein.

28.     Answering paragraph 28, except to admit that he is now in possession of the real Property (said term being defined in the Complaint), Defendant denies the remaining allegations contained therein.

29.     Answering paragraph 29, Defendant states that no answer is required to the extent that the allegations contained therein call for a legal conclusion.  To the extent that a response is required, Defendant denies the allegations of said paragraph.

s:\individuals\westbrianr, kirby216 mercer street, princeton - bank of america fassclosure action\answer 2-6-13_v.3_clean.doc

Case: 15-3562    Document: 003112161259    Page: 97    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68-1   Filed 08/18/15   Page 6 of 67 PageID: 830
Case 3:12-cv-07080-JAP-LHG   Document 8   Filed 02/15/13   Page 5 of 43 PageID: 72

30.     Answering paragraph 30, Defendant states that no answer is required to the extent that the allegations contained therein call for a legal conclusion.  To the extent that a response is required, Defendant denies the allegations of said paragraph.

31.     Answering paragraph 31, Defendant states that no answer is required to the extent that the allegations contained therein call for a legal conclusion. To the extent that a response is required, Defendant denies the allegations of said paragraph.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Complaint and each of the claims for relief alleged therein are barred because the Court lacks subject matter jurisdiction over same in the absence of complete diversity between the parties, and Defendant reserves his rights to move, at or before the time of trial, to dismiss the Complaint.

### SECOND AFFIRMATIVE DEFENSE

The Complaint and each of the claims for relief alleged therein should be dismissed because Plaintiff lacks standing to prosecute the within action, and Defendant reserves his rights to move, at or before the time of trial, to dismiss the Complaint.

### THIRD AFFIRMATIVE DEFENSE

The Complaint and each of the claims for relief alleged therein fail to state claims upon which relief may be granted and Defendant reserves his rights to move, at or before the time of trial, to dismiss the Complaint.

### FOURTH AFFIRMATIVE DEFENSE

The Loan allegedly due and owing to Plaintiff from Defendant is secured by the Property whose value exceeds the amounts due and owing to Plaintiff under the Loan Documents (as each

s:\landlords\sauterwertheimer, Kirby\216 mercer street, princeton - bank of america foreclosure action\answer 2-6-13_v3_clean.doc

Case: 15-3562     Document: 003112161259     Page: 98     Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68-1   Filed 08/18/15   Page 7 of 67 PageID: 831
Case 3:12-cv-07080-JAP-LHG   Document 8   Filed 02/15/13   Page 6 of 43 PageID: 73

of the terms "Loan," "Property" and "Loan Documents" are defined, as applicable, in the Counterclaim).

## FIFTH AFFIRMATIVE DEFENSE

The Complaint and each of the claims for relief alleged therein are barred, in whole or in part, because of Plaintiff's own material breaches of the Loan Documents which were the cause of its damages, if any.

## SIXTH AFFIRMATIVE DEFENSE

The Complaint and each of the claims for relief alleged therein are barred because of the failure of consideration to which Defendant was entitled to, but did not receive under and pursuant to the Loan Documents, from Plaintiff's agents, representatives, servants, officers and/or employees (collectively, "Agents") in connection with the administration, oversight, supervision and monitoring of the Loan, including but not limited to, the manner and means by which the Property was inspected and the Loan proceeds were drawn, reduced and/or otherwise disbursed ("Administration"); all of which conduct and actions are imputed to Plaintiff.

## SEVENTH AFFIRMATIVE DEFENSE

The Complaint and each of the claims alleged or relief sought therein are barred, in whole or in part, because Plaintiff's damages, if any, were caused by the consequences of its own actions and/or conduct and/or those of its Agents in connection with the Administration of the Loan, including but not limited to, the manner and means by which the Loan proceeds were drawn, reduced and/or otherwise disbursed; all of which conduct and actions are imputed to Plaintiff.

6

Case: 15-3562     Document: 003112161259     Page: 99     Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68-1   Filed 08/18/15   Page 8 of 67 PageID: 832
Case 3:12-cv-07080-JAP-LHG   Document 8   Filed 02/15/13   Page 7 of 43 PageID: 74

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff is estopped and precluded by the actions, inactions and/or conduct of its Agents (all of which actions, inactions and/or conduct are imputed to it) to complain of Defendant's alleged actions, inactions and/or conduct, and accordingly, Plaintiff is barred from seeking any relief herein.

## NINTH AFFIRMATIVE DEFENSE

The Complaint and each of the claims for relief alleged therein are barred, in whole or in part, because they have been waived on account of the actions, inactions and/or conduct of Plaintiff and/or its Agents; all of which actions, inactions and/or conduct are imputed to Plaintiff.

## TENTH AFFIRMATIVE DEFENSE

The Complaint and each of the claims for relief alleged therein are barred, in whole or in part, by the doctrine of unjust enrichment.

## ELEVENTH AFFIRMATIVE DEFENSE

Defendant asserts that Plaintiff suffered none of the purported injuries and/or damages alleged in the Complaint, and that same, if any, were caused proximately, directly or otherwise, in whole or part, or alternatively, were contributed to by the actions, inactions and/or conduct of Plaintiff and/or its Agents, including but not limited to, the Administration of the Loan and the manner and means by which the Loan proceeds were drawn, reduced and/or otherwise disbursed; all of which conduct and actions are imputed to Plaintiff.

## TWELFTH AFFIRMATIVE DEFENSE

The Complaint and each of the claims for relief alleged therein are barred, in whole or part, because Plaintiff and/or its Agents knew and/or in the exercise of reasonable care and due

7

A-107

Case: 15-3562    Document: 003112161259    Page: 100    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68-1   Filed 08/18/15   Page 9 of 67 PageID: 833
Case 3:12-cv-07080-JAP-LHG   Document 8   Filed 02/15/13   Page 8 of 43 PageID: 75

diligence should have known some and/or all of the actions and/or conduct of Defendant as alleged therein.

### THIRTEENTH AFFIRMATIVE DEFENSE

The Complaint and each of the claims for relief alleged therein are barred, in whole or part, because Plaintiff did not act reasonably to protect itself from and/or failed to mitigate any purported injuries and/or damages which it allegedly sustained.

### FOURTEENTH AFFIRMATIVE DEFENSE

Defendant asserts that Plaintiff suffered none of the purported injuries and/or damages alleged in the Complaint, and that same, if any, occurred solely as the result of unavoidable and/or unforeseeable events not connected with Defendant, but rather of one or more third-parties over whom he had no control.

### FIFTEENTH AFFIRMATIVE DEFENSE

The Complaint and each of the claims for relief alleged therein are barred, in whole or part, by the doctrine of laches in that Plaintiff failed to assert its alleged claims within a reasonable period of time, and such delay has been to the detriment and prejudice of Defendant.

### SIXTEENTH AFFIRMATIVE DEFENSE

Defendant asserts that Plaintiff suffered none of the purported injuries and/or damages alleged in the Complaint, and that same, if any, arose out of risks attendant to the negotiation, execution, and thereafter, the effectuation of the Loan Documents, including but not limited to, general economic and/or market conditions and/or forces, all of which Plaintiff had full knowledge of and as to which it knowingly, willingly and voluntarily assumed.

8

A-108

Case: 15-3562    Document: 003112161259    Page: 101    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68-1   Filed 08/18/15   Page 10 of 67 PageID: 834
Case 3:12-cv-07080-JAP-LHG   Document 8   Filed 02/15/13   Page 9 of 43 PageID: 76

### SEVENTEENTH AFFIRMATIVE DEFENSE

Defendant asserts that Plaintiff suffered none of the purported injuries and/or damages alleged in the Complaint, and that recovery for same, if any, is barred, diminished and/or reduced by virtue of the fact that they were not reasonably foreseeable or contemplated both before and also at the time the Loan Documents were negotiated, executed, and thereafter, effectuated.

### EIGHTEENTH AFFIRMATIVE DEFENSE

Defendant asserts that Plaintiff suffered none of the purported injuries and/or damages set forth in the Complaint and that same, if any, were caused proximately, directly and/or otherwise, in whole or in part, or alternatively, were contributed to by the negligence, gross negligence, recklessness, lack of due diligence and/or reasonable care of and/or other actions, inactions and/or conduct of Plaintiff and/or its Agents in connection with the Administration of the Loan, and the manner and means by which the Loan proceeds were drawn, reduced and/or otherwise disbursed; all of which conduct and actions are imputed to Plaintiff.

### NINETEENTH AFFIRMATIVE DEFENSE

The Complaint and each of the claims for relief alleged therein are barred, in whole or part, by the doctrine of promissory estoppel in that Defendant reasonably relied upon the material representations, statements, conduct and/or actions of Plaintiff and/or its Agents in connection with the negotiation, execution, and thereafter, the effectuation of the Loan Documents to his ultimate damage and detriment in connection with the Administration of the Loan and the manner and means by which the Loan proceeds were drawn, reduced and/or otherwise disbursed; all of which conduct and actions are imputed to Plaintiff.

x:\individuals\weatherjune, kirby\216 mercer street, princeton - bank of america\foreclosure action\answer 2-6-13_v.2_clean.doc

Case: 15-3562    Document: 003112161259    Page: 102    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG    Document 68-1    Filed 08/18/15    Page 11 of 67 PageID: 835
Case 3:12-cv-07080-JAP-LHG    Document 8    Filed 02/15/13    Page 10 of 43 PageID: 77

### TWENTIETH AFFIRMATIVE DEFENSE

The Complaint and each of the claims for relief alleged therein are barred, in whole or part, by Plaintiff's potential windfall in pursuing the within action.

### TWENTY-FIRST AFFIRMATIVE DEFENSE

The Complaint and each of the claims for relief alleged therein are barred, in whole or part, by the doctrine of unclean hands, including in connection with the Administration of the Loan and the manner and means by which the Loan proceeds were drawn, reduced and/or otherwise disbursed; all of which conduct and actions are imputed to Plaintiff.

### TWENTY-SECOND AFFIRMATIVE DEFENSE

The Complaint and each of the claims for relief alleged therein are barred, in whole or part, by the doctrines of economic duress and unconscionability.

### TWENTY-THIRD AFFIRMATIVE DEFENSE

The Complaint and each of the claims for relief alleged therein are barred, in whole or part, as a result of Plaintiff's material breaches of the implied duties of good faith and fair dealing which it owed to Kirby in connection with the negotiation, execution, and thereafter, the effectuation of the Loan Documents.

### TWENTY-FOURTH AFFIRMATIVE DEFENSE

The Complaint and each of the claims for relief alleged therein are barred, in whole or part, by virtue of Plaintiff's material breaches of the duties of good faith, honesty and integrity owing to Defendant in connection with the negotiation, execution, and thereafter, the effectuation of the Loan Documents.

10

x:\isol\rishalawerheimer, kirby\216 mercer street, princeton - bank of america foreclosure action\answer 2-6-13_v3_clean.doc

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

By way of set-off, Defendant affirmatively states that whatever monies are purportedly due Plaintiff (and Defendant denies any such obligation) are exceeded by the damages sustained by Defendant as a direct and proximate result of the actions, inactions and/or conduct of Plaintiff and/or its Agents in connection with the Administration of the Loan and the manner and means by which the Loan proceeds were drawn, reduced and/or otherwise disbursed; all of which conduct and actions are imputed to Plaintiff.

## COUNTERCLAIM

Defendant-Counterclaimant, Kirby Westheimer ("Kirby"), through his attorneys, Gruhin & Gruhin, P.A., by way of Counterclaim against the Counterclaim-Defendant, Bank of America, N.A. ("BOA"), successor in interest to Merrill Lynch Credit Corporation ("MLCC"), by and through its servicer and attorney-in-fact, PHH Mortgage Corporation, says:

## NATURE OF ACTION

1.     BOA, one of the largest commercial banks in the United States, has acted wrongfully, improperly, including negligently and without regard for the rights and entitlements of its borrower, Kirby, all of which were conferred upon him as a result of a $1.5 million construction loan ("Loan") made to him through MLCC, which upon information and belief, is now BOA's wholly owned and/or controlled subsidiary and/or related and/or affiliated company.

2.     Upon information and belief, by virtue of BOA's succession in interest to MLCC, all references hereinafter to MLCC shall be deemed to include BOA, inasmuch as MLCC's actions and conduct are in accordance with governing law attributable to and binding upon BOA.

3.     The Loan was made in connection with Kirby's renovation and structural improvements to his personal residence ("Residence" and "Project," respectively) located at 210

11

Case: 15-3562    Document: 003112161259    Page: 104    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68-1   Filed 08/18/15   Page 13 of 67 PageID: 837
Case 3:12-cv-07080-JAP-LHG   Document 8   Filed 02/15/13   Page 12 of 43 PageID: 79

Mercer Street, Princeton, New Jersey ("Property").  The Residence is one of the grand and historically distinguished houses of Princeton Borough, New Jersey, and as such, is a well-known landmark within the municipality and very familiar to and of great interest to its residents.

4.    Specifically, the Counterclaim arises out of the negligent and otherwise improper manner and means by which MLCC inspected and/or failed to inspect the Project as a precondition of its disbursement of the Loan proceeds to Kirby, including the Loan's Administration (said term being defined in the Affirmative Defenses).  Included in such negligent and/or improper actions and conduct by MLCC were its repeated failures to properly review and analyze the extensive documentation provided on Kirby's behalf to MLCC in connection with the disbursement of the Loan proceeds, and in the process, its failure to realize and inform Kirby that the Project could not be timely finished in accordance with its estimated costs and completion date for same as each are more particularly defined and set forth in the Loan Documents.

5.    Following the contemplated disbursement of the entire Loan proceeds and upon the issuance of a certificate of occupancy ("CO") or its equivalent for the Residence, the Loan was to immediately convert to a permanent mortgage ("Permanent Financing").  In connection therewith, MLCC would continue to retain a first mortgage lien upon the Residence, its improvements and the Property (collectively, the "Mortgaged Premises") as was the case in connection with the Project's construction.

6.    At all relevant times hereto, Kirby lacked any experience in and was wholly unfamiliar with construction projects, construction lending and all of the myriad incidents and documentation and other processes and procedures relating thereto.  Similarly, Kirby had no prior experience dealing with design professionals, architects, builders and/or construction

c:\individual\woodhaimer, kirby\216 mercer street, princeton - bank of america foreclosure\answer\answer 2-6-13_v3_clean.doc

Case: 15-3562    Document: 003112161259    Page: 105    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG    Document 68-1    Filed 08/18/15    Page 14 of 67 PageID: 838
Case 3:12-cv-07080-JAP-LHG    Document 8    Filed 02/15/13    Page 13 of 43 PageID: 80

tradesmen or anything remotely resembling, the scope and complexity, of the Project and renovation of the Residence.

7.    As a material inducement for Kirby to agree to the Loan, MLCC through its Agents (said term being defined in the Affirmative Defenses) made repeated representations, assurances and promises (collectively, "Representations") to him that its Agents were charged with the responsibility to administer, oversee, supervise and monitor the Loan, and in particular, assure compliance with and adherence to all Loan provisions and MLCC's practices and procedures as explained to Kirby (collectively, the "Loan Procedures"). The Representations were made so as not to jeopardize the Project's viability, including its timely completion and "on budget" in accordance with its estimated costs to complete.

8.    Included within the Loan Procedures was the requirement that a Construction Loan Draw Request Affidavit (each a "Draw Affidavit" and collectively, the "Draw Affidavits") be submitted to MLCC and/or its Agents for its/their review, reflective, among other things, of the amounts of labor and materials expended during the applicable construction time period, and most importantly, that Project completion was proceeding timely, on schedule, and in line with its anticipated completion date. Following Project completion, the Loan automatically would convert to Permanent Financing.

9.    Additionally, to induce Kirby to enter into the Loan, and in connection with the disbursement of the Loan proceeds, the Loan Procedures included regular periodic site inspections (each an "Inspection" and collectively, "Inspections") of the Project and Residence to be performed by MLCC's Agents. The Representations and in particular, the Loan Procedures with respect to the Inspections and the Draw Affidavits, individually as well as collectively, were intended to assure Kirby that the Project was proceeding timely, on schedule, and towards its

13

Case: 15-3562    Document: 003112161259    Page: 106    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68-1   Filed 08/18/15   Page 15 of 67 PageID: 839
Case 3:12-cv-07080-JAP-LHG   Document 8   Filed 02/15/13   Page 14 of 43 PageID: 81

anticipated completion date in accordance with the estimated cost to complete.  In other words, MLCC undertook the proverbial "belt and suspenders" approach to win Kirby's trust and his agreement to enter into the Loan.

10.    As a precondition of entering into the Loan, MLCC insisted and required that Kirby invest $1 million of his own monies into the Project, which Kirby did, by personally paying out-of-pocket in excess of $1 million to persons/entities working on the Project.

11.    At all relevant times, including Kirby's determination to invest more than $1 million of his own funds into the Residence as a precondition for MLCC's funding the Loan, Kirby reasonably believed and relied upon the Representations that the Loan Procedures would not only act to safeguard his investment, but also as a means by which to ensure the timely completion of the Project at or under its estimated cost.  In short, Kirby never would have invested more than $1 million without being sufficiently assured and promised by MLCC and its Agents that at all times its/their Administration of the Loan would be professionally and responsibly handled so as to not jeopardize his substantial personal investment, as well as the timely and "on budget" completion of the Project.

12.    Despite MLCC's obligations owing to Kirby pursuant to the Loan Documents, and the Representations made to him, MLCC negligently, haphazardly, carelessly and otherwise failed in the Administration of the Loan, including but not limited to, reviewing the Draw Affidavits and conducting the Inspections.  Accordingly, MLCC was unaware of the actual true stage and percentage of completion of the Project.  Tragically, the Project eventually ground to a complete halt and standstill, with the Residence remaining uninhabitable and the Project site being reduced to a "war zone," forcing Kirby to move his residence to a cottage on the Property located adjacent to the Residence, where he continues to live at this time.

14

c:\\u\\d\\v\\l\\v\\weatheiner, kirby\\216 manor ayes, princeton - bank of america forclosure action\\answer 2-6-13_v.3.doc

Case: 15-3562    Document: 003112161259    Page: 107    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68-1   Filed 08/18/15   Page 16 of 67 PageID: 840
Case 3:12-cv-07080-JAP-LHG   Document 8   Filed 02/15/13   Page 15 of 43 PageID: 82

13.     However, had MLCC and its Agents discharged its/their duties owing to Kirby and acted in accordance with the Representations, MLCC would and/or should have known each time a Draw Affidavit was submitted, that the Project was grossly underfunded and its anticipated completion date impossible to meet.  In fact, a competent visual inspection of the then ongoing status and condition of the Residence would and/or should have fully informed MLCC and its Agents, and made them aware that the Project's percentage of completion was seriously at variance from that reflected in each Draw Affidavit.

## THE COUNTERCLAIM PARTIES

14.     Kirby is a soon to be seventy-five year old individual and resident of the State of New Jersey, currently residing at 216 Mercer Street, Borough of Princeton, County of Mercer and State of New Jersey.  This residence is a cottage also located on the Property adjacent to the Residence.

15.     Upon information and belief, BOA is a national bank chartered in, and purportedly as a result thereof, domiciled in North Carolina.

16.     Upon information and belief, at all times relevant herein, MLCC was a corporation organized and existing under Delaware law.

17.     Upon information and belief, BOA presently is the successor in interest by merger, acquisition and/or other transaction to MLCC.

18.     Upon information and belief and subject to the completion of Kirby's continuing investigation, Counterclaim-Defendants, John Does Nos. 1-40 (collectively, the "Doe Parties") are presently unknown individuals and/or entities who perpetrated, facilitated, directly participated in and/or aided and abetted the improper conduct and actions more particularly described hereinbelow.  Upon information and belief, the Doe Parties may be liable for all or part

15

**A-115**

Case: 15-3562    Document: 003112161259    Page: 108    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68-1   Filed 08/18/15   Page 17 of 67 PageID: 841
Case 3:12-cv-07080-JAP-LHG   Document 8   Filed 02/15/13   Page 16 of 43 PageID: 83

of the damages sustained by Kirby.  Upon identifying them during discovery, Kirby shall amend this pleading to incorporate their true identities.

## FACTS COMMON TO ALL COUNTS

### A.    The Project And Kirby's Personal Expenditures

19.    At some time prior to June, 2008, Kirby decided to undertake the Project which entailed making substantial structural alterations, additions and modifications to the Residence.

20.    In order to commence the Project, Kirby met with, engaged and retained multiple professionals and contractors, as applicable, to participate in, perform and provide the services, labor and materials necessary to undertake and complete the Project.  Accordingly, on or about December 8, 2006, Kirby hired architect, Stephen Rhoads Architect LLC ("Rhoads"), to perform, among other things, professional design services for the Project.  In addition to his contractual duties and responsibilities as architect, on or about July 11, 2007, Kirby additionally contracted with Rhoads to serve as construction manager for the Project.

21.    Between July 2007 through August 2008, Kirby in connection with the Project paid all of the contractors including Rhoads out of his personal funds (collectively, the "Expenditures") without borrowing monies from MLCC or anyone else.  Indeed, by late summer 2008, upon information and belief, the Expenditures totaled approximately $1,016,585.55.

22.    However, in or about June 2008 it became apparent to Kirby and Rhoads that additional funding in excess of the Expenditures would be needed to complete the Project.

23.    Accordingly, at or about this time, Kirby approached MLCC to inquire about the possibility of obtaining additional funding through a construction loan (i.e., the Loan) which, after full disbursement of its proceeds, would automatically convert to Permanent Financing.

16

**A-116**

Case: 15-3562    Document: 003112161259    Page: 109    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68-1   Filed 08/18/15   Page 18 of 67 PageID: 842
Case 3:12-cv-07080-JAP-LHG   Document 8   Filed 02/15/13   Page 17 of 43 PageID: 84

24.     As part of securing additional funding for the Project, Kirby and/or Rhoads communicated and supplied MLCC and/or its Agents with detailed information and documents evidencing and setting forth the then status of the Project, including but not limited to, detailed spreadsheets and documentation setting forth the Expenditures to date and also the anticipated going forward amount of monies necessary to complete the Project.

25.     Specifically, included within the documentation given to MLCC, Rhoads provided its Agents with a comprehensive and detailed cost breakdown of the Expenditures, including but not limited to, copies of Kirby's cancelled checks evidencing and bank statements reflective of the exact amounts Kirby had paid to Rhoads and each contractor.

26.     It was also at or about this time that Kirby met with MLCC, which insisted as a precondition of its possibly funding the balance of monies needed to complete the Project, that he personally invest, over and above the Expenditures, additional personal funds exceeding $50,000.00.

### B.     The MLCC Loan Documents

27.     In or about the spring of 2008 and continuing through September 2008, Kirby met with and/or communicated with MLCC to apply for and negotiate the terms and conditions of the Loan.  In connection with these meetings and/or discussions, Kirby advised MLCC that the estimated cost of the Improvements was approximately $2.5 million, with approximately $1 million already have been paid by him as evidenced by the Expenditures.

28.     After a complete discussion with MLCC regarding the then status of the Project, MLCC became fully aware and informed of same.  Thereupon, Kirby and MLCC entered into the Agreement (said term being defined in the Answer).

17

x:\individuals\weathriner, kirby\216 mercer street, princeton - bank of america foreclosure action\answer 2-6-13_v3_clean.doc

**A-117**

Case: 15-3562     Document: 003112161259     Page: 110     Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68-1   Filed 08/18/15   Page 19 of 67 PageID: 843
Case 3:12-cv-07080-JAP-LHG   Document 8   Filed 02/15/13   Page 18 of 43 PageID: 85

29.     Consistent with and corroborating Kirby and Rhoads' discussions with and about disclosures to MLCC, the Agreement in that portion thereof entitled "Article 1 DEFINITION OF TERMS" set forth that the "Construction Costs" or the estimated cost of the Improvements was $2,567,123.00.

30.     Additionally, the following terms were each defined and set forth in the Agreement as follows:

> "Construction Cost Deficiency" means an amount which may be established by LENDER [i.e., MLCC] at any time during the term of the Loan if LENDER determines that the actual cost to complete construction of the Improvements may or will exceed the sum of the Loan Proceeds and the funds representing the Cost Balance, if any.

> **"Construction Period" means the period ending 03/31/2010.**

> "Cost Balance" means the negative difference, if any, between the Loan Proceeds and the Construction Costs. [Emphasis Added]

31.     In addition to the foregoing, the Agreement also set forth the procedures for the disbursement of the Loan proceeds to Kirby which, in relevant part, provided as follows:

> 2.2     Cost Balance and Construction Cost Deficiency

> a.     Any Cost Balance will be funded by Owner before the disbursement of any loan proceeds by LENDER.

> * * *

> d.     At any time during the term of the Loan, LENDER may determine that the actual cost to complete construction of the Improvements may or will exceed the sum of the Loan Proceeds and the funds representing the Cost Balance, if any.  In that event, Owner will fund such excess cost prior to any disbursement or further disbursement being made by LENDER.  In the alternative, Owner will, upon demand of LENDER, deliver the amount of such excess cost (the "Construction Cost Deficiency") to LENDER.

> e.     LENDER will hold any Cost Balances and any Construction Cost Deficiency for subsequent disbursement.  At LENDER's option, the Cost Balance and/or Construction Cost Deficiency may be applied in full to the

18

**A-118**

Case: 15-3562    Document: 003112161259    Page: 111    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG  Document 68-1  Filed 08/18/15  Page 20 of 67 PageID: 844
Case 3:12-cv-07080-JAP-LHG  Document 8  Filed 02/15/13  Page 19 of 43 PageID: 86

Construction Costs before disbursement of any Loan Proceeds, or may be applied proportionately with the Loan Proceeds to the Construction Costs.

\* \* \*

h.    Owner agrees that the holding, application and disbursement of any Cost balance and any Construction Cost Deficiency will be for the account of Owner. However, it is expressly understood by Owner and LENDER that the holding, application and disbursement of the funds is for the protection of LENDER.

\* \* \*

2.4    **Requests for Disbursement**

a.    LENDER will have no obligation to disburse funds unless:

1.    Owner has delivered to LENDER a signed request for disbursement in form and content satisfactory to LENDER.

\* \* \*

4.    **LENDER has conducted such inspections as it may require, and the results of the inspections are satisfactory to LENDER.** [Emphasis Added]

\* \* \*

32.    In addition to the foregoing section entitled "Requests for Disbursement" (inclusive of the Draw Affidavits) and the procedure and manner by which the disbursement of the Loan proceeds were to occur, the Agreement also included an affirmative obligation of MLCC to conduct through its Agents regular, on-site Project related inspections of the Residence. Specifically, the Agreement provided as follows:

2.5 Inspection Rights and Fees; Correction of Defects

a.    LENDER or its agents will have the right at all times during the period of construction to enter upon the Property to conduct inspections. LENDER will have the right to inspect all records related to the construction of the Improvements at any reasonable time.

19

**A-119**

Case: 15-3562     Document: 003112161259     Page: 112     Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68-1   Filed 08/18/15   Page 21 of 67 PageID: 845
Case 3:12-cv-07080-JAP-LHG   Document 8   Filed 02/15/13   Page 20 of 43 PageID: 87

       **b.**      **Scheduled Inspections will be required for each disbursement under the Disbursement Schedule.**

       **c.**      **Owner will pay all costs of LENDER inspections conducted pursuant to this action.  The estimated cost of each inspection is $125.00.  At closing of the Loan, Owner will pay to LENDER the sum of 2,000.00 representing the inspection fees payable for 16 inspections.  If more than 16 inspections of work in progress are required, then prior to each such additional inspection Owner will pay to LENDER the applicable fee for such inspection.  If Owner fails to make such payment, LENDER may disburse to itself such inspection fee out of the Loan Proceeds, the Cost Balance, if any, or any such other funds delivered to LENDER pursuant to the terms of this Agreement.**

       d.      LENDER is under no obligation to supervise construction of the Improvements.  LENDER's inspection of the construction of the Improvements is for the sole purpose of protecting and preserving the security of LENDER.  No inspection is the be construed as a representation or endorsement that the construction of the Improvements is in fact in compliance with Plans and Specifications, that the construction will be free of defective material or workmanship, or that the construction is in compliance with limitations or requirements imposed by covenants and restrictions of record or by governmental authority. [Emphasis Added]

33.    In addition to the foregoing provisions, the Agreement also provided in its Article

3 as follows:

    3.1    Plans and Specifications

    a.      **No change in the Plans and Specifications will be made without the express written approval of LENDER.** [Emphasis Added]

    **C.**    **The MLCC Pre-Closing Documents**

34.    In addition to the Agreement, Kirby received either prior to and/or at the closing

of the Loan, additional documents which, too, reinforced and corroborated his understanding of

the relationship between MLCC and him relating to the Inspections, the Draw Affidavits and

MLCC's undertakings with regard to its ensuring the timely and "on budget" completion of the

Project.

x:\individuals\weatherwear, kirby\216 mercer street, princeton - bank of america foreclosure action\answer 2-6-13_v.3_clean.doc

Case: 15-3562    Document: 003112161259    Page: 113    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG    Document 68-1    Filed 08/18/15    Page 22 of 67 PageID: 846
Case 3:12-cv-07080-JAP-LHG    Document 8    Filed 02/15/13    Page 21 of 43 PageID: 88

35.    By way of illustration only and not limitation, one of these documents given to Kirby by MLCC entitled "Funding Agreement" ("Funding Agreement") provided in relevant part as follows:

A.    In addition to the terms stated in the Credit Documents, there are certain conditions precedent to the obligation of Lender to fund disbursements under the construction loan agreement, all as more particularly set forth herein.

NOW, THEREFORE, in consideration of the mutual covenants herein contained, the parties agree as follows:

1.    In addition to those conditions stated in the Loan Agreement, Lender shall not be obligated to release, pay over, or fund any sums under the Credit Documents until such time as the following conditions precedent have each been satisfied by the Borrower.

**(a)    Borrower has demonstrated to Lender reasonable satisfaction that Borrower has expended $50,438.00 in hard costs toward the construction of the Improvements at the Subject Property.  Evidence of said expenditures shall include paid invoices, lien waivers, and similar documentation satisfactory to Lender in amount and content.**

**(b)    A satisfactory inspection of the Improvements is made by Lender.    Without limiting the generality of the foregoing, the inspection shall reveal that construction in all material respects is complete in the approximate percentage represented by the amount of construction costs paid by Borrower in relation to the total costs to construct the Improvements as set forth in the construction contract between Borrower and Madar Construction, dated .**

(c)    Borrower shall satisfactorily demonstrate to Lender that, except with the prior written consent of Lender, there have not been nor are there any pending change orders.

\* \* \*

(e)    Borrower has performed and construction has proceeded in accordance with the terms of the Loan Agreement and no default exists under any of the Credit Documents. [Emphasis Added]

21

s:\individual\wentheisaac, kirby\216 mercer street, princeton - bank of america foreclosure action\answer 2-6-13_v.3_clean.doc

A-121

Case: 15-3562    Document: 003112161259    Page: 114    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68-1   Filed 08/18/15   Page 23 of 67 PageID: 847
Case 3:12-cv-07080-JAP-LHG   Document 8   Filed 02/15/13   Page 22 of 43 PageID: 89

36.    In addition to the Funding Agreement, MLCC also provided Kirby with a document entitled "Supporting Documentation Requirements" ("Supporting Documentation") which, in relevant part, provided as follows:

> **First Disbursement**
>
> * * *
>
> **8.    Satisfactory inspection to be performed by Merrill Lynch Credit Corporation confirming that completed work supports the loan advance requested.**
>
> * * *
>
> **Interim Disbursements**
>
> 1. Draw Request Affidavit
>
> **2.    Satisfactory inspection to be performed by Merrill Lynch Credit Corporation confirming that completed work supports the loan advances requested.**
>
> * * *
>
> **Final Disbursement and Conversion to Permanent Mortgage**
>
> 1. Draw Request Affidavit [Emphasis Added In Part]
>
> * * *

37.    In addition to the Funding Agreement and Supporting Documentation, on or about June 30, 2008, MLCC by memo of even date therewith ("June 2008 Memo"), further informed Kirby with respect to anticipated Loan related disbursements as follows:

> Dear Builder: [i.e., Kirby]
>
> * * *
>
> During the construction phase we will make disbursements based on work that is complete and in place.  The customer will receive Draw Request Affidavits at closing.  An affidavit must be completed and faxed to our office to initiate each construction disbursement.  A local inspector will

a:\individuals\wertheimer, kirby\216 mercer street, princeton - bank of america foreclosure action\answer 2-6-13_v3_clean.doc

Case: 15-3562    Document: 003112161259    Page: 115    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68-1   Filed 08/18/15   Page 24 of 67 PageID: 848
Case 3:12-cv-07080-JAP-LHG   Document 8   Filed 02/15/13   Page 23 of 43 PageID: 90

inspect the property and report back to us. The disbursement will be according to the inspector's report on progress.

Prior to closing a Draw Specialist will be assigned to this loan. They will be your point of contact throughout the construction. The Construction Loan Processor will notify you of the Draw Specialist assigned to this Loan prior to closing.

38. Moreover, MLCC, in another pre-closing document entitled "Borrower Construction Financing Loan Information" ("Construction Financing Information"), informed Kirby regarding how and when Loan disbursements would occur, as well as his obligation for any "cost balance" (as said term is more particularly defined therein), which upon information and belief, was tantamount to the term "Construction Deficiency" (as said term is more particularly defined in the Agreement), as follows:

* * *

**During the construction phase, the loan proceeds will be disbursed based upon satisfactory verification of work completed**. Construction draws are usually made payable to you or jointly to you and your Builder/Contractor. You will be responsible for monthly payments based on the amount disbursed.

You shall be responsible for funding the difference, if any, between the net loan proceeds and total construction cost (the "Cost Balance"). The Cost Balance shall be deposited or paid to Merrill Lynch Credit Corporation at the time of closing or prior to the initial disbursement. [Emphasis Added]

39. The Funding Agreement, Supporting Documentation, June 2008 Memo and Construction Financing Information (each of which individually and collectively shall, for purposes of term as used hereinbelow, be deemed to constitute a part of the "Loan Documents").

s:\individuals\weathriener, kirby\216 mercer street, princeton - bank of america forcleaure action\answer 2-6-13_v-3_clean.doc

Case: 15-3562    Document: 003112161259    Page: 116    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68-1   Filed 08/18/15   Page 25 of 67 PageID: 849
Case 3:12-cv-07080-JAP-LHG   Document 8   Filed 02/15/13   Page 24 of 43 PageID: 91

### D. MLCC's Complete Disregard Of The Agreement's Provisions And Its Obligations Thereunder

40.    On or about September 15, 2008, Kirby signed the Agreement (a partial copy of which is attached to the Complaint as **Exhibit A** and which is incomplete as the Disbursement Schedule identified as **Exhibit B** to the Agreement is missing).

41.    Upon information and belief, more or less contemporaneously with Kirby's execution of the Agreement, he, as mortgagor, also executed and provided to MLCC, as mortgagee, a first lien mortgage ("Mortgage") upon the Mortgaged Premises.  On or about the same date, Kirby also executed and provided to MLCC an Adjustable Rate Promissory Note and Rider thereto (collectively, the "Note") evidencing the Loan.

42.    The Note, among other things, provided that only interest at a prescribed rate was to be paid by Kirby until April 1, 2010, at which time the conversion to Permanent Financing governed by different financing terms would take effect.  The Note provided that commencing May 1, 2010, the applicable interest rate would be reset and adjusted, as applicable, with Kirby still having to pay interest only without any payments to be made towards principal reduction for a period of ten (10) years or until March 31, 2020.  Commencing on May 1, 2020, the Note, further provided that principal and interest payments, together with other applicable charges, were to be thereafter due on a monthly basis until on April 1, 2035; at which time, the Note would mature with all then due and owing amounts remaining thereunder becoming payable in full.

43.    Additionally, at or about the time that Kirby executed the Loan Documents, including, among other instruments, the Agreement, Mortgage and Note, he also was asked and directed by MLCC to: (i) date the face page of that blank Draw Affidavit by inserting the date of "September 15 2008" (i.e., the date appearing on the Agreement, Mortgage and Note); (ii) affix

24

Case: 15-3562    Document: 003112161259    Page: 117    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68-1   Filed 08/18/15   Page 26 of 67 PageID: 850
Case 3:12-cv-07080-JAP-LHG   Document 8   Filed 02/15/13   Page 25 of 43 PageID: 92

his signature upon same; and (iii) have his signature acknowledged by a notary public. Upon information and belief, except in a very few or possibly only a single instance, the Draw Affidavits which were submitted to MLCC as a precondition for the disbursement of a portion of the Loan proceeds, included the inaccurate September 15, 2008 date which MLCC had directed Kirby to affix onto the blank Draw Affidavit, as well as a photocopy of his signature, as well as the notarial acknowledgment thereof.

44.    Upon information and belief, throughout the entire period during which MLCC received each of the Draw Affidavits and partially disbursed the Loan Proceeds to Kirby, it relied upon and never questioned or raised any issue either with Kirby, Rhoads or anyone else acting on Kirby's behalf, concerning either the date discrepancies appearing on the face page of the Draw Affidavits and elsewhere thereon, or the fact that each of the Draw Affidavits had been submitted based on the photocopied signature and acknowledgment of Kirby and the notary public, as applicable.

45.    At the closing of the Loan and purportedly in accordance with Section 2.5b of the Agreement, MLCC required Kirby to pay the sum of $2,000.00 representing the estimated cost of sixteen (16) separate Inspections (collectively, the "Inspection Fees").

46.    Both at the times Kirby discussed, negotiated and ultimately executed the Loan Documents he was assured, promised and lead to believe by MLCC and its Agents, and consequently understood, that the Draw Affidavits and Inspections were material, instrumental and integral provisions of the Loan Documents, and he reasonably relied upon such understanding as memorialized in the Loan Documents and evidenced by the Representations.

47.    At all relevant times, Kirby, based upon the Representations, understood and was led to believe by MLCC that he and MLCC collectively shared and were proceeding upon a

25

**A-125**

Case: 15-3562    Document: 003112161259    Page: 118    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68-1   Filed 08/18/15   Page 27 of 67 PageID: 851
Case 3:12-cv-07080-JAP-LHG   Document 8   Filed 02/15/13   Page 26 of 43 PageID: 93

mutual and common interest not only in completing the Project timely with an anticipated completion date of March 31, 2010 (the defined "Construction Period" under Article 1 of the Agreement), but also at an estimated cost of $2,568,123.00 (which amount represented the defined "Construction Costs" also established under the Article 1 of the Agreement). Thus, it was not only of paramount and overriding importance to Kirby in entering into the Loan Documents, but his understanding and expectation, as well, that as a result of MLCC's Administration of the Loan, there would be strict compliance with the "Construction Period" deadline of March 31, 2010 and the "Construction Costs" of $2,568,123.00.

48.    Consistent with Kirby's understanding, the Agreement is replete with provisions evidencing the joint, common and aligned interests of borrower and lender in connection with the requirement for timely and "on budget" Project completion.

49.    By way of illustration only and not limitation, the following provisions of the Agreement evidence and confirm Kirby and MLCC's common and aligned interest under the Loan Documents in assuring the timely and "on budget" completion of the Project.

> **3.1a.   No change in the Plans and Specifications [for the Project] will be made without the express written approval of LENDER [i.e., MLCC]**
>
> * * *
>
> 3.3    Selection of Contractor
>
> **c.    Owner will disclose to LENDER on a current and ongoing basis, the names of all persons with whom Owner has contracted or intends to contract for the construction of the Improvements or for the furnishing of labor, materials or services thereafter.   When required by LENDER, Owner will obtain the consent of LENDER to the engagement of all such persons.** LENDER's waiver and acceptance of any such person or parties is intended for the protection of LENDER's security, and is not for enforcement of workmanship or financial condition of any such person or party.

26

c:\anl\44\aklawatk\user, kirby316 master asset, princeton - bank of america foreclosure notice\answer 2-6-13_x3_clean.doc

Case: 15-3562     Document: 003112161259     Page: 119     Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68-1   Filed 08/18/15   Page 28 of 67 PageID: 852
Case 3:12-cv-07080-JAP-LHG   Document 8   Filed 02/15/13   Page 27 of 43 PageID: 94

3.4     Assignment of Construction Contract/Subordination of Vendor's Lien

a.     **The Owner hereby assigns to LENDER all of the Owner's right, title and interest in and to the Construction Contract and all permits, Plans and Specifications.** [Emphasis Added]

50.     Although Section 2.5d of the Agreement provides, in part, that "Lender is under no obligation to supervise construction of the Improvements" it was clear, understood and apparent to Kirby that MLCC's role in the Project far transcended merely lending and disbursing the Loan proceeds to him.   This conclusion was corroborated by, among other things, the Agreement's prohibition in Section 3.1a regarding any change in the Project's Plans and Specifications being undertaken without Kirby's first securing MLCC's express or written approval of same.

51.     Similarly, Kirby's unqualified assignment pursuant to MLCC of all of his right, title and interest in the Construction Contract and all of the Project's permits, Plans and Specifications, further evidence MLCC's shared control, oversight and monitoring responsibility of the Project, including but not limited to, its timely and "on budget" completion.

52.     Moreover, the Agreement's provisions relating to the Inspections, independently as well as collectively with the Representations, convinced Kirby that MLCC and its Agents were expected to and would take appropriate affirmative action, including intervening when needed in order to assure the timely and "on-budget" completion of the Project; all of which Kirby reasonably and in good faith relied upon in entering into the Loan in the first instance.

53.     For illustrative purposes only, Sections 2.4a and c, respectively, of the Agreement exemplify the critical role, oversight and supervisory and monitoring functions MLCC assumed and was expected to discharge *vis a vis* the Project.   Under the foregoing provisions, MLCC, alone and in the exercise of its sole discretion, retained control over the disbursements of the

n:\nd\rishel\tworks\kizlner, kirby\216 marcer street, princeton - bank of america first\mera action\answer 2-6-13_v3_clem.doc

Case: 15-3562    Document: 003112161259    Page: 120    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68-1   Filed 08/18/15   Page 29 of 67 PageID: 853
Case 3:12-cv-07080-JAP-LHG   Document 8   Filed 02/15/13   Page 28 of 43 PageID: 95

Loan proceeds until such time as "Lender has conducted such inspections [of the Project] as it may require, and the results of the inspections are satisfactory to it." [Section 2.4a.4] Further, in accordance with the Agreement's Section 2.5b, **"[s]cheduled inspections will be required for each disbursement under the Disbursement Schedule."** [Emphasis Added]

### E. The Sham Of The Inspections And MLCC's Flagrant Disregard Thereof

54.     As seen from the foregoing, the Agreement's provisions regarding the periodic Inspections was a material element in Kirby's decision and willingness to execute the Loan and borrow from MLCC, as opposed to seeking out such financing through other possible construction/permanent lenders.

55.     At all relevant times hereto, MLCC despite the importance of the Inspections mechanism, by its actions, inactions and/or conduct upon receipt of each of the Draw Affidavits and its Agents' completion of the Inspections, grossly disregarded and materially breached the Agreement, thereby depriving Kirby of the benefit of his contractual bargain with MLCC.

56.     Despite paying the Inspections Fees in a lump sum at the closing of the Loan for the approximate sixteen (16) anticipated separate Inspections, Kirby was never provided with a single copy of any Inspection report, despite having repeatedly asked MLCC for same.

57.     Additionally, upon information and belief, those persons/entities designated and selected by MLCC as its Agents to conduct the Inspections had no continuity as multiple different "inspectors" randomly and irregularly appeared at the Project for such purpose. Accordingly, upon information and belief, there never was one single individual charged with conducting the Inspections and who as a result of prior Inspections had any real and meaningful understanding and historical prospective of the pace of the Project, how it was or was not then proceeding, and whether its anticipated completion date of March 31, 2010 remained feasible

28

**A-128**

Case: 15-3562     Document: 003112161259     Page: 121     Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68-1   Filed 08/18/15   Page 30 of 67 PageID: 854
Case 3:12-cv-07080-JAP-LHG   Document 8   Filed 02/15/13   Page 29 of 43 PageID: 96

and achievable based upon the Residence's then state of percentage of completion, and additionally, had any sense of the remaining costs to complete the Project.

58.     As a result of the lack of continuity in the Agents who randomly visited and inspected the Project, MLCC was wholly unaware, remained in the dark, and consciously or unconsciously, turned a "blind eye" toward the disruptions and delays which had so impaired and delayed the Project's timely and on-budget completion.

59.     Had MLCC complied with and discharged its Inspection obligations and duties under the Loan Documents, it easily and quickly would have realized that the Project's anticipated completion date, and its then stage of completion and budget, each were in severe trouble and certainly, not "on track."

60.     Moreover, had MLCC undertaken a careful review and analysis of each of the Draw Affidavits prior to making partial disbursements of the Loan Proceeds, it also would have and/or should have realized that the percentage of completion of the Project, as measured against the anticipated completion date and construction costs expended to the dates of each of the Draw Affidavits, could never have been complied with or met, and consequently, there would be no compliance with applicable provisions of the Loan Documents.

61.     In short, had MLCC undertaken even the most cursory review and analysis of the Draw Affidavits, it would have been readily and immediately apparent that it needed to immediately meet with Kirby and/or Rhoads (and/or any other relevant contractor) in order to understand exactly what was happening with the Project and the reasons why the percentage of completion continued to vary so greatly from that originally contemplated by the Agreement. In sum, MLCC reduced the requirement for the submission of the Draw Affidavits and its

n:\individual\weatheimer, kirby\216 mercer street, princeton - bank of america foreclosure action\answer 2-6-13_v3_clean.doc

29

Case: 15-3562    Document: 003112161259    Page: 122    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68-1   Filed 08/18/15   Page 31 of 67 PageID: 855
Case 3:12-cv-07080-JAP-LHG   Document 8   Filed 02/15/13   Page 30 of 43 PageID: 97

Inspections to mere *pro forma* formalities, with each having no meaningful purpose or function at all in assuring timely and on budget Project completion.

62.    Not only did MLCC wholly disregard and effectively reduce to mere surplusage the Draw Affidavits and Inspections requirements and its obligations under the Loan Documents, it also similarly flagrantly disregarded the applicable provision contained therein relating to any "Construction Cost Deficiency," as said term is defined in Article 1 and specifically Section 2.2 of the Agreement.

63.    Section 2.2d of the Agreement provided as follows:

e.    At any time during the term of the Loan, LENDER may determine that the actual cost to complete construction of the Improvements may or will exceed the sum of the Loan Proceeds and the funds representing the Cost Balance, if any.  In that event, Owner will fund such excess cost prior to any disbursement or further disbursement being made by LENDER.  In the alternative, Owner will, upon demand of LENDER, deliver the amount of such excess cost (the "Construction Cost Deficiency") to LENDER.

64.    On September 23, 2011, Kirby suffered five (5) separate cerebrovascular strokes as well as a major heart attack (collectively, the "Illness"), all of which serious conditions required his hospitalization in four (4) hospitals over a period of three (3) months.

65.    It was only while Kirby was hospitalized and disabled as a result of his Illness that MLCC, for the first time since the Loan Documents had been executed on September 15, 2008, and then only in response to inquiries made on Kirby's behalf while he was hospitalized, disclose and advise that additional monies would have to be advanced by Kirby prior to any further partial disbursements being made by MLCC of the then remaining Loan proceeds.

66.    Presumably, the foregoing advice conveyed by MLCC and its sudden, "out of the blue" insistence that there be compliance with applicable provisions of the Agreement (notwithstanding its longstanding wholesale and flagrant disregard of same) represented the

30

Case: 15-3562    Document: 003112161259    Page: 123    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68-1   Filed 08/18/15   Page 32 of 67 PageID: 856
Case 3:12-cv-07080-JAP-LHG   Document 8   Filed 02/15/13   Page 31 of 43 PageID: 98

purported activation and exercise by MLCC of Section 2.2d of the Agreement regarding a then obvious "Construction Cost Deficiency."

67.    Had MLCC properly and competently conducted the Inspections, and had an informed and knowledgeable Agent having some continuity with prior Inspections carefully reviewed and analyzed the multiple Draw Affidavits, MLCC would and/or should have informed Kirby that the stage or percentage of the Project's completion and estimated construction costs were not only significantly unachievable but that steps needed to be immediately taken to rectify the situation.

68.    At all relevant times, Kirby complied with his payment and other obligations under the Loan Documents, including but not limited to, the Note and never missed an interest payment under the Loan.

69.    Notwithstanding the foregoing, MLCC, despite Kirby's repeated requests, refused to disburse the remaining balance of the Loan proceeds totaling approximately $266,000.00 as it was required to do under the Agreement.  Further, by letter dated May 21, 2012, MLCC gave Kirby notice of his purported default under the Loan Documents, and accordingly, advised that unless full payment of the then outstanding Note balance, inclusive of outstanding principal, was not paid in accordance therewith, it intended to foreclose the Mortgage.

70.    As a direct and proximate result of the foregoing, including MLCC's Administration of the Loan and its actions, inactions and/or conduct, the Project ground to a halt with no further construction of any kind being performed.  Consequently, at the present time the Project lies dormant with the Residence in shambles, having been reduced to a "white elephant," all to Kirby's great damage and detriment.

s:\individuals\weatheimer, kirby\216 mercer street, princeton - bank of america foreclosure action\answer 2-6-13_v.3.doc

Case: 15-3562    Document: 003112161259    Page: 124    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68-1   Filed 08/18/15   Page 33 of 67 PageID: 857
Case 3:12-cv-07080-JAP-LHG   Document 8   Filed 02/15/13   Page 32 of 43 PageID: 99

## FIRST COUNT

### (Breach of Loan Documents)

71.    Kirby repeats and realleges each of the allegations contained in paragraphs 1-70,

inclusive, as if set forth verbatim and at length herein.

72.    By way of illustration only and not limitation, MLCC materially breached the

Loan Documents, including the Agreement, by its actions, inactions and/or conduct in the

following ways:

a.    Failing to conduct and perform the Inspections in a proper and appropriate manner under the Agreement and concealing such failures from Kirby;

b.    Failing to timely inform Kirby of and concealing from him the results of each of the Inspections and denying him receipt of copies of the Inspections reports;

c.    With respect to each Draw Affidavit, failing to properly and appropriately review and analyze the information, including but not limited to, construction and all other costs incurred on the Project, and the then applicable percentage of completion of the Project as same was set forth and reflected therein, and concealing all of the foregoing failures from Kirby;

d.    Failing to timely inform Kirby and concealing from him the results of its review and analysis of each of the Draw Affidavits, assuming *arguendo,* that same was ever undertaken;

e.    Failing to properly disburse to and withholding the balance of the Loan proceeds from Kirby for no lawful reason and in breach of the applicable provisions of the Loan Documents, including the Agreement;

f.    Failing to timely notify Kirby and concealing from him at all times prior to the Illness, that there was a Construction Cost Deficiency under the Loan Documents, including the Agreement; and

g.    Insisting and requiring Kirby to invest in excess of $1,050,000.00 million at the inception of the Project as a precondition to the Agreement, and thereafter, further requiring him to invest an approximate $50,000.00 in additional funds prior to the first partial disbursement of the Loan proceeds.

73.    Upon information and belief, MLCC's failure to comply with its obligations

under the Loan Documents is, among other unlawful and improper purposes, an attempt by

32

Case: 15-3562    Document: 003112161259    Page: 125    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68-1   Filed 08/18/15   Page 34 of 67 PageID: 858
Case 3:12-cv-07080-JAP-LHG   Document 8   Filed 02/15/13   Page 33 of 43 PageID: 100

MLCC to protect itself from a downturn in the economy, and arrange for the creation of a non-material and "technical" default under the Loan Documents, in a blatant and pre-textual attempt to accelerate the Loan and institute the within foreclosure proceeding and seize control, possession and ownership of the Residence.

74.    MLCC's material breaches of the Loan Documents, including the Agreement, and its decision to improperly withhold the balance of the Loan proceeds and to not disburse same to Kirby, is the proximate cause of the purported technical default of Kirby, if any, under the Loan Documents.

75.    As a direct and proximate result of the actions, inactions and/or conduct of MLCC, Kirby has been caused to suffer and in the future will continue to suffer financial loss, damage and irreparable harm.

## SECOND COUNT

### (Breach of Implied Duties of Good Faith and Fair Dealing)

76.    Kirby repeats and realleges each of the allegations contained in paragraphs 1-75, inclusive, as if set forth verbatim and at length herein.

77.    By its foregoing actions, inactions and/or conduct, MLCC has breached the implied duties of good faith and fair dealing which it at all times owed Kirby in connection with the negotiation, execution, and thereafter, the effectuation of the Loan Documents.

78.    As a direct and proximate result of the actions, inactions and/or conduct of MLCC, Kirby has been caused to suffer and in the future will continue to suffer financial loss, damage and irreparable harm.

33

a:\individuals\wertheimer, kirby\216 mercer street, princeton - bank of america foreclosure action\answer 2-6-13_v3_clean.doc

Case: 15-3562    Document: 003112161259    Page: 126    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68-1   Filed 08/18/15   Page 35 of 67 PageID: 859
Case 3:12-cv-07080-JAP-LHG   Document 8   Filed 02/15/13   Page 34 of 43 PageID: 101

## THIRD COUNT

### (Negligence)

79.    Kirby repeats and realleges each of the allegations contained in paragraphs 1-78, inclusive, as if set forth verbatim and at length herein.

80.    At all relevant times, MLCC was under a duty of care to Kirby to act reasonably in connection with the Loan and Loan Documents, including but not limited to, the Loan's Administration.

81.    By its action, inactions and/or conduct, MLCC knowingly, recklessly, intentionally and/or willfully breached its duties owing to Kirby and was thereby negligent, or alternatively grossly negligent, in connection with the Project and the Loan's Administration.

82.    As a direct and proximate result of the actions, inactions and/or conduct of MLCC, Kirby has been caused to suffer and in the future will continue to suffer financial loss, damage and irreparable harm.

## FOURTH COUNT

### (Reformation)

83.    Kirby repeats and realleges each of the allegations contained in paragraphs 1-82, inclusive, as if set forth verbatim and at length herein.

84.    At all relevant times, including but not limited to, prior to the execution of the Loan Documents, and continuing thereafter, both Kirby and MLCC anticipated, expected and proceeded with the Project in reliance upon their mutual reasonable assumption, expectation, promise and understanding (collectively, the "Understandings") that the Construction Costs to complete the Project as set forth in Article 1 of the Agreement was $2,567,123.00.   The Understandings represented the basis upon which Kirby entered into the Loan and executed the

34

Case: 15-3562    Document: 003112161259    Page: 127    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68-1   Filed 08/18/15   Page 36 of 67 PageID: 860
Case 3:12-cv-07080-JAP-LHG   Document 8   Filed 02/15/13   Page 35 of 43 PageID: 102

Loan Documents and MLCC, in turn, agreed to lend $1.5 million in construction financing to ultimately be converted to Permanent Financing.

85.    Notwithstanding and despite the foregoing common understandings and underlying assumptions and premises upon which Kirby and MLCC at all times proceeded, there was a material mutual mistake of fact in that the Construction Costs were grossly underestimated and fell substantially short of the actual amount of monies needed to complete the Project. Although MLCC knew or should have known of same by virtue of the Inspections and its receipt and review of the Draw Affidavits, it intentionally and knowingly, or alternatively, negligently or otherwise decided not to and failed to apprise Kirby of such material mutual mistake of fact at any time prior to the Illness.

86.    As a result of the parties' material mutual mistake of fact, the Loan Documents should, by law and in equity be reformed to reflect the mistaken underfunding of the Project, and BOA, be ordered to: (i) immediately disburse the balance of the Loan Proceeds to Kirby; (ii) provide additional monies in an amount to be determined so as to enable Kirby to complete the Project; (iii) convert the Loan to Permanent Financing in the principal amount of the Loan plus the additional financing to be determined to complete the Project; (iv) rescind its "Notice Of Intention To Accelerate And Foreclose" ("Foreclosure Notice") as set forth in the May 21, 2012 letter, a copy of which is attached as **Exhibit D** to the Complaint; and (v) forbear, until further order of this Court, from any continuing efforts to foreclose the Mortgage.

87.    As a direct and proximate result of the actions, inactions and/or conduct of MLCC, Kirby has been caused to suffer and in the future will continue to suffer financial loss, damage and irreparable harm.

s:\individual\westheimer, kirby\216 mercer street, princeton - bank of america foreclosure action\answer 1-6-13_v3.doc

## FIFTH COUNT

### (Conversion and Misappropriation)

88.    Kirby repeats and realleges each of the allegations contained in paragraphs 1-87, inclusive, as if set forth verbatim and at length herein.

89.    The actions, inactions and/or conduct of MLCC in withholding and failing to disburse to Kirby the balance of the Loan Proceeds constitutes the unlawful conversion and misappropriation of monies to which he is entitled, paid good and valuable consideration for and was and remains his property.

90.    As a direct and proximate result of the actions, inactions and/or conduct of MLCC, Kirby has been caused to suffer and in the future will continue to suffer financial loss, damage and irreparable harm.

## SIXTH COUNT

### (Waste And Impairment And Diminished Value of the Residence)

91.    Kirby repeats and realleges each of the allegations contained in paragraphs 1-90, inclusive, as if set forth verbatim and at length herein.

92.    As a direct and proximate result of the actions, inactions and/or conduct of MLCC, the value of the Residence has been reduced, if not completely impaired and greatly diminished in value.  The actions, inactions and/or conduct of MLCC, in the manner in which it undertook the Loan's Administration and/or the Loan constitute waste, has irreparably damaged the fair market value of the Residence, and has deprived Kirby of all of his right, title and interest therein, as the Residence has been rendered and to date remains uninhabitable and in a state of great disrepair.  Unless MLCC's actions are discontinued, the foregoing state of affairs will continue unabated.

36

Case: 15-3562    Document: 003112161259    Page: 129    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68-1   Filed 08/18/15   Page 38 of 67 PageID: 862
Case 3:12-cv-07080-JAP-LHG   Document 8   Filed 02/15/13   Page 37 of 43 PageID: 104

93.     As a direct and proximate result of the actions, inactions and/or conduct of MLCC, Kirby has been caused to suffer and in the future will continue to suffer financial loss, damage and irreparable harm.

### SEVENTH COUNT

### (Unjust Enrichment)

94.     Kirby repeats and realleges each of the allegations contained in paragraphs 1-93, inclusive, as if set forth verbatim and at length herein.

95.     As a direct and primate result of the actions, inactions and/or conduct of MLCC, including but not limited to, the receipt of monies from Kirby on account of Inspection fees, interest, charges, costs incidental to the Loan and other good and valuable consideration paid by MLCC, it has been unjustly enriched at the expense of Kirby and to his detriment.

96.     As a direct and proximate result of the actions, inactions and/or conduct of MLCC, Kirby has been caused to suffer and in the future will continue to suffer financial loss, damage and irreparable harm.

### EIGHTH COUNT

### (Malicious And Tortious Interference With Prospective Economic Advantage)

97.     Kirby repeats and realleges each of the allegations contained in paragraphs 1-96, inclusive, as if set forth verbatim and at length herein.

98.     The interference by MLCC with Kirby's rights, entitlements and benefits under the Loan Documents, including the Agreement, was knowing and malicious and was motivated solely for the purpose of intentionally and tortiously depriving Kirby of his justifiable and reasonable expectations of realizing same thereunder, including but not limited to, the timely and

37

n:\individuals\wordheimer, kirby\216 mercer street, princeton - bank of america foreclosure action\answer 2-6-13_v-3_clean.doc

**A-137**

Case: 15-3562    Document: 003112161259    Page: 130    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68-1   Filed 08/18/15   Page 39 of 67 PageID: 863
Case 3:12-cv-07080-JAP-LHG   Document 8   Filed 02/15/13   Page 38 of 43 PageID: 105

"on budget" completion of the Project as had been described by MLCC to Kirby through the Representations and memorialized in the Loan Documents.

99.    Kirby has been directly and proximately, substantially, economically and financially injured as a result of the malicious and tortious interference by MLCC with his rights, entitlements and interest in and under the Loan and the Residence.

100.    As a direct and proximate result of the actions, inactions and/or conduct of MLCC, Kirby has been caused to suffer and in the future will continue to suffer financial loss, damage and irreparable harm.

<u>**NINTH COUNT**</u>

**(Negligent Misrepresentation)**

101.    Kirby repeats and realleges each of the allegations contained in paragraphs 1-100, inclusive, as if set forth verbatim and at length herein.

102.    The false, inaccurate and/or misleading Representations of material fact made in connection with Kirby's negotiation of, and thereafter his execution of and performance under the Loan Documents, including the Agreement, were made negligently by MLCC.

103.    Kirby reasonably and in good faith relied upon the materially false and misleading Representations and other non-disclosures and/or omissions of material fact made by MLCC and its Agents in connection with the negotiation and execution of the Loan Documents, and thereafter, his performance thereunder.

104.    MLCC and its Agents knew or should have known of these materially false and misleading Representations made to Kirby and as to which they never intended or were unable to comply with, and also of the foregoing non-disclosures and/or omissions, as all of same were

38

Case: 15-3562    Document: 003112161259    Page: 131    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68-1   Filed 08/18/15   Page 40 of 67 PageID: 864
Case 3:12-cv-07080-JAP-LHG   Document 8   Filed 02/15/13   Page 39 of 43 PageID: 106

subsequently confirmed and evidenced by MLCC's complete disregard of its obligations owing to Kirby under the Loan Documents.

105.    Had MLCC and its Agents revealed and disclosed to Kirby their unwillingness and/or true intent to never perform and discharge their duties and obligations owing to him under the Loan Documents, Kirby never would have agreed to the Loan, borrowed and used the Loan proceeds or assumed the risk in connection therewith that the Mortgage would ever be foreclosed upon by MLCC.

106.    Alternatively, the Representations made by MLCC and its Agents were made recklessly.

107.    As a direct and proximate result of the actions, inactions and/or conduct of MLCC and its Agents, Kirby has been caused to suffer and in the future will continue to suffer financial loss, damage and irreparable harm.

### TENTH COUNT

### (Specific Performance)

108.    Kirby repeats and realleges each of the allegations contained in paragraphs 1-107, inclusive, as if set forth verbatim and at length herein.

109.    As a direct and proximate result of the Representations and the terms and conditions of the Loan Documents, including the actions, inactions and/or conduct of MLCC and its Agents and Kirby's reasonable and good faith reliance thereon, MLCC is estopped from refusing to immediately disburse the remaining balance of the Loan Proceeds in accordance with the Loan Documents, enforcing the Foreclosure Notice and continuing this action.

110.    In the event that BOA and/or MLCC is not directed to specifically perform in accordance with the Loan Documents, Kirby will not realize the benefit of his bargain under the

s:\individual\weatheimer, kirby\216 mercer street, princeton - bank of america foreclosure action\answer 2-6-13_v.3_clean.doc

Case: 15-3562     Document: 003112161259     Page: 132     Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68-1   Filed 08/18/15   Page 41 of 67 PageID: 865
Case 3:12-cv-07080-JAP-LHG   Document 8   Filed 02/15/13   Page 40 of 43 PageID: 107

Loan Documents and will have lost all monies, interest and other good and valuable consideration paid by him to MLCC under the Loan Documents.

111.   As a direct and proximate result of the actions, inactions and/or conduct of MLCC, Kirby has been caused to suffer and in the future will continue to suffer financial loss, damage and irreparable harm.

### ELEVENTH COUNT

**(Imposition of Constructive Trust, Equitable Recoupment,
Disgorgement And An Accounting)**

112.   Kirby repeats and realleges each of the allegations contained in paragraphs 1-111, inclusive, as if set forth verbatim and at length herein.

113.   Due to the actions, inaction and conduct of MLCC, it would be unjust and inequitable to permit BOA to possess, retain, use, profit and/or benefit in any way from the unlawful use, misappropriation and conversion of the monies Kirby has paid under the Loan Documents, or profit in any way from the impairment and diminished value of the Residence.

114.   On account of the actions, inactions and conduct of MLCC, in addition to any other damages for which BOA is liable to Kirby, it should be ordered to forfeit and return to Kirby by way of equitable recoupment and disgorgement, all monies, interest and other good and valuable consideration which it has actually received from Kirby, anticipates receiving from him hereafter or as a result of any sale of the Residence.

115.   As a direct and proximate result of the actions, inactions and/or conduct of MLCC, Kirby has been caused to suffer and in the future will continue to suffer financial loss, damage and irreparable harm.

s:\individuals\westfin\mac, kirby\216 mercer street, princeton - bank of america foreclosure action\answer 2-6-13_v3_clean.doc

Case: 15-3562    Document: 003112161259    Page: 133    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68-1   Filed 08/18/15   Page 42 of 67 PageID: 866
Case 3:12-cv-07080-JAP-LHG   Document 8   Filed 02/15/13   Page 41 of 43 PageID: 108

## TWELFTH COUNT

### (*Respondeat Superior*)

116.   Kirby repeats and realleges each of the allegations contained in paragraphs 1-115, inclusive, as if set forth verbatim and at length herein.

117.   At all times relevant hereto, upon information and belief, MLCC retained and engaged the Agents who were authorized and designated by it to perform the Inspections under the Loan Documents.

118.   As a direct and proximate result of the foregoing relationship between MLCC and the Agents, MLCC is liable for the actions, inactions and/or conduct of the Agents under the doctrine of *respondeat superior*.

119.   As a direct and proximate result of the actions, inactions and/or conduct of MLCC, Kirby has been caused to suffer and in the future will continue to suffer financial loss, damage and irreparable harm.

## THIRTEENTH COUNT

### (Declaratory Relief)

120.   Kirby repeats and realleges each of the allegations contained in paragraphs 1-119, inclusive, as if set forth verbatim and at length herein.

121.   An actual and justiciable controversy has arisen and now exists between the parties concerning their respective rights and entitlements under the Loan Documents, including the obligation, which BOA denies, to disburse the balance of the remaining Loan proceeds to Kirby.

122.   Kirby seeks a judicial determination of his rights, obligations and entitlements arising under the Loan Documents, including but not limited to, his immediate entitlement to the

41

x:\individuals\worth\mac_kirby\216 mercer street, princeton - bank of america foreclosure action\answer 2-6-13_v3_clean.doc

Case: 15-3562    Document: 003112161259    Page: 134    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68-1   Filed 08/18/15   Page 43 of 67 PageID: 867
Case 3:12-cv-07080-JAP-LHG   Document 8   Filed 02/15/13   Page 42 of 43 PageID: 109

balance of the Loan proceeds and conversion of the Loan to Permanent Financing.  Such a declaration is necessary and appropriate at this time because BOA has refused to honor its obligations to Kirby under the Loan Documents.

WHEREFORE, Kirby demands judgment against BOA and MLCC, jointly and severally, on the First through Thirteenth Counts, inclusive, as follows:

(a)    Declaring that  BOA and MLCC are equitably estopped from asserting that Kirby is in breach and has defaulted under the Loan Documents, and accordingly, from proceeding with the within action;

(b)    Declaring that Kirby is not in breach of and has not defaulted under the Loan Documents, and accordingly, is entitled to receive all rights, entitlements and benefits thereunder;

(c)    Rescinding the Foreclosure Notice;

(d)    Temporarily and permanently enjoining the continued prosecution of the within action;

(e)    Refund of all monies paid to BOA and/or MLCC by Kirby under the Loan Documents, together with accrued interest from the execution date of the Loan Documents;

(f)    Recoupment and disgorgement of all monies, interest and other good and valuable consideration realized and/or received by BOA and/or MLCC from Kirby in connection with the Loan;

(g)    The immediate, unconditional disbursement to Kirby of the remaining balance of the Loan proceeds;

(h)    The reformation of the Loan Documents to reflect an increase in the amount of financing to be determined for the Project and conversion of the Loan Documents to Permanent Financing and as so modified, the disbursement of said additional funding to Kirby;

(i)    An accounting of all monies, interest and other good and valuable consideration paid by Kirby to BOA and/or MLCC under the Loan Documents;

(j)    Compensatory damages;

(k)    Consequential damages;

(l)    Punitive damages;

a:\individual\weinheimer, kirby\216 mercer street, princeton - bank of america foreclosure action\answer 2-6-13_v3.doc

Case: 15-3562    Document: 003112161259    Page: 135    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68-1   Filed 08/18/15   Page 44 of 67 PageID: 868
Case 3:12-cv-07080-JAP-LHG   Document 8   Filed 02/15/13   Page 43 of 43 PageID: 110

(m)     Prejudgment interest;

(n)     Attorneys' fees; and

(o)     All other legal and equitable relief that this Court may deem just and proper.

GRUHIN & GRUHIN, P.A.

155 Prospect Avenue,
Suite 100
West Orange, New Jersey 07052
Telephone: (973) 325-7000

By:/s/ Paul J. Linker
    PAUL J. LINKER (PL8642)
    plinker@gruhinlaw.com

Attorneys for Defendant-Counterclaimant,
Kirby Westheimer

Dated: February 15, 2013

## CERTIFICATION

Pursuant to L. Civ. R. 11.2, I hereby certify that the matter in controversy is not the subject matter of any other action or arbitration or administrative proceeding, now or contemplated.

GRUHIN & GRUHIN, P.A.
155 Prospect Avenue,
Suite 100
West Orange, New Jersey 07052
Telephone: (973) 325-7000

By:/s/ Paul J. Linker
    PAUL J. LINKER (PL8642)
    plinker@gruhinlaw.com

Attorneys for Defendant-Counterclaimant,
Kirby Westheimer

Dated: February 15, 2013

s:\individuals\westheimer, kirby\216 mercer street, princeton - bank of america foreclosure action\answer 2-6-13_v.3.doc

# EXHIBIT D

Case: 15-3562    Document: 003112161259    Page: 137    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68-1   Filed 08/18/15   Page 46 of 67 PageID: 870
Case 3:12-cv-07080-JAP-LHG   Document 47   Filed 02/28/14   Page 1 of 1 PageID: 404

NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| BANK OF AMERICA, N.A., | : | |
| Plaintiff, | : | Civil Action No. 12-7080 (JAP) |
| v. | : | **ORDER** |
| KIRBY WESTHEIMER *et al.*, | : | |
| Defendants. | : | |

Presently before the Court is Plaintiff's motion to dismiss Defendant's Counterclaim and Plaintiff's motion for summary judgment on its mortgage foreclosure action [docket # 17]. For the reasons set forth in the accompanying Opinion,

**IT IS** on this 28th day of February, 2014,

**ORDERED** that Plaintiff's Motion to Dismiss Defendant's Counterclaim is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Motion for Summary Judgment on the Complaint is **GRANTED**.


/s/ Joel A. Pisano
JOEL A. PISANO
United States District Judge


**A-145**

# EXHIBIT E

Case: 15-3562    Document: 003112161259    Page: 139    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68-1   Filed 08/18/15   Page 48 of 67 PageID: 872
Case 3:12-cv-07080-JAP-LHG   Document 46   Filed 02/28/14   Page 1 of 20 PageID: 384

NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| BANK OF AMERICA, N.A., | : | |
| Plaintiff, | : | Civil Action No. 12-7080 (JAP) |
| v. | : | **OPINION** |
| KIRBY WESTHEIMER *et al.*, | : | |
| Defendants. | : | |

PISANO, District Judge

The instant foreclosure action is brought by Bank of America, N.A. ("BA"), successor in interest to Merrill Lynch Credit Corporation, by and through its servicer and attorney-in-fact, PHH Mortgage Corporation (collectively "Plaintiff"), as the holder of a mortgage and note against the borrower, Kirby Westheimer ("Defendant"). Presently before the Court is Plaintiff's motion to dismiss Defendant's Counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) and Plaintiff's motion for summary judgment on its mortgage foreclosure action [docket # 17]. For the following reasons, Plaintiff's motions are GRANTED.

## I.       BACKGROUND

On September 15, 2008, Plaintiff and Defendant entered into a construction loan agreement (the "Loan"), and Defendant executed and delivered an Adjustable Rate Note (the "Note") in the principal amount of $1,500,000.00. Under the Loan Agreement, Defendant was to use the Loan proceeds to finance the construction of certain improvements (the "Project") to his residence located at 210 Mercer Street, Princeton, New Jersey (the "Residence" or "Property").

1

As security for the Note, Defendant executed and delivered to Plaintiff a mortgage (the "Mortgage"), which among other conditions, rights, duties and privileges set forth therein, encumbers the Residence. The Mortgage was duly recorded with the Mercer County Clerk's Office.

Plaintiff alleges that Westheimer defaulted on the Loan by failing to complete the Project in accordance with the Construction Loan Agreement, which provides that construction on the Project was to be completed no later than March 31, 2010. On May 21, 2012, the Project still had not been completed and Plaintiff sent Defendant a letter advising that unless Defendant complied with the terms of the Loan and completed the Project, Plaintiff may exercise its right to foreclose on the Property. Defendant failed to cure his default under the Loan and Plaintiff filed its Complaint in this action on November 15, 2012, alleging a single cause of action for foreclosure on the Property [docket # 1].

On February 13, 2013, Defendant filed his Answer, Affirmative Defenses and Counterclaim [docket # 8]. In sum and substance, Defendant alleges that Plaintiff was under an affirmative duty to ensure that construction of the Project was proceeding within the timeframe, budget, and specifications agreed to in the Loan, and that any default on the Loan resulted from Plaintiff's failure to conduct proper inspections of the Project.

In 2006, Defendant decided to undertake a substantial remodel to his Residence and hired a contractor to manage the Project. According to Defendant, from July 2007 to August 2008, he paid approximately $1,016,585.55 of personal funds towards the construction. In August 2008, it became apparent that he would need additional funds to complete the Project and he sought financing from Plaintiff.

2

**A-148**

Case: 15-3562    Document: 003112161259    Page: 141    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68-1   Filed 08/18/15   Page 50 of 67 PageID: 874
Case 3:12-cv-07080-JAP-LHG   Document 46   Filed 02/28/14   Page 3 of 20 PageID: 386

Under the terms of the Loan, before Plaintiff would disburse finds to Defendant, Plaintiff required an inspection of the Project and a signed request for disbursement from Defendant. Defendant claims he believed the inspections were conducted to ensure that the Project was proceeding in a timely fashion, "on budget" and in compliance with the plans and specifications for the Project. According to Defendant, the inspection procedure was a "material element" in his decision to execute the Loan and he was under the impression that "[Plaintiff] and it Agents were expected to and would take appropriate affirmative action, including intervening when needed in order to assure the timely and 'on budget' completion of the Project." Counterclaim ¶ 50, 54. Defendant acknowledges that pursuant to the Loan Agreement, Plaintiff "is under no obligation to supervise construction of the Improvement," but argues that it was "clear, understood and apparent to [him] that [Plaintiff's] role in the Project transcended merely lending and disbursing the Loan proceeds to him." *Id.* at ¶ 27.

Defendant's Counterclaim is based largely on the assertion that Plaintiff's inspections of the property were inadequate. According to Defendant, Plaintiff sent several different individuals to conduct inspections of the Project. As a result of the "lack of continuity" in the inspections, Defendant claims that Plaintiff "turned a 'blind eye' toward the disruptions and delays" in construction of the Project.  According to Defendant, if Plaintiff had performed proper inspections of the Project, Plaintiff would have realized the Project was not proceeding within the anticipated timeframe or budget, and that Plaintiff, upon such realization, should have refused to disburse additional Loan proceeds until the deficiencies were remedied.

According to Defendant, around September 2011, Plaintiff informed him for the first time that he would have to personally contribute additional funds to the Project before any further proceeds would be disbursed. Defendant claims that although he complied with all of his

3

**A-149**

Case: 15-3562    Document: 003112161259    Page: 142    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68-1   Filed 08/18/15   Page 51 of 67 PageID: 875
Case 3:12-cv-07080-JAP-LHG   Document 46   Filed 02/28/14   Page 4 of 20 PageID: 387

obligations under the Loan and never failed to make a payment, Plaintiff refused to disburse the remaining Loan balance of approximately $266,000.00. Defendant alleges that as a result of Plaintiff's failure to fulfill its purported obligations under the Loan, "the Project lies dormant" and the Residence is in "shambles."

Based on the alleged conduct of Plaintiff, Defendant's Counterclaim asserts thirteen causes of action for: (1) Plaintiff's breach of the Loan documents by failing to properly conduct inspections of the property or release the results of the inspections; (2) Plaintiff's breach of the implied covenant of good faith and fair dealing; (3) Plaintiff's negligence in administering the Loan and managing the Project; (4) reformation of the Loan Agreement based on the parties' material mistake of fact; (5) conversion and misappropriation by Plaintiff in withholding and failing to disburse the balance of the loan proceeds to Defendant; (6) waste, impairment and diminished value of the Residence; (7) unjust enrichment; (8) malicious and tortious interference with Defendant's prospective economic advantage; (9) Plaintiff's negligent misrepresentation of material facts in connection with the Loan Documents; (10) specific performance requiring the immediate disbursal of the remaining balance of the Loan; (11) imposition of a constructive trust, equitable recoupment, disgorgement and an accounting; (12) Plaintiff's liability under *respondeat superior* for its agents responsible for performing the inspections; and (13) declaratory relief.

**II.    DISCUSSION**

Plaintiff now moves to dismiss Defendant's Counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) and for summary judgment on its mortgage foreclosure action. Defendant opposes these motions [docket # 42].

4

**A-150**

Case: 15-3562    Document: 003112161259    Page: 143    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG    Document 68-1    Filed 08/18/15    Page 52 of 67 PageID: 876
Case 3:12-cv-07080-JAP-LHG    Document 46    Filed 02/28/14    Page 5 of 20 PageID: 388

**A. Motion to Dismiss Defendant's Counterclaim Under Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. In deciding a motion to dismiss under Rule 12(b)(6), a court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997). The factual allegations in the complaint must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In deciding a motion to dismiss under Rule 12(6)(6), the court may consider the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of the plaintiff's claim. *Lum. v. Bank of Am.,* 361 F.3d 217, 222 n.3 (3d Cir. 2004).

**1. Breach of Contract (Count I)**

In Count I, Westheimer claims that BA materially breached the Loan Documents by (1) failing to conduct and perform the inspections in a proper and appropriate manner, (2) concealing the results of the inspection reports, (3) failing to properly analyze the Draw Affidavits before disbursing the loan proceeds, (4) withholding the balance of the loan proceeds, (5) failing to perform Westheimer that there was a Construction Cost Deficiency, and (6) requiring Westheimer to invest over $1,000,000 as a precondition to the Loan. Westheimer further alleges that BA, in order to "protect itself from a downturn in the economy . . . arrange[d] for the creation on a non-material and 'technical' default under the Loan Documents." Counterclaim ¶ 72-73.

Case: 15-3562    Document: 003112161259    Page: 144    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68-1   Filed 08/18/15   Page 53 of 67 PageID: 877
Case 3:12-cv-07080-JAP-LHG   Document 46   Filed 02/28/14   Page 6 of 20 PageID: 389

To state a claim for breach of contract under New Jersey law, a plaintiff must allege: (1) the existence of a valid contract between itself and the defendant; (2) that the defendant materially breached the contract; and (3) the plaintiff suffered damages as a result of the breach. *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.,* 421 F. Supp. 2d 831, 833 (D.N.J. 2006) (citing *Coyle v. Englander's,* 488 A.2d 1083 (N.J. Super. Ct. App. Div. 1985)).

There is no dispute between the parties regarding the validity of the Loan Documents, satisfying the first element for a breach of contract claim. However, the Court finds that Westheimer has failed to allege any breach of the Loan Documents by BA. Westheimer's Counterclaim is based largely on BA's purported "affirmative obligation . . . to conduct through its Agents regular, on-site Project related inspections of the Residence." Counterclaim ¶ 32. The Loan Agreement states that Plaintiff "or its agents will have the right at all times during the period of construction to enter upon the Property to conduct inspections . . . ." Complaint, Exhibit A at 3. Under the terms of the Loan Agreement, Plaintiff "is under no obligation to supervise the construction of the improvements . . . [and] inspection of the construction of the Improvements is for the sole purpose of protecting and preserving the security of [BA]." *Id.,* Exhibit A at 4.

Furthermore, the Loan Agreement clearly states that "[n]o inspection is to be construed as a representation or endorsement that the construction of the Improvements is in fact in compliance with Plans and Specifications, that the construction will be free of defective material or workmanship, or that the construction is in compliance with limitations or requirements imposed by covenants and restrictions of record or by government authority." *Id.*

The provisions of the Loan Agreement run contrary to Westheimer's assertion that BA undertook an "affirmative obligation" to conduct regular inspections of the property and inform

6

Case: 15-3562    Document: 003112161259    Page: 145    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68-1   Filed 08/18/15   Page 54 of 67 PageID: 878
Case 3:12-cv-07080-JAP-LHG   Document 46   Filed 02/28/14   Page 7 of 20 PageID: 390

Westheimer of the results of the inspections. The Loan Agreement clearly states that any inspection of the Project by Plaintiff was for BA's benefit and in no way constituted a representation or guarantee regarding the quality of the construction. Furthermore, there is no statement in the Loan Documents providing that Westheimer is entitled to the results of any inspection conducted by BA. Contrary to Defendant's argument, under the terms of the Loan Agreement, it was Defendant's duty to ensure that the construction was completed in a "first class and workmanlike manner" and in "full and strict compliance with the Plans and Specifications." *Id.*

With regard to Westheimer's claim that BA was obligated to withhold disbursement of the Loan proceeds based on the deficiencies in the construction, the Loan Agreements provides that BA "has the right to disapprove defective work and materials and may in its discretion, but is not obligated to, withhold disbursements until any defects are corrected . . . ." *Id.* Based on the terms of the Loan Documents, the Court finds that BA was under no obligation to conduct inspections, provide the results of any inspections to Westheimer, or to withhold Loan proceeds when deficiencies arose. Therefore, because Westheimer has failed to allege any action taken by BA which would constitute a breach of the Loan Documents, the Court finds that Westheimer has failed to state a claim for breach of contract. Accordingly, Count I of the Counterclaim is dismissed.

**2. Breach of the Covenant of Good Faith and Fair Dealing (Count II)**

Count II asserts a violation of the covenant of good faith and fair dealing. "The implied duty of good faith and fair dealing does not operate to alter the clear terms of an agreement and may not be invoked to preclude a party from exercising its express rights under such agreement." *Fields v. Thompson Printing Co., Inc.,* 363 F.3d 259, 271-72 (3d Cir. 2004) (internal

Case: 15-3562    Document: 003112161259    Page: 146    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68-1   Filed 08/18/15   Page 55 of 67 PageID: 879
· Case 3:12-cv-07080-JAP-LHG   Document 46   Filed 02/28/14   Page 8 of 20 PageID: 391

quotations and citations omitted). "[W]here the terms of the parties' contract are clear, the implied covenant of good faith and fair dealing will not override the contract's express language." *Id.* Defendant does not allege any lack of clarity in the Loan Agreement. Instead, Defendant asserts that Plaintiff was obligated to perform additional duties in direct conflict with the terms of the Loan. Therefore, because the parties' contract is clear, the Court finds that Defendant has failed to state a claim for Plaintiff's breach of the implied covenant of good faith and fair dealing. Accordingly, Count II is dismissed.

### 3. Negligence (Count III)

In Count III, Defendant alleges that Plaintiff "was under a duty of care to [Defendant] to act reasonably in connection with the Loan" and Plaintiff "knowingly, recklessly, intentionally and/or willingly breached its duties owing to [Defendant]." Counterclaim ¶ 80-81. Defendant further claims that as a direct and proximate result of Plaintiff's purported negligence, he "has been caused to suffer and in the future will continue to suffer financial loss, damage and irreparable harm." *Id.* at ¶ 82.

A claim for negligence must demonstrate a duty, a breach of that duty, and foreseeable resulting injury proximately caused by the breach. *Anderson v. Sammy Redd and Assoc.,* 650 A.2d 376 (N.J. Super. Ct. App. Div. 1995). Here, the Court finds that Defendant has failed to state a claim for negligence because he has not established that Plaintiff owed him a duty of care. Under New Jersey law, the "mere existence of a mortgage agreement between plaintiff and defendant is insufficient, as a matter of law to create any duty of care owing from Defendant to Plaintiff." *Int'l Minerals & Mining Corp. v. Citicorp North Am., Inc.,* 736 F. Supp. 587, 597 (D.N.J. 1990) (citing *Washington Steel Corp. v. TW Corp.,* 602 F.2d 594, 599-600 (3d Cir. 1979) (overruled on other grounds by *Clark v. K-Mart Corp.,* 979 F.2d 965, 967-69 (3d Cir. 1992)).

Case: 15-3562    Document: 003112161259    Page: 147    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68-1   Filed 08/18/15   Page 56 of 67 PageID: 880
Case 3:12-cv-07080-JAP-LHG   Document 46   Filed 02/28/14   Page 9 of 20 PageID: 392

There is "a general presumption that the relationship between lenders and borrowers is conducted at arms-length, and the parties are each acting in their own interest." *United Jersey Bank of Kensey,* 704 A.2d 38, 45 (N.J. Super. Ct. App. Div. 1997).

Westheimer contends that that BA's "utterly negligent and deficient" inspections and "reckless" conduct in allowing "loan proceeds to be disbursed for work that was incomplete or defective" created a duty of care. Opposition at 5. Although there is a general presumption that the relationship between a lender and a borrower is conducted at arms length, under New Jersey law, a duty may arise from transactions: (1) "involving fiduciary relationships such as a principal and agent or attorney and client," (2) "situations in which either one or each of the parties, in entering . . . [the] transaction, expressly reposes . . . a trust and confidence in the other . . . or [because of the] circumstances of the case, the nature of their dealings, or their position towards each other, such a trust and confidence . . . is necessarily implied" and (3) "contracts or transactions which in their essential nature, are intrinsically fiduciary and necessarily call[ ] for perfect good faith and full disclosure, without regard to any particular intention of the parties." *Id.* at 44 (citations omitted).

Here, Westheimer claims BA owes a duty arising out of the second exception. Under the second exception, in which one of the parties "expressly reposes a trust or confidence in the other" a duty arises "where the lender encouraged the borrower to repose special trust or confidence in its advice, thereby inducing the borrower's reliance." *Id.* at 45. However, this exception only creates a duty between a lender and a borrower in cases involving "egregious breaches of the lender's duty of good faith and fair dealing . . . [where] the bank actively encouraged the [borrower] to rely upon its advice and concealed its self-interest in promoting the transaction." *Id.* at 46. Westheimer alleges that BA's alleged conduct in "improperly

Case: 15-3562    Document: 003112161259    Page: 148    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68-1   Filed 08/18/15   Page 57 of 67 PageID: 881
Case 3:12-cv-07080-JAP-LHG   Document 46   Filed 02/28/14   Page 10 of 20 PageID: 393

conduct[ing] inspections that were required prior to issuance of draws against the construction loan" constitutes "special circumstances" warranting a finding by the Court that BA breached a duty of care owed to Westheimer.

As previously noted by the Court, any inspections conducted by BA were for BA's benefit only, and under the clear terms of the Loan Agreement, BA was under no obligation to monitor the progress or quality of the construction, release the findings of any inspections to Westheimer, or to withhold Loan proceeds upon any finding of deficiency. All of the conduct alleged by Westheimer is well within BA's rights and obligations under the Loan Documents and falls far short of demonstrating any "egregious" action taken by BA. Therefore, because BA did not owe a duty of care to Westheimer, the Court finds that Westheimer has failed to state a claim for negligence. Accordingly, Count III is dismissed.

### 4. Reformation (Count IV)

In Count IV, Defendant alleges "a material mutual mistake of fact in that the Construction Costs were grossly underestimated and fell substantially short of the actual amount of monies needed to complete the project" and requests a reformation of the Loan "to reflect the mistaken underfunding of the Project." Counterclaim ¶ 84-86. "Reformation of a contract is an equitable remedy, traditionally available when there exists either mutual mistake or unilateral mistake by one party and fraud or unconscionable conduct by the other." 2011 WL 6341182, at *8 (N.J. Super. Ct. App. Div. Dec. 20, 2011) (citations omitted). Mutual mistake exists only when "both parties were laboring under the same misapprehension as to a particular essential fact." *Bonnco Petrol, Inc. v. Epstein,* 560 A.2d 655, 659 (N.J. 1989). "New Jersey law also requires for reformation for mutual mistake that the minds of the parties have met and reached a prior existing agreement, which the written document fails to express." *Id.*

10

**A-156**

Case: 15-3562      Document: 003112161259      Page: 149      Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68-1   Filed 08/18/15   Page 58 of 67 PageID: 882
Case 3:12-cv-07080-JAP-LHG   Document 46   Filed 02/28/14   Page 11 of 20 PageID: 394

Here, the Court finds that Defendant has failed to allege facts demonstrating a mutual mistake requiring reformation of the Loan. The cost of the construction provided for in the Loan Agreement is "estimated" and Article 2.2 of the Loan Agreement provides the appropriate remedy in the event that the lender "at any time during the term of the Loan . . . determines that the actual cost to complete construction of the Improvements may or will exceed the sum of the Loan Proceeds." Complaint, Exhibit A at 1-2. The Loan Agreement clearly contemplates the possibility of a difference between the estimated and actual cost of construction and states that Defendant bears the responsibility for any additional costs in excess of those estimated in the Loan. Even if Defendant believed, in clear contradiction with the terms of the Loan Agreement, that Plaintiff guaranteed the final cost of the Project, there is no indication that any such mistake was mutual to both parties. Therefore, the Court finds that Plaintiff has failed to demonstrate that the parties "met and reached a prior existing agreement, which the [Loan Agreement] fails to express." *Bonnco,* 560 A.2d 655 at 659. Accordingly, Count IV is dismissed.

**5. Conversion and Misappropriation (Count V).**

In Count V, Defendant alleges that Plaintiff's failure to disburse the balance of the Loan Proceeds "constitutes unlawful conversion and misappropriation of monies to which he is entitled." Counterclaim ¶ 89. "[C]onversion consists of the wrongful exercise of dominion and control over property by another in a manner inconsistent with the owner's rights." *Commercial Ins. Co. of Newark v. Apgar,* 267 A.2d 559, 561-62 (N.J. Super. Ct. Law Div. 1970).

Here, Defendant's claim for conversion fails because Defendant has not demonstrated an ownership interest in the undisbursed Loan Proceeds. Under the terms of the Loan Agreement, several conditions must be met before the disbursement of Loan Proceeds to Defendant. Even assuming, *arguendo,* that Defendant met the requirements for regular disbursement of the Loan

11

Case: 15-3562    Document: 003112161259    Page: 150    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG    Document 68-1    Filed 08/18/15    Page 59 of 67 PageID: 883
Case 3:12-cv-07080-JAP-LHG    Document 46    Filed 02/28/14    Page 12 of 20 PageID: 395

Proceeds throughout the construction, Defendant has failed to allege satisfaction of the requirements for the "final disbursement of funds" under the Loan Agreement. *See* Complaint, Exhibit A at 3. Therefore, because Defendant has failed to demonstrate any entitlement to the remaining Loan Proceeds, his claim for conversion fails. Accordingly, Count V is dismissed.

### 6. Waste, Impairment and Diminished Value (Count VI)

In Count VI, Defendant claims that Plaintiff's administration of the Loan "has irreparably damaged the fair market value of the Residence, and has deprived [Defendant] of all his right, title and interest therein, as the Residence has been rendered and to date remains uninhabitable and in a state of great disrepair." Counterclaim ¶ 92.

As previously noted, under the clear terms of the Loan Agreement, Defendant accepted "full responsibility for selection of the Contractor and any subcontractors and all materials, supplies and equipment to be used in the construction" and Plaintiff was "under no obligation to supervise construction of the improvements." Complaint, Exhibit A at 4-5. Therefore, because it was Defendant's obligation to ensure that the construction would be completed "[i]n a first class and workmanlike manner" and "[i]n full and strict compliance with the Plans and Specifications," the Court finds that the responsibility for any deficiencies in the construction falls solely on Defendant. *Id.,* Exhibit A at 4. Accordingly, Count VI is dismissed.

### 7. Unjust Enrichment (Count VII)

In Count VII, Defendant alleges that Plaintiff was unjustly enriched by "the receipt of monies from [Defendant] on account of Inspection fees, interest, charges, costs incidental to the Loan and other good and valuable consideration paid by [Plaintiff]." Counterclaim ¶ 95.

To state a claim for unjust enrichment under New Jersey law, a plaintiff must allege "(1) that defendant has received a benefit from the plaintiff, and (2) that the retention of the benefit by

12

**A-158**

Case: 15-3562    Document: 003112161259    Page: 151    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68-1   Filed 08/18/15   Page 60 of 67 PageID: 884
Case 3:12-cv-07080-JAP-LHG   Document 46   Filed 02/28/14   Page 13 of 20 PageID: 396

the defendant is inequitable." *Wanaque Borough Sewerage Auth. v. Twp. of West Milford,* 677 A.2d 747 (N.J. 1996) (citation omitted). Unjust enrichment is a form of quasi-contractual liability that exists when the defendant has received a benefit from plaintiff that it would be inequitable for him to retain. *Hassler v. Sovereign Bank,* 644 F. Supp. 2d 509, 519 (D.N.J. 2009). However, such liability is precluded where the subject matter of the claim is governed by an express contract, in which case the plaintiff is limited to contractual remedies. *Suburban Transfer Serv. v. Beech Holdings, Inc.,* 716 F.2d 220, 226-27 (3d Cir. 1983).

Here, the subject matter of Defendant's claim is governed by the Loan Documents, which precludes Defendant's allegation that Plaintiff was unjustly enriched. Furthermore, all of the benefits allegedly received by Plaintiff fall within the terms of the Parties' express and valid written agreement and Defendant has failed to plead facts demonstrating that any benefit received by Plaintiff is inequitable. Therefore, the Court finds that Defendant has failed to state a claim for unjust enrichment. Accordingly, Count VII is dismissed.

### 8. Tortious Interference with Prospective Economic Benefit (Count VIII)

In Count VIII, Defendant claims that Plaintiff tortuously interfered with his reasonable expectations regarding "the timely an 'on budget' completion of the Project." Counterclaim ¶ 98. To establish a claim for tortious interference with prospective economic advantage, a plaintiff must show: (1) a reasonable expectation of economic advantage to plaintiff; (2) interference done intentionally and with "malice"; (3) a causal connection between the interference and the loss of prospective gain; and (4) actual damages. *Printing Mart-Morristown v. Sharp Elecs. Corp.,* 563 A.2d 31 (N.J. 1989).

Here, Defendant has failed to allege any facts supporting the assertion that Plaintiff maliciously interfered with Defendant's reasonable expectations under the Loan Documents.

13

**A-159**

Accordingly, the Court finds that Defendant has failed to state a claim for tortious interference with his prospective economic benefit and Count VII is dismissed.

### 9. Negligent Misrepresentation of Material Facts (Count IX)

In Count IX, Westheimer claims that in connection with the negotiation and the execution of the Loan Documents, BA made materially false and misleading statements regarding BA's obligations under the Loan, and that without the alleged false statements Westheimer would not have agreed to enter into the Loan.

To prevail on a claim for negligent misrepresentation, a plaintiff must prove: (1) defendant negligently made a false communication of material fact; (2) that plaintiff justifiably relied upon the misrepresentation; and (3) the reliance resulted in an ascertainable loss or injury. *See H. Rosenblum, Inc. v. Adler,* 461 A.2d 138 (N.J. 1983); *Gross v. Johnson & Johnson—Merck Consumer Pharm. Co.,* 696 A.2d 793 (N.J. Super. Ct. App. Div. 1997).

Here, the Court finds that Westheimer has failed to allege facts sufficient to establish that BA made any false statement regarding a fact material to the Loan. Although Westheimer claims that false and misleading statements were made to him by BA, he does not include the content or the context of any alleged statement. Therefore, because Westheimer has failed to show any allegedly false statement of material fact made to him by BA, the Court cannot determine whether any such statement was reasonably relied upon by Defendant and resulted in ascertainable damage to Westheimer. Accordingly, the Court finds that Defendant has failed to state a claim for negligent misrepresentation of a material fact and Count IX is dismissed.

Case: 15-3562    Document: 003112161259    Page: 153    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68-1   Filed 08/18/15   Page 62 of 67 PageID: 886
Case 3:12-cv-07080-JAP-LHG   Document 46   Filed 02/28/14   Page 15 of 20 PageID: 398

### 10. Specific Performance (Count X)

In Count X, Defendant asks the Court to order specific performance of the Loan Documents and require BA "to immediately disburse the remaining balance of the Loan Proceeds in accordance with the Loan Documents." Counterclaim ¶ 109. Specific performance is an equitable remedy and not an independent cause of action and "may not stand as a claim, independent from a breach of contract claim." *Coter v. Newark Housing Auth.,* 2010 WL 1049930, at *4 (D.N.J. Mar. 17, 2010). As previously noted by the Court, Westheimer has failed to state a claim for breach of the Loan Documents by BA. Therefore, because Westheimer has failed to state a claim for breach of contract, his claim for specific performance of the Loan Documents also fails. Accordingly, Count X is dismissed.

### 11. Constructive Trust, Disgorgement and an Accounting (Count XI)

In Count XI, Westheimer claims that it "would be unjust and inequitable to permit [BA] to . . . benefit in any way from the unlawful use, misappropriation and conversion of the monies [Westheimer] has paid under the Loan Documents" and requests that BA be ordered to "forfeit and return" all consideration received from Westheimer. Counterclaim ¶ 113-14.

"A constructive trust is a measure through which a court of equity can prevent unjust enrichment and compel a restoration of property to a plaintiff that in good conscience does not belong to the defendant." *Dime Sav. Bank of New York v. Rietheimer,* 2009 WL 17871, at *7 (N.J. Super. Ct. App. Div. Jan 2, 2009) (citation omitted). Under New Jersey law, the imposition of a constructive trust requires proof of (1) a wrongful act, which (2) resulted in an unjust enrichment. *Id.*

Here, Westheimer has failed to demonstrate any wrongful act taken by BA in its execution or administration of the loan, and as previously noted by the Court, Westheimer has

Case: 15-3562    Document: 003112161259    Page: 154    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68-1   Filed 08/18/15   Page 63 of 67 PageID: 887
Case 3:12-cv-07080-JAP-LHG   Document 46   Filed 02/28/14   Page 16 of 20 PageID: 399

also failed to show any the existence of any unjust enrichment. Therefore, the Court finds that
Westheimer has failed to state a claim requiring the Court to impose a constructive trust.
Accordingly, Count XI is dismissed.

12. *Respondeat Superior* **(Count XII)**

In Count XII, Westheimer asserts that BA is liable for the actions of its agents under the
doctrine of *respondeat superior.* "[T]he doctrine of *respondeat superior* does not provide an
independent cause of action under New Jersey law." *Rowan v. City of Bayonne,* 474 Fed. Appx.
875, 879 n.3 (3d Cir. 2012) (citing *Carter v. Reynolds,* 815 A.2d 460 (N.J. 2003)). Therefore,
because *respondeat superior* is a theory of liability and not an independent cause of action,
Count XII is dismissed.

13. **Declaratory Relief (Count XIII)**

In Count XIII, Westheimer requests that the Court issue a declaratory judgment finding
BA jointly and severally liable on the preceding counterclaims. Under the Declaratory Judgment
Act, a Court "may declare the rights and other legal relations of any interested party seeking such
declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Act
"contemplates that district courts will exercise discretion in determining whether to entertain
such actions." *State Auto Ins. Companies v. Summy,* 234 F.3d 131, 133 (3d Cir. 2000).  Although
the Court's jurisdiction over this matter is undisputed, the Court notes that "district courts
possess discretion in determining whether and when to entertain an action under the Declaratory
Judgment Act, even when the suit otherwise satisfies the subject matter jurisdiction
prerequisites." *Wilton v. Seven Falls Co.,* 515 U.S. 277, 289 (1995).

Based on the Court's finding that Westheimer's Counterclaim fails to state any claim
against BA upon which relief could be granted, the Court finds that the issuance of a declaratory

16

**A-162**

Case: 15-3562    Document: 003112161259    Page: 155    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68-1   Filed 08/18/15   Page 64 of 67 PageID: 888
Case 3:12-cv-07080-JAP-LHG   Document 46   Filed 02/28/14   Page 17 of 20 PageID: 400

judgment on the dismissed claims would not benefit the parties. Therefore, the Court, in its

discretion, declines to issue a declaratory judgment at this juncture. Accordingly, Count XIII is

dismissed.

**B. Motion for Summary Judgment**

Summary judgment is governed by Federal Rule of Civil Procedure 56, and is appropriate

"if the pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S.

317, 322 (1986). Under Rule 56, a fact is material if it might affect the outcome of the case. *See*

*Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986). A material fact raises a "genuine" issue "if

the evidence is such that a reasonable jury could return a verdict" for the nonmoving party.

*Healy v. N.Y. Life Ins. Co.,* 860 F.2d 1209, 1219 n.3 (3d Cir. 1988).

The moving party bears the initial burden of proving that no genuine issue of material

fact is in dispute. *Celotex,* 477 U.S. at 323. Whether or not a fact is material is determined

according to the substantive law at issue. *Anderson,* 477 U.S. at 248. Once the moving party has

carried this burden, the non-moving party must present evidence that a genuine fact issue

compels a trial. *Id.* at 324. The non-moving party must then offer admissible evidence that

establishes a genuine issue of material fact, *id.,* not just "some metaphysical doubt as to the

material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Its

opposition must rest on "facts in the record and cannot rest solely on assertions made in the

pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group, Ltd. v. Colkitt,* 455 F.3d

195, 201 (3d Cir. 2006).

In establishing whether there is a disputed material fact, "[t]he nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in [that party's] favor." *Hunt v. Cromartie,* 526 U.S. 541, 552 (1999) (quoting *Anderson,* 447 U.S. at 255). The Court shall not "weigh the evidence and determine the truth of the matter," but need only determine whether a genuine issue necessitates a trial. *Anderson,* 477 U.S. at 249. If the non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine issue of material fact exists, then the Court must grant summary judgment. *Big Apple BMW v. BMW of North America,* 974 F.2d 1358, 1363 (3d Cir. 1992).

In New Jersey, in order to foreclose on a mortgage, a lender must establish that: (1) the mortgage and the loan documents are valid; (2) the mortgage loan is in default; and (3) it has a contractual right to foreclose in light of the default. *Pardo,* 622 A.2d at 1356. "The only material issues in a foreclosure proceeding are the validity of the mortgage, the amount of the indebtedness, and the right of the mortgagee to resort to the mortgaged premises." *Id.*

Under the first element, Plaintiff has established and Defendant does not dispute that Plaintiff executed and recorded both the Note and Mortgage. Turning to the second element, Defendant does not dispute that he defaulted on the Loan Documents, but argues that "any default was caused, created and worsened by Plaintiff's utter and complete failure to conduct reasonable inspections of the property." Defendant's Response to Plaintiff's Statement of Material Facts Not in Dispute ¶ 9.

The Loan Agreement contains a list of situations constituting default by Defendant, one of which states that Defendant will be in default if he "fails to perform any obligation strictly according to the terms" of the Loan Agreement. Complaint, Exhibit A at 8. The Loan Agreement defines the Construction Period as ending on March 31, 2010, and provides that "[c]onstruction

Case: 15-3562    Document: 003112161259    Page: 157    Date Filed: 12/21/2015

Case 3:12-cv-07080-AET-LHG   Document 68-1   Filed 08/18/15   Page 66 of 67 PageID: 890
Case 3:12-cv-07080-JAP-LHG   Document 46   Filed 02/28/14   Page 19 of 20 PageID: 402

of the Improvements will be completed no later than the end of the Construction Period, unless Borrower has requested an extension of the Construction Period . . . and Lender has approved such extension request." *Id.,* Exhibit A at 2. It is undisputed that construction was not completed by March 31, 2010, and Defendant did not receive an extension of the Construction Period. Therefore, because the construction was not completed by the deadline stated in the Loan Agreement, Defendant failed to perform his obligations under the terms of the Loan and is now in default.

While Defendant asserts that Plaintiff is at fault for any default on the Loan, the Court finds that under the terms of the Loan Document, Plaintiff was under no obligation to conduct inspections of the property. Furthermore, as previously discussed at length, any inspections performed by Plaintiff were solely for Plaintiff's benefit and Plaintiff made no guarantee or representation as to the quality or progress of the construction. Accordingly, the Court finds that Defendant's claim that the default was caused by Plaintiff is without merit. Therefore, because Defendant failed to satisfy his obligations under the Loan, the Court finds that Defendant is in default. Finally, the parties do not dispute that in the event of default, Plaintiff has a contractual right under the Loan Documents to foreclose on the Residence.

Therefore, because the undisputed facts establish: (1) that the mortgage and loan documents are valid, (2) that mortgage loan is in default, and (3) that BA has a contractual right to foreclose in the event of default, the Court finds that Defendant has failed to demonstrate any genuine issue of material fact and Plaintiff is entitled to judgment as a matter of law. Accordingly, the Court grants Plaintiff's motion for summary judgment.

**III.    CONCLUSION**

For the foregoing reasons, Plaintiff's motion to dismiss Defendant's Counterclaim and

Plaintiff's motion for summary judgment on the Complaint [docket # 17] are GRANTED. An

appropriate Order accompanies this Opinion.


Date:  February 28, 2014                              /s/ Joel A. Pisano
                                                     JOEL A. PISANO
                                                     United States District Judge

# EXHIBIT F

Case 3:12-cv-07080-AET-LHG   Document 68-2   Filed 08/18/15   Page 2 of 22 PageID: 893



## Lenders Choice Network

**1303 East Grand Avenue, Suite 115**
**Arroyo Grande, CA 93420**

Phone (805) 474-1950                                    Fax (805) 473-3405

| | |
|---|---|
| **Attention:** | **Matthew Seaman** |
| | **STARS** |
| **Fax:** | (904) 998.0984 |
| **Date:** | 9/16/2008 |
| **Inspection Id:** | 206612 |
| **Loan Number:** | ▮▮▮▮▮632 |
| **Borrower Name:** | Kirby Westheimer |
| **Subject Property:** | 210 Mercer St., Princeton, NJ 08540 |

CHPAVING 117

# Lenders Choice Network

**1303 East Grand Avenue, Suite 115**
**Arroyo Grande, CA 93420**

| Phone (805) 474-1950 | | Fax (805) 473-3405 | |
|---|---|---|---|

| Inspection Id: 206612 | **Borrower:** Kirby Westheimer | |
|---|---|---|
| Loan Number: ▇▇▇5632 | **Property:** 210 Mercer St., Princeton, NJ 08540 | |

| Stage 1 | | | |
|---|---|---|---|
| Field Toilet | 2000.00 | 25.00% | 500.00 |
| Dumpsters | 8691.35 | 0.00% | 0.00 |
| Site Demo | 2514.50 | 60.00% | 1508.70 |
| Roof Removal | 3000.00 | 75.00% | 2250.00 |
| Gas Relocation | 2000.00 | 0.00% | 0.00 |
| Mep Demo | 5000.00 | 0.00% | 0.00 |
| Oil Tank Remediation | 10000.00 | 0.00% | 0.00 |
| Concrete Cutting | 8000.00 | 50.00% | 4000.00 |
| Craw Slab Demo | 3000.00 | 100.00% | 3000.00 |
| Building Demo | 13164.73 | 60.00% | 7898.84 |
| Garage Demo | 3000.00 | 100.00% | 3000.00 |
| Grubbing | 1000.00 | 0.00% | 0.00 |
| Excavation | 6013.68 | 100.00% | 6013.68 |
| Conc. Removal | 2805.00 | 100.00% | 2805.00 |
| Backfill | 10000.00 | 100.00% | 10000.00 |
| Grassing Sod | 10000.00 | 0.00% | 0.00 |
| Belgian Block | 20000.00 | 0.00% | 0.00 |
| Paving Labor | 20000.00 | 0.00% | 0.00 |
| Footings and Slabs | 23250.00 | 100.00% | 23250.00 |
| Concrete Walls | 26400.00 | 100.00% | 26400.00 |
| Concrete Walls, Ev | 12750.00 | 100.00% | 12750.00 |
| Concrete Walls Port Step | 50000.00 | 100.00% | 50000.00 |
| Terr and Port Footings | 20000.00 | 100.00% | 20000.00 |
| Terrace Slabs | 10000.00 | 100.00% | 10000.00 |
| Slab Stone | 1500.00 | 0.00% | 0.00 |
| Terr and Port Steps | 12000.00 | 0.00% | 0.00 |
| Crawl Slabs | 4000.00 | 100.00% | 4000.00 |
| Brick Fireplace | 16000.00 | 0.00% | 0.00 |
| Stone Labor | 50000.00 | 0.00% | 0.00 |
| Stone Columns | 17000.00 | 0.00% | 0.00 |
| Stone Veneer New | 15000.00 | 0.00% | 0.00 |
| Sone Veneer Existing | 0.00 | 0.00% | 0.00 |
| Stone Pavers | 15000.00 | 0.00% | 0.00 |
| Fireplace Facings | 21000.00 | 0.00% | 0.00 |
| Slate Roof Material | 26000.00 | 0.00% | 0.00 |
| Stucco New | 32000.00 | 0.00% | 0.00 |
| Stucco Exist | 20000.00 | 20.00% | 4000.00 |
| Steel Deck | 15000.00 | 0.00% | 0.00 |
| Misc Steel | 2000.00 | 0.00% | 0.00 |
| Steel Beams | 5000.00 | 0.00% | 0.00 |
| Bronze Rail | 20000.00 | 0.00% | 0.00 |
| Rail Labor | 5000.00 | 0.00% | 0.00 |
| Framing Material | 20000.00 | 75.00% | 15000.00 |
| Framing Labor | 40000.00 | 75.00% | 30000.00 |
| Portico | 10000.00 | 0.00% | 0.00 |
| Piazza | 10000.00 | 0.00% | 0.00 |
| Ext. Dormers | 5505.50 | 0.00% | 0.00 |

CHPAVING 118

| | | | |
|---|---|---|---|
| Ext. Frame Materials | 5554.41 | 0.00% | 0.00 |
| Int. Framing 123 | 5000.00 | 0.00% | 0.00 |
| Interior Frame B | 26799.26 | 0.00% | 0.00 |
| Interior Frame L Gm | 10000.00 | 0.00% | 0.00 |
| Interior Frame Sub | 10000.00 | 0.00% | 0.00 |
| Basement Framing Material | 3000.00 | 100.00% | 3000.00 |
| Basement Framing Labor | 7000.00 | 100.00% | 7000.00 |
| Ext. Trim Labor | 10000.00 | 0.00% | 0.00 |
| Ext. Trim Material | 10000.00 | 0.00% | 0.00 |
| Stairs, Prefab | 5000.00 | 0.00% | 0.00 |
| Stair Labor | 5000.00 | 0.00% | 0.00 |
| Int. Trim Material | 20000.00 | 0.00% | 0.00 |
| Int. Panelling | 60000.00 | 0.00% | 0.00 |
| Int. Panelling, add | 50000.00 | 0.00% | 0.00 |
| Cabinets, Kitchen | 30000.00 | 0.00% | 0.00 |
| Cabinets, but, pnt | 10589.57 | 0.00% | 0.00 |
| Cabinets, Bath | 10000.00 | 0.00% | 0.00 |
| Cabinets, Librarys | 20000.00 | 0.00% | 0.00 |
| Cabinets, Living, ent | 10000.00 | 0.00% | 0.00 |
| Stone Counters | 20000.00 | 0.00% | 0.00 |
| Roofing, Slaten new | 40000.00 | 0.00% | 0.00 |
| Reroof Existing | 20000.00 | 0.00% | 0.00 |
| Roofing, Copper | 17000.00 | 0.00% | 0.00 |
| Copper, scope adds | 6000.00 | 0.00% | 0.00 |
| Gutters, Downspouts | 10000.00 | 0.00% | 0.00 |
| Insulation | 8000.00 | 0.00% | 0.00 |
| Waterproofing | 5000.00 | 0.00% | 0.00 |
| Drainage Piping | 2000.00 | 0.00% | 0.00 |
| Windows | 182683.00 | 70.00% | 127878.10 |
| Garage Doors | 9000.00 | 0.00% | 0.00 |
| Interior Doors and Hardware | 20000.00 | 0.00% | 0.00 |
| Painting | 50000.00 | 0.00% | 0.00 |
| Wood Flooring | 15000.00 | 0.00% | 0.00 |
| Tile Material and Labor | 30000.00 | 0.00% | 0.00 |
| Gypsum Board | 20000.00 | 0.00% | 0.00 |
| Plaster Coat | 10000.00 | 0.00% | 0.00 |
| Appliances | 50000.00 | 0.00% | 0.00 |
| Carpet | 29848.03 | 0.00% | 0.00 |
| Elevator | 45000.00 | 20.00% | 9000.00 |
| Electrical | 67000.00 | 0.00% | 0.00 |
| Home Automation | 65000.00 | 0.00% | 0.00 |
| Plumbing | 170000.00 | 0.00% | 0.00 |
| HVAC | 110000.00 | 0.00% | 0.00 |
| Cottage | 22000.00 | 0.00% | 0.00 |
| | 1966069.03 | 19.49% | 383254.32 |
| **TOTAL** | 1966069.03 | 19.49% | 383254.32 |

Notes: No sign of for sale activity. Building demolition is on going.

Andrew Rook               9/15/2008 5:00:00 PM
Inspector                 Date/Time

CHPAVING 119

Case 3:12-cv-07080-AET-LHG   Document 68-2   Filed 08/18/15   Page 5 of 22 PageID: 896



Case 3:12-cv-07080-AET-LHG   Document 68-2   Filed 08/18/15   Page 6 of 22 PageID: 897



206612 (13)

206612 (14)

CHPAVING 121



CHPAVING 122

Case 3:12-cv-07080-AET-LHG   Document 68-2   Filed 08/18/15   Page 8 of 22 PageID: 899



206612 (17)

206612 (18)

CHPAVING 123

Case 3:12-cv-07080-AET-LHG   Document 68-2   Filed 08/18/15   Page 9 of 22 PageID: 900



Case 3:12-cv-07080-AET-LHG   Document 68-2   Filed 08/18/15   Page 10 of 22 PageID: 901



206612 (21)

206612 (22)

CHPAVING 125



206612 (23)

206612 (24)

CHPAVING 126

Case 3:12-cv-07080-AET-LHG   Document 68-2   Filed 08/18/15   Page 12 of 22 PageID: 903



206612 (25)

206612 (26)

CHPAVING 127

Case 3:12-cv-07080-AET-LHG   Document 68-2   Filed 08/18/15   Page 13 of 22 PageID: 904



206612 (27)

206612 (28)

CHPAVING 128



Case 3:12-cv-07080-AET-LHG    Document 68-2    Filed 08/18/15    Page 15 of 22 PageID: 906



206612 (31)

206612 (32)

CHPAVING 130

Case 3:12-cv-07080-AET-LHG   Document 68-2   Filed 08/18/15   Page 16 of 22 PageID: 907



206612 (33)

206612 (34)

CHPAVING 131

Case 3:12-cv-07080-AET-LHG   Document 68-2   Filed 08/18/15   Page 17 of 22 PageID: 908



CHPAVING 132



CHPAVING 133



Case 3:12-cv-07080-AET-LHG   Document 68-2   Filed 08/18/15   Page 20 of 22 PageID: 911



Case 3:12-cv-07080-AET-LHG   Document 68-2   Filed 08/18/15   Page 21 of 22 PageID: 912



206612 (8)

206612 (9)

CHPAVING 136

Case 3:12-cv-07080-AET-LHG   Document 68-2   Filed 08/18/15   Page 22 of 22 PageID: 913



206612 (10)

CHPAVING 137

# EXHIBIT G

# TRINITY INSPECTION SERVICES, LLC - DRAW INSPECTION RESULTS
## 1-888-573-8029

| PROPERTY INFORMATION | BUILDER INFORMATION |
|---|---|
| Lender : Speedy Title and Appraisal Review Services (STARS) | Builder : |
| Loan / Draw # : 632 / 1 | Builder Contact : George Madar |
| Borrower : WESTHEIMER, KIRBY | Builder Phone : 609-386-3599  Cell : |
| Address : 210 Mercer St | County : Mercer |
| Princeton, NJ 08540 | Date Ordered : 10/1/2010 3:37:00 PM |
| Phone : W: | H: | C: | | Date to Inspect : 10/1/2010 3:37:58 PM |
| Ordered By : Virginia Fortune | Date Inspected : 10/10/2010 1:08:00 PM Status: Report Completed |
| Inspected By : 11680 IE | Date Completed : 10/15/2010 1:10:12 PM |
| | Invoice # : 19-385880 |
| | LockBox Number : No Code |

| # | Item Description | Amount | Prior Inspection | Funded | This Inspection | Eligible to Fund |
|---|---|---|---|---|---|---|
| 1 | Permits + Surveys | $8,000.00 | 0% | $0.00 | 50% | $4,000.00 |
| | Inspector's remarks: permits, inspection tag seen | | | | | |
| 2 | Permit Revision | $4,616.00 | 0% | $0.00 | 100% | $4,616.00 |
| | Inspector's remarks: Inspection tag seen | | | | | |
| 3 | GM Taxes | $4,000.00 | 0% | $0.00 | 0% | $0.00 |
| | Inspector's remarks: lender discretion | | | | | |
| 4 | OFM Taxes | $9,138.39 | 0% | $0.00 | 0% | $0.00 |
| | Inspector's remarks: lender discretion | | | | | |
| 5 | Field Toilet | $2,000.00 | 0% | $0.00 | 100% | $2,000.00 |
| | Inspector's remarks: ongoing progress (Percentage per prior inspection report provided by lender – could not verify without scope document) | | | | | |
| 6 | Dumpters | $8,691.35 | 0% | $0.00 | 90% | $7,822.22 |
| | Inspector's remarks: ongoing progress (Percentage per prior inspection report provided by lender – could not verify without scope document) | | | | | |
| 7 | Site Demo | $2,514.50 | 0% | $0.00 | 100% | $2,514.50 |
| | Inspector's remarks: appears all demo has been done that will be done | | | | | |
| 8 | Equipment | $2,000.00 | 0% | $0.00 | 0% | $0.00 |
| | Inspector's remarks: lender discretion | | | | | |
| 9 | Supervision | $36,000.00 | 0% | $0.00 | 0% | $0.00 |
| | Inspector's remarks: lender discretion | | | | | |
| 10 | Roof Removal | $3,000.00 | 0% | $0.00 | 100% | $3,000.00 |
| 11 | Gas relocation | $2,000.00 | 0% | $0.00 | 100% | $2,000.00 |
| 12 | Mep Demo | $5,000.00 | 0% | $0.00 | 100% | $5,000.00 |
| | Inspector's remarks: appears all demo has been done that will be done | | | | | |
| 13 | Oil Tank Remediation | $10,000.00 | 0% | $0.00 | 100% | $10,000.00 |
| | Inspector's remarks: lender discretion (Percentage per prior inspection report provided by lender – could not verify without scope document) | | | | | |
| 14 | Concrete cutting | $8,000.00 | 0% | $0.00 | 100% | $8,000.00 |
| 15 | Craw slab demo | $3,000.00 | 0% | $0.00 | 100% | $3,000.00 |
| 16 | Building Demo | $13,164.73 | 0% | $0.00 | 100% | $13,164.73 |
| 17 | Garage Demo | $3,000.00 | 0% | $0.00 | 100% | $3,000.00 |
| 18 | Grubbing | $1,000.00 | 0% | $0.00 | 100% | $1,000.00 |
| 19 | Excavation | $6,013.68 | 0% | $0.00 | 100% | $6,013.68 |
| 20 | Conc Removal | $2,805.00 | 0% | $0.00 | 100% | $2,805.00 |
| 21 | Backfill | $10,000.00 | 0% | $0.00 | 100% | $10,000.00 |
| 22 | Grassing sod | $10,000.00 | 0% | $0.00 | 25% | $2,500.00 |

CHPAVING 1019

| # | | | | | | |
|---|---|---|---|---|---|---|
| | Inspector's remarks: Percentage per prior inspection report provided by lender – could not verify without scope document | | | | | |
| 23 | Belgian Block | $20,000.00 | 0% | $0.00 | 50% | $10,000.00 |
| .... | Inspector's remarks: No Belgian Block was seen (Percentage per prior inspection report provided by lender – could not verify without scope document.) | | | | | |
| 24 | Paving labor | $20,000.00 | 0% | $0.00 | 0% | $0.00 |
| .... | Inspector's remarks: No Paving | | | | | |
| 25 | Footings and slabs | $23,250.00 | 0% | $0.00 | 100% | $23,250.00 |
| 26 | Concrete Walls | $26,400.00 | 0% | $0.00 | 100% | $26,400.00 |
| 27 | Concrete Wall, EV | $12,750.00 | 0% | $0.00 | 100% | $12,750.00 |
| 28 | Conc Walls port Step | $50,000.00 | 0% | $0.00 | 100% | $50,000.00 |
| 29 | Terr and port footings | $20,000.00 | 0% | $0.00 | 100% | $20,000.00 |
| 30 | Terrace Slabs | $10,000.00 | 0% | $0.00 | 100% | $10,000.00 |
| .... | Inspector's remarks: The work has been completed in the front and not in the back. (Percentage per prior inspection report provided by lender – could not verify without scope document.) | | | | | |
| 31 | Slab stone | $1,500.00 | 0% | $0.00 | 100% | $1,500.00 |
| .... | Inspector's remarks: No stone has been installed on the slabs (Percentage per prior inspection report provided by lender – could not verify without scope document.) | | | | | |
| 32 | Terr and port steps | $12,000.00 | 0% | $0.00 | 100% | $12,000.00 |
| .... | Inspector's remarks: The work has been completed in the front and not in the back (Percentage per prior inspection report provided by lender – could not verify without scope document.) | | | | | |
| 33 | Craw slabs | $4,000.00 | 0% | $0.00 | 100% | $4,000.00 |
| 34 | Brick fireplace | $16,000.00 | 0% | $0.00 | 100% | $16,000.00 |
| 35 | Stone labor | $50,000.00 | 0% | $0.00 | 100% | $50,000.00 |
| 36 | Stone Columns | $17,000.00 | 0% | $0.00 | 100% | $17,000.00 |
| 37 | Stone Veneer new | $15,000.00 | 0% | $0.00 | 100% | $15,000.00 |
| 38 | Stone pavers | $15,000.00 | 0% | $0.00 | 100% | $15,000.00 |
| .... | Inspector's remarks: No pavers have been installed on the slabs (Percentage per prior inspection report provided by lender – could not verify without scope document.) | | | | | |
| 39 | Fireplace facings | $21,000.00 | 0% | $0.00 | 100% | $21,000.00 |
| 40 | Slate roof material | $26,000.00 | 0% | $0.00 | 100% | $26,000.00 |
| 41 | Stucco New | $32,000.00 | 0% | $0.00 | 100% | $32,000.00 |
| 42 | Stucco Exist | $20,000.00 | 0% | $0.00 | 100% | $20,000.00 |
| 43 | Steel Deck | $15,000.00 | 0% | $0.00 | 100% | $15,000.00 |
| 44 | Misc Steel | $2,000.00 | 0% | $0.00 | 100% | $2,000.00 |
| 45 | Steel beams | $5,000.00 | 0% | $0.00 | 100% | $5,000.00 |
| 46 | Bronze rail | $20,000.00 | 0% | $0.00 | 75% | $15,000.00 |
| .... | Inspector's remarks: No bronze railings(Percentage per prior inspection report provided by lender – could not verify without scope document.) | | | | | |
| 47 | rail labor | $5,000.00 | 0% | $0.00 | 0% | $0.00 |
| .... | Inspector's remarks: No bronze railings | | | | | |
| 48 | framing material | $20,000.00 | 0% | $0.00 | 100% | $20,000.00 |
| .... | Inspector's remarks: The remaining framing still needs to be completed on the third floor (Percentage per prior inspection report provided by lender – could not verify without scope document.) | | | | | |

CHPAVING 1020

A-191

| 49 | framing labor | $40,000.00 | 0% | $0.00 | 100% | $40,000.00 |
| **** | Inspector's remarks: The remaining framing still needs to be completed on the third floor. (Percentage per prior inspection report provided by lender – could not verify without scope document.) | | | | | |
| 50 | Portico | $10,000.00 | 0% | $0.00 | 40% | $4,000.00 |
| **** | Inspector's remarks: assumed to be composite decking or railing, not seen in photos. (Percentage per prior inspection report provided by lender – could not verify without scope document.) | | | | | |
| 51 | Piazza | $10,000.00 | 0% | $0.00 | 40% | $4,000.00 |
| **** | Inspector's remarks: Percentage per prior inspection report provided by lender – could not verify without scope document. | | | | | |
| 52 | Ext Dormers | $5,505.50 | 0% | $0.00 | 100% | $5,505.50 |
| 53 | Ext frame materials | $5,554.41 | 0% | $0.00 | 100% | $5,554.41 |
| 54 | Int Framing 123 | $5,000.00 | 0% | $0.00 | 100% | $5,000.00 |
| **** | Inspector's remarks: The remaining framing still needs to be completed on the third floor. (Percentage per prior inspection report provided by lender – could not verify without scope document.) | | | | | |
| 55 | Interior frame B | $26,799.26 | 0% | $0.00 | 100% | $26,799.26 |
| **** | Inspector's remarks: The remaining framing still needs to be completed on the third floor. (Percentage per prior inspection report provided by lender – could not verify without scope document.) | | | | | |
| 56 | Interior frame L Gm | $10,000.00 | 0% | $0.00 | 100% | $10,000.00 |
| **** | Inspector's remarks: The remaining framing still needs to be completed on the third floor. (Percentage per prior inspection report provided by lender – could not verify without scope document.) | | | | | |
| 57 | Interior frame sub | $10,000.00 | 0% | $0.00 | 100% | $10,000.00 |
| **** | Inspector's remarks: The remaining framing still needs to be completed on the third floor. (Percentage per prior inspection report provided by lender – could not verify without scope document.) | | | | | |
| 58 | basement framing material | $3,000.00 | 0% | $0.00 | 100% | $3,000.00 |
| **** | Inspector's remarks: Minor touches left to be completed (Percentage per prior inspection report provided by lender – could not verify without scope document.) | | | | | |
| 59 | Basement framing lab | $7,000.00 | 0% | $0.00 | 100% | $7,000.00 |
| **** | Inspector's remarks: Minor touches left to be completed (Percentage per prior inspection report provided by lender – could not verify without scope document.) | | | | | |
| 60 | Ext trim, L | $10,000.00 | 0% | $0.00 | 100% | $10,000.00 |
| 61 | Ext trim, m | $10,000.00 | 0% | $0.00 | 100% | $10,000.00 |
| 62 | Stairs, prefab | $5,000.00 | 0% | $0.00 | 90% | $4,500.00 |
| **** | Inspector's remarks: Railings are missing. (Percentage per prior inspection report provided by lender – could not verify without scope document.) | | | | | |
| 63 | Stair labor | $5,000.00 | 0% | $0.00 | 90% | $4,500.00 |
| **** | Inspector's remarks: Railings are missing. (Percentage per prior inspection report provided by lender – could not verify without scope document.) | | | | | |
| 64 | Int trim material | $20,000.00 | 0% | $0.00 | 70% | $14,000.00 |
| **** | Inspector's remarks: The second, third floor, and the basement still need the trim. | | | | | |
| 65 | Construction management | $30,000.00 | 0% | $0.00 | 0% | $0.00 |
| **** | Inspector's remarks: lender discretion | | | | | |
| 66 | Int panelling | $60,000.00 | 0% | $0.00 | 75% | $45,000.00 |
| **** | Inspector's remarks: Inspector is not sure how many rooms are supposed to get panelling. There are two or three rooms so far that have panelling that are completed. | | | | | |
| 67 | Int panelling, add | $50,000.00 | 0% | $0.00 | 75% | $37,500.00 |
| **** | Inspector's remarks: Inspector is not sure how many rooms are supposed to get panelling. There are two or three rooms so far that have panelling that are completed. (Percentage per prior inspection report provided by lender – could not verify without scope document.) | | | | | |
| 68 | Cabinets, kitchen | $30,000.00 | 0% | $0.00 | 0% | $0.00 |

CHPAVING 1021

A-192

| # | Description | Amount | % | $ | % | $ |
|---|---|---|---|---|---|---|
| 69 | Cabinets, but, pnt | $10,589.57 | 0% | $0.00 | 0% | $0.00 |
| | Inspector's remarks: No cabinets | | | | | |
| 70 | cabinets, bath | $10,000.00 | 0% | $0.00 | 0% | $0.00 |
| | Inspector's remarks: No cabinets | | | | | |
| 71 | cabinets, librarys | $20,000.00 | 0% | $0.00 | 0% | $0.00 |
| | Inspector's remarks: No cabinets | | | | | |
| 72 | Cabinets, living, ent | $10,000.00 | 0% | $0.00 | 0% | $0.00 |
| | Inspector's remarks: No cabinets | | | | | |
| 73 | Stone counters | $20,000.00 | 0% | $0.00 | 0% | $0.00 |
| | Inspector's remarks: No counters | | | | | |
| 74 | Roofing, slate new | $40,000.00 | 0% | $0.00 | 100% | $40,000.00 |
| 75 | Reroof existing | $20,000.00 | 0% | $0.00 | 100% | $20,000.00 |
| 76 | Roofing, copper | $17,000.00 | 0% | $0.00 | 100% | $17,000.00 |
| 77 | Copper Scope Adds | $6,000.00 | 0% | $0.00 | 100% | $6,000.00 |
| 78 | Gutters, Downspouts | $10,000.00 | 0% | $0.00 | 90% | $9,000.00 |
| | Inspector's remarks: The downspouts in the piazza still need to be completed. (Percentage per prior inspection report provided by lender – could not verify without scope document.) | | | | | |
| 79 | Insulation | $8,000.00 | 0% | $0.00 | 100% | $8,000.00 |
| | Inspector's remarks: The basement is missing insulation. (Percentage per prior inspection report provided by lender – could not verify without scope document.) | | | | | |
| 80 | waterproofing | $5,000.00 | 0% | $0.00 | 100% | $5,000.00 |
| 81 | Drainage piping | $2,000.00 | 0% | $0.00 | 100% | $2,000.00 |
| 82 | Windows | $182,683.00 | 0% | $0.00 | 100% | $182,683.00 |
| 83 | Garage doors | $9,000.00 | 0% | $0.00 | 100% | $9,000.00 |
| 84 | Interior doors and hardware | $20,000.00 | 0% | $0.00 | 70% | $14,000.00 |
| | Inspector's remarks: The basement and the third floor are still missing doors and hardware. | | | | | |
| 85 | Painting | $50,000.00 | 0% | $0.00 | 80% | $40,000.00 |
| | Inspector's remarks: The majority of the painting has been completed on the first floor. (Percentage per prior inspection report provided by lender – could not verify without scope document.) | | | | | |
| 86 | Wood flooring | $15,000.00 | 0% | $0.00 | 25% | $3,750.00 |
| | Inspector's remarks: The majority of the work has been completed on the first floor. | | | | | |
| 87 | Tile material and labor | $30,000.00 | 0% | $0.00 | 70% | $21,000.00 |
| | Inspector's remarks: All the bathrooms, walls, and floors have been completed on the first and second floors. (Percentage per prior inspection report provided by lender – could not verify without scope document.) | | | | | |
| 88 | Gypsum board | $20,000.00 | 0% | $0.00 | 70% | $14,000.00 |
| | Inspector's remarks: xxxxxxxxxxxxxxxx The third floor and the basement still need the gypsum board added. | | | | | |
| 89 | Plaster coat | $10,000.00 | 0% | $0.00 | 50% | $5,000.00 |
| | Inspector's remarks: partial work seen in photos | | | | | |
| 90 | Appliances | $50,000.00 | 0% | $0.00 | 20% | $10,000.00 |
| | Inspector's remarks: No kitchen appliances. (Percentage per prior inspection report provided by lender – could not verify without scope document.) | | | | | |
| 91 | Carpet | $29,848.03 | 0% | $0.00 | 50% | $14,924.02 |

CHPAVING  1022

A-193

| | | | | | | |
|---|---|---|---|---|---|---|
| | Inspector's remarks: The majority of the work has been completed on the first and second floor. | | | | | |
| 92 | Elevator | $45,000.00 | 0% | $0.00 | 100% | $45,000.00 |
| 93 | Electrical | $67,000.00 | 0% | $0.00 | 100% | $67,000.00 |
| | Inspector's remarks: All of the rough electric is installed. Some of the finish electric is there (ie) switches and some boxes. (Percentage per prior inspection report provided by lender – could not verify without scope document.) | | | | | |
| 94 | Home automation | $65,000.00 | 0% | $0.00 | 70% | $45,500.00 |
| | Inspector's remarks: No home automation yet. (Percentage per prior inspection report provided by lender – could not verify without scope document.) | | | | | |
| 95 | Plumbing | $170,000.00 | 0% | $0.00 | 80% | $136,000.00 |
| | Inspector's remarks: All of the rough plumbing is installed. There are some tubs that have not been installed yet. (Percentage per prior inspection report provided by lender – could not verify without scope document.) | | | | | |
| 96 | HVAC | $110,000.00 | 0% | $0.00 | 95% | $104,500.00 |
| | Inspector's remarks: (Percentage per prior inspection report provided by lender – could not verify without scope document.) | | | | | |
| 97 | GM labor | $507,300.00 | 0% | $0.00 | 0% | $0.00 |
| | Inspector's remarks: lender discretion | | | | | |
| 98 | Cottage | $22,000.00 | 0% | $0.00 | 0% | $0.00 |
| | Inspector's remarks: Percentage per prior inspection report provided by lender – could not verify without scope document. | | | | | |
| 99 | | $0.00 | 0% | $0.00 | 0% | $0.00 |
| | TOTAL DIRECT COSTS & PERCENTAGES | $2,587,123.42 | 0% | $0.00 | 62% | $1,595,062.31 |

© Copyright 2003-2010 Trinity Inspection Services, LLC
Trade/Service marks are the property of Trinity Real Estate Solutions, LLC

Elapsed Time: 1 seconds.

**Show Comments**

Virginia, This is the first inspection we have completed at this property and it is a massive remodel project. Could you please send the last inspection report or a scope of work for this project? We need some supporting documents in order to review this project. Thank you! - by Megan Baker 10/11/2010 2:59:49 PM

Must Fund Date = 10/6/2010 - by Penny Austin 10/1/2010 3:45:44 PM

© Copyright 2003-2010 Trinity Inspection Services, LLC
Trade/Service marks are the property of Trinity Real Estate Solutions, LLC

Elapsed Time: 1 seconds.

CHPAVING 1023



PAVING LABOR



STONE VENEER NEW



STUCCO EXIST



STUCCO NEW



TERR AND PORT STEPS



CONCRETE WALL, EV

CHPAVING 1024



CONCRETE WALL, EV

STONE VENEER NEW

STUCCO NEW

STONE VENEER NEW

GUTTERS, DOWNSPOUTS

FRONT OF HOUSE

CHPAVING 1025



INSULATION

GARAGE DOORS

GARAGE

INTERIOR FRAME B

INTERIOR DOORS AND HARDWARE

INTERIOR FRAME B

CHPAVING 1026

Case 3:12-cv-07080-AET-LHG   Document 68-3   Filed 08/18/15   Page 10 of 27 PageID: 923



INTERIOR FRAME B

INTERIOR DOORS AND HARDWARE

ELEVATOR

STAIRS, PREFAB, STAIR LABOR

STAIRS, PREFAB, STAIR LABOR

INT PANELLING, INT PANELLING, ADD

CHPAVING 1027



ELECTRICAL

WOOD FLOORING

WINDOWS, PAINTING, WOOD FLOORING

INTERIOR DOORS AND HARDWARE

INTERIOR FRAME L GM, INTERIOR FRAME SUB

INT FRAMING 123, INTERIOR FRAME L GM,

CHPAVING 1028



BASEMENT FRAMING MATERIAL, BASEMENT



BASEMENT FRAMING MATERIAL, BASEMENT



BASEMENT FRAMING MATERIAL, BASEMENT



INT FRAMING 123, INTERIOR FRAME L GM,



INT PANELLING, INT PANELLING, ADD



PAINTING, ELECTRICAL

CHPAVING 1029

Case 3:12-cv-07080-AET-LHG    Document 68-3    Filed 08/18/15    Page 13 of 27 PageID: 926



FIREPLACE FACINGS



WINDOWS, PAINTING, ELECTRICAL



PAINTING, ELECTRICAL



DOORS, WOOD FLOORS, PAINTING



FIREPLACE FACINGS



INTERIOR DOORS AND HARDWARE

CHPAVING 1030

Case 3:12-cv-07080-AET-LHG   Document 68-3   Filed 08/18/15   Page 14 of 27 PageID: 927



BASEMENT FRAMING MATERIAL, BASEMENT



BASEMENT FRAMING MATERIAL, BASEMENT



BRICK FIREPLACE, FIREPLACE FACINGS



INT FRAMING 123, INTERIOR FRAME L GM,



INT FRAMING 123, INTERIOR FRAME L GM,



PAINTING

CHPAVING 1031



TILE MATERIAL AND LABOR

ELECTRICAL

STONE COLUMNS

INT PANELLING, INT PANELLING, ADD

TILE MATERIAL AND LABOR

WOOD FLOORING

CHPAVING 1032



WOOD FLOORING

STAIRS, PREFAB, STAIR LABOR

STAIRS, PREFAB, STAIR LABOR, PAINTING

ELEVATOR

TILE MATERIAL AND LABOR, APPLIANCES

TILE MATERIAL AND LABOR, APPLIANCES

CHPAVING 1033



TILE MATERIAL AND LABOR, APPLIANCES

TILE MATERIAL AND LABOR, APPLIANCES

INT FRAMING 123, INTERIOR FRAME L GM,

INT FRAMING 123, INTERIOR FRAME L GM,

ELECTRICAL

HVAC

CHPAVING 1034

Case 3:12-cv-07080-AET-LHG   Document 68-3   Filed 08/18/15   Page 18 of 27 PageID: 931



APPLIANCES

PLUMBING

APPLIANCES

TILE MATERIAL AND LABOR

TILE MATERIAL AND LABOR, APPLIANCES

PAINTING, TILE MATERIAL AND LABOR

CHPAVING 1035

Case 3:12-cv-07080-AET-LHG   Document 68-3   Filed 08/18/15   Page 19 of 27 PageID: 932



WINDOWS, PAINTING, WOOD FLOORING

INT FRAMING 123, INTERIOR FRAME L GM,

STAIRS

FRAMING, WINDOWS, INSULATION

PAINTING

APPLIANCES, TILE

CHPAVING 1036



HVAC

ELECTRICAL

INT FRAMING 123, INTERIOR FRAME L GM,

APPLIANCES, PAINTING, WINDOWS

GYPSUM BOARD, PLASTER COAT

GYPSUM BOARD, PLASTER COAT

CHPAVING 1037

Case 3:12-cv-07080-AET-LHG   Document 68-3   Filed 08/18/15   Page 21 of 27 PageID: 934


GYPSUM BOARD, PLASTER COAT


GYPSUM BOARD, PLASTER COAT


GYPSUM BOARD, PLASTER COAT


INT FRAMING 123


PAINTING, GYPSUM BOARD


INT FRAMING 123, PAINTING, GYPSUM BOARD

CHPAVING 1038



INTERIOR DOORS AND HARDWARE



INT FRAMING 123, PAINTING, GYPSUM BOARD,



ROOFING, SLATE NEW, REROOF EXISTING



CONCRETE WALLS, TERRACE SLABS, STONE



ADDRESS VERIFICATION



ADDRESS VERIFICATION

CHPAVING 1039



INTERIOR DOORS AND HARDWARE



INTERIOR DOORS AND HARDWARE



STUCCO NEW, STUCCO EXIST



ROOFING, SLATE NEW, REROOF EXISTING,



ROOFING, SLATE NEW, REROOF EXISTING,



ROOFING, SLATE NEW, REROOF EXISTING,

CHPAVING 1040



TERR AND PORT STEPS, PIAZZA



REAR OF HOUSE



REAR OF HOUSE



TERR AND PORT STEPS



TERRACE SLABS



TERRACE SLABS

CHPAVING 1041


MARBLE - MATERIAL ON-SITE NOT INSTALLED


MARBLE - MATERIAL ON-SITE NOT INSTALLED


CONCRETE SLAB


STONE VENEER NEW, WINDOWS


STONE LABOR, STONE VENEER NEW, WINDOWS


STUCCO NEW, STUCCO EXIST, WINDOWS

CHPAVING 1042



TERRACE SLABS

TERRACE SLABS

STONE COLUMNS, PIAZZA

STUCCO NEW, STUCCO EXIST

STUCCO NEW, STUCCO EXIST, WINDOWS

STUCCO NEW, STUCCO EXIST, WINDOWS

CHPAVING 1043



GUTTERS, DOWNSPOUTS



GUTTERS, DOWNSPOUTS

CHPAVING 1044

# EXHIBIT H

Mortgage Services
Construction Lending
Report Title : Advance Approval / Sign-Off

Date: 9/24/2008
Time: 11:59:43 AM
Page: 1

## Advance Approval / Sign-Off

Borrower Number: 3685
Name: Kirby Westheimer;
Property Address: 210 MERCER ST PRINCETON, NJ 08540
Officer: 241

Number: ▓▓632    Unit: 001

| Line-Item | Description | Original Cost | Available | As If Disbursed | As If Retained | Req. Amt | Avail/After Disbursement | %D | As If %D | %C |
|---|---|---|---|---|---|---|---|---|---|---|
| 002 0201 | Permits + surveys | $8,000.00 | $2,551.00 | $2,551.00 | $0.00 | $2,551.00 | $0.00 | 100.00% | 100.00% | 100.00% |
| 002 0203 | GM taxes | $4,000.00 | $2,516.02 | $2,516.02 | $0.00 | $2,516.02 | $0.00 | 100.00% | 100.00% | 100.00% |
| 002 0221 | Backfill | $10,000.00 | $4,838.83 | $4,838.83 | $0.00 | $4,838.83 | $0.00 | 100.00% | 100.00% | 100.00% |
| 002 0225 | Footings and Slabs | $23,250.00 | $250.00 | $250.00 | $0.00 | $250.00 | $0.00 | 100.00% | 100.00% | 100.00% |
| 002 0228 | Conc walls Port Step | $50,000.00 | $20,600.00 | $20,600.00 | $0.00 | $20,600.00 | $0.00 | 100.00% | 100.00% | 100.00% |
| 002 0229 | Terr and Port footings | $20,000.00 | $10,500.00 | $10,500.00 | $0.00 | $10,500.00 | $0.00 | 100.00% | 100.00% | 100.00% |
| 002 0230 | Terrace Slabs | $10,000.00 | $5,000.00 | $5,000.00 | $0.00 | $5,000.00 | $0.00 | 100.00% | 100.00% | 100.00% |
| 002 0243 | Stucco exist | $20,000.00 | $20,000.00 | $4,000.00 | $0.00 | $4,000.00 | $16,000.00 | 20.00% | 20.00% | 20.00% |
| 002 0249 | Framing Material | $20,000.00 | $19,321.42 | $14,321.42 | $0.00 | $14,321.42 | $5,000.00 | 75.00% | 75.00% | 75.00% |
| 002 0250 | Framing labor | $40,000.00 | $40,000.00 | $30,448.62 | $0.00 | $30,448.62 | $9,551.38 | 76.12% | 76.12% | 75.00% |
| 002 0259 | Basement framing material | $3,000.00 | $483.53 | $483.53 | $0.00 | $483.53 | $0.00 | 100.00% | 100.00% | 100.00% |
| 002 0260 | basement framing lab | $7,000.00 | $2,244.00 | $2,244.00 | $0.00 | $2,244.00 | $0.00 | 100.00% | 100.00% | 100.00% |
| | | $128,304.80 | | $97,753.42 | $0.00 | $97,753.42 | | | | |

Amount Drawn To Date        $0.00

Amount Remaining To Draw    $1,500,000.00

CHPAVING 92

Mortgage Services
Construction Lending
Report Title : Advance Approval / Sign-Off

Date: 9/24/2008
Time: 11:59:43 AM
Page: 2

Maximum Advance Amount                    $97,753.42

*Over-Line, Officer Must Initial
Explanation of Over-Line Draw :

Approved Amount to Advance:

Advance Approval Form Totals:            $97,753.42

CHPAVING 93

Mortgage Services
Construction Lending
Report Title : Advance Approval / Sign-Off

Date: 9/24/2008
Time: 11:59:43 AM
Page: 3

Collateral Exception Status For :        Note Number :        ▮6632        Unit : 001

Borrower Documentation Exceptions
    *** No Borrower Document Exceptions ***

Master Note Documentation Exceptions
    *** No Master Note Document Exceptions ***

Unit Documentation Exceptions        ▮6632        001

.001  05  00  Flood Insurance                                    /Past Due    NOT REQUIRED
              *Document waived on: 09/24/2008 by: MTT*
001   07  00  Title Update                                       /Past Due

CHPAVING 94

A-219

Construction Lending
Report Title: Advance Approval Form (Detail)

Time: 12:00:19 PM
Page: 1

---

| Note Number: | 6632 | Unit #: 001 | | Remaining Commitment: $ 1,500,000.00 |
|---|---|---|---|---|
| Borrower Number: | 3685 | | | Remaining Deposit: $ 0.00 |
| Borrower Name: | Kirby Westheimer | | | Remaining Escrow: $ 0.00 |
| Property Address: | 210 MERCER ST | | | Date Closed: 09/15/2008 |
| Legal Address: | See attached | | | Maturity Date: 04/01/2035 |
| Administrator: | MTT | | | |

| Line-Item | Description | Requested Amount | Vendor/Payee Number and Name | Status | Method |
|---|---|---|---|---|---|
| 0020201 | Permits + surveys | $2,551.00 | Kirby Westheimer | | Wire |

| Request Description | Date | Distribution | Tran Code | Adjusted Amount | Approved By |
|---|---|---|---|---|---|
| From Commitment | 09/24/2008 | $2,551.00 | 1017 | | |
| From Alloc. Retainage | 09/24/2008 | $0.00 | 1010 | | |
| From Deposit | 09/24/2008 | $0.00 | 3040 | | |
| From Alloc. Retainage | 09/24/2008 | $0.00 | | | |
| From Escrow | 09/24/2008 | $0.00 | 3040 | | |
| From Alloc. Retainage | 09/24/2008 | $0.00 | | | |
| Equity Deposit | 09/24/2008 | $0.00 | 3040 | | |
| Equity Escrow | 09/24/2008 | $0.00 | 3040 | | |
| Equity Other | | $0.00 | | | |
| To Alloc. Retainage | | $0.00 | | | |

---

| Note Number: | 6632 | Unit #: 001 | | Remaining Commitment: $ 1,500,000.00 |
|---|---|---|---|---|
| Borrower Number: | 3685 | | | Remaining Deposit: $ 0.00 |
| Borrower Name: | Kirby Westheimer | | | Remaining Escrow: $ 0.00 |
| Property Address: | 210 MERCER ST | | | Date Closed: 09/15/2008 |
| Legal Address: | See attached | | | Maturity Date: 04/01/2035 |
| Administrator: | MTT | | | |

| Line-Item | Description | Requested Amount | Vendor/Payee Number and Name | Status | Method |
|---|---|---|---|---|---|
| 0020203 | GM taxes | $2,516.02 | Kirby Westheimer | | Wire |

| Request Description | Date | Distribution | Tran Code | Adjusted Amount | Approved By |
|---|---|---|---|---|---|
| From Commitment | 09/24/2008 | $2,516.02 | 1017 | | |
| From Alloc. Retainage | 09/24/2008 | $0.00 | 1010 | | |
| From Deposit | 09/24/2008 | $0.00 | 3040 | | |
| From Alloc. Retainage | 09/24/2008 | $0.00 | | | |
| From Escrow | 09/24/2008 | $0.00 | 3040 | | |
| From Alloc. Retainage | 09/24/2008 | $0.00 | | | |
| Equity Deposit | 09/24/2008 | $0.00 | 3040 | | |
| Equity Escrow | 09/24/2008 | $0.00 | 3040 | | |
| Equity Other | | $0.00 | | | |
| To Alloc. Retainage | | $0.00 | | | |

Construction Lending
Report Title: Advance Approval Form (Detail)

Time: 12:00:19 PM
Page: 2

| | | | |
|---|---|---|---|
| Note Number: ▮6632 | Unit #: 001 | Remaining Commitment: $ 1,500,000.00 | |
| Borrower Number: 3685 | | Remaining Deposit: $ 0.00 | |
| Borrower Name: Kirby Westheimer | | Remaining Escrow: $ 0.00 | |
| Property Address: 210 MERCER ST | | Date Closed: 09/15/2008 | |
| Legal Address: See attached | | Maturity Date: 04/01/2035 | |
| Administrator: MTT | | | |

| Line-Item | Description | Requested Amount | Vendor/Payee Number and Name | Status | Method |
|---|---|---|---|---|---|
| 0020221 | Backfill | $4,838.83 | Kirby Westheimer | | Wire |

| Request Description | Date | Distribution | Tran Code | Adjusted Amount | Approved By |
|---|---|---|---|---|---|
| From Commitment | 09/24/2008 | $4,838.83 | 1017 | | |
| From Alloc. Retainage | 09/24/2008 | $0.00 | 1010 | | |
| From Deposit | 09/24/2008 | $0.00 | 3040 | | |
| From Alloc. Retainage | 09/24/2008 | $0.00 | | | |
| From Escrow | 09/24/2008 | $0.00 | 3040 | | |
| From Alloc. Retainage | 09/24/2008 | $0.00 | | | |
| Equity Deposit | 09/24/2008 | $0.00 | 3040 | | |
| Equity Escrow | 09/24/2008 | $0.00 | 3040 | | |
| Equity Other | | $0.00 | | | |
| To Alloc. Retainage | | $0.00 | | | |

| | | | |
|---|---|---|---|
| Note Number: ▮6632 | Unit #: 001 | Remaining Commitment: $ 1,500,000.00 | |
| Borrower Number: 3685 | | Remaining Deposit: $ 0.00 | |
| Borrower Name: Kirby Westheimer | | Remaining Escrow: $ 0.00 | |
| Property Address: 210 MERCER ST | | Date Closed: 09/15/2008 | |
| Legal Address: See attached | | Maturity Date: 04/01/2035 | |
| Administrator: MTT | | | |

| Line-Item | Description | Requested Amount | Vendor/Payee Number and Name | Status | Method |
|---|---|---|---|---|---|
| 0020225 | Footings and Slabs | $250.00 | Kirby Westheimer | | Wire |

| Request Description | Date | Distribution | Tran Code | Adjusted Amount | Approved By |
|---|---|---|---|---|---|
| From Commitment | 09/24/2008 | $250.00 | 1017 | | |
| From Alloc. Retainage | 09/24/2008 | $0.00 | 1010 | | |
| From Deposit | 09/24/2008 | $0.00 | 3040 | | |
| From Alloc. Retainage | 09/24/2008 | $0.00 | | | |
| From Escrow | 09/24/2008 | $0.00 | 3040 | | |
| From Alloc. Retainage | 09/24/2008 | $0.00 | | | |
| Equity Deposit | 09/24/2008 | $0.00 | 3040 | | |
| Equity Escrow | 09/24/2008 | $0.00 | 3040 | | |
| Equity Other | | $0.00 | | | |
| To Alloc. Retainage | | $0.00 | | | |

CHPAVING 96

**A-221**

Construction Lending
Report Title: Advance Approval Form (Detail)

Time: 12:00:19 PM
Page: 3

| | |
|---|---|
| Note Number: ███ 6632 | Unit #: 001 |
| Borrower Number: 3685 | |
| Borrower Name: Kirby Westheimer | |
| Property Address: 210 MERCER ST | |
| Legal Address: See attached | |
| Administrator: MTT | |

Remaining Commitment: $ 1,500,000.00
Remaining Deposit: $ 0.00
Remaining Escrow: $ 0.00
Date Closed: 09/15/2008
Maturity Date: 04/01/2035

| Line-Item | Description | Requested Amount | Vendor/Payee Number and Name | Status | Method |
|---|---|---|---|---|---|
| 0020228 | Conc walls Port Step | $20,600.00 | Kirby Westheimer | | Wire |

| Request Description | Date | Distribution | Tran Code | Adjusted Amount | Approved By |
|---|---|---|---|---|---|
| From Commitment | 09/24/2008 | $20,600.00 | 1017 | | |
| From Alloc. Retainage | 09/24/2008 | $0.00 | 1010 | | |
| From Deposit | 09/24/2008 | $0.00 | 3040 | | |
| From Alloc. Retainage | 09/24/2008 | $0.00 | | | |
| From Escrow | 09/24/2008 | $0.00 | 3040 | | |
| From Alloc. Retainage | 09/24/2008 | $0.00 | | | |
| Equity Deposit | 09/24/2008 | $0.00 | 3040 | | |
| Equity Escrow | 09/24/2008 | $0.00 | 3040 | | |
| Equity Other | | $0.00 | | | |
| To Alloc. Retainage | | $0.00 | | | |

| | |
|---|---|
| Note Number: ███ 6632 | Unit #: 001 |
| Borrower Number: 3685 | |
| Borrower Name: Kirby Westheimer | |
| Property Address: 210 MERCER ST | |
| Legal Address: See attached | |
| Administrator: MTT | |

Remaining Commitment: $ 1,500,000.00
Remaining Deposit: $ 0.00
Remaining Escrow: $ 0.00
Date Closed: 09/15/2008
Maturity Date: 04/01/2035

| Line-Item | Description | Requested Amount | Vendor/Payee Number and Name | Status | Method |
|---|---|---|---|---|---|
| 0020229 | Terr and Port footings | $10,500.00 | Kirby Westheimer | | Wire |

| Request Description | Date | Distribution | Tran Code | Adjusted Amount | Approved By |
|---|---|---|---|---|---|
| From Commitment | 09/24/2008 | $10,500.00 | 1017 | | |
| From Alloc. Retainage | 09/24/2008 | $0.00 | 1010 | | |
| From Deposit | 09/24/2008 | $0.00 | 3040 | | |
| From Alloc. Retainage | 09/24/2008 | $0.00 | | | |
| From Escrow | 09/24/2008 | $0.00 | 3040 | | |
| From Alloc. Retainage | 09/24/2008 | $0.00 | | | |
| Equity Deposit | 09/24/2008 | $0.00 | 3040 | | |
| Equity Escrow | 09/24/2008 | $0.00 | 3040 | | |
| Equity Other | | $0.00 | | | |
| To Alloc. Retainage | | $0.00 | | | |

CHPAVING  97

Construction Lending
Report Title: Advance Approval Form (Detail)

Time: 12:00:19 PM
Page: 4

Note Number: ███6632  
Borrower Number: 3685  
Borrower Name: Kirby Westheimer  
Property Address: 210 MERCER ST  
Legal Address: See attached  
Administrator: MTT

Unit #: 001

Remaining Commitment: $ 1,500,000.00  
Remaining Deposit: $ 0.00  
Remaining Escrow: $ 0.00  
Date Closed: 09/15/2008  
Maturity Date: 04/01/2035

| Line-Item | Description | Requested Amount | Vendor/Payee Number and Name | Status | Method |
|-----------|-------------|------------------|------------------------------|--------|--------|
| 0020230 | Terrace Slabs | $5,000.00 | Kirby Westheimer | | Wire |

| Request Description | Date | Distribution | Tran Code | Adjusted Amount | Approved By |
|---------------------|------|--------------|-----------|-----------------|-------------|
| From Commitment | 09/24/2008 | $5,000.00 | 1017 | | |
| From Alloc. Retainage | 09/24/2008 | $0.00 | 1010 | | |
| From Deposit | 09/24/2008 | $0.00 | 3040 | | |
| From Alloc. Retainage | 09/24/2008 | $0.00 | | | |
| From Escrow | 09/24/2008 | $0.00 | 3040 | | |
| From Alloc. Retainage | 09/24/2008 | $0.00 | | | |
| Equity Deposit | 09/24/2008 | $0.00 | 3040 | | |
| Equity Escrow | 09/24/2008 | $0.00 | 3040 | | |
| Equity Other | | $0.00 | | | |
| To Alloc. Retainage | | $0.00 | | | |

Note Number: ███6632  
Borrower Number: 3685  
Borrower Name: Kirby Westheimer  
Property Address: 210 MERCER ST  
Legal Address: See attached  
Administrator: MTT

Unit #: 001

Remaining Commitment: $ 1,500,000.00  
Remaining Deposit: $ 0.00  
Remaining Escrow: $ 0.00  
Date Closed: 09/15/2008  
Maturity Date: 04/01/2035

| Line-Item | Description | Requested Amount | Vendor/Payee Number and Name | Status | Method |
|-----------|-------------|------------------|------------------------------|--------|--------|
| 0020243 | Stucco exist | $4,000.00 | Kirby Westheimer | | Wire |

| Request Description | Date | Distribution | Tran Code | Adjusted Amount | Approved By |
|---------------------|------|--------------|-----------|-----------------|-------------|
| From Commitment | 09/24/2008 | $4,000.00 | 1017 | | |
| From Alloc. Retainage | 09/24/2008 | $0.00 | 1010 | | |
| From Deposit | 09/24/2008 | $0.00 | 3040 | | |
| From Alloc. Retainage | 09/24/2008 | $0.00 | | | |
| From Escrow | 09/24/2008 | $0.00 | 3040 | | |
| From Alloc. Retainage | 09/24/2008 | $0.00 | | | |
| Equity Deposit | 09/24/2008 | $0.00 | 3040 | | |
| Equity Escrow | 09/24/2008 | $0.00 | 3040 | | |
| Equity Other | | $0.00 | | | |
| To Alloc. Retainage | | $0.00 | | | |

CHPAVING 98

Construction Lending
Report Title: Advance Approval Form (Detail)

Time: 12:00:19 PM
Page: 5

---

Note Number: ████6632    Unit #: 001

Remaining Commitment: $ 1,500,000.00
Remaining Deposit: $ 0.00
Remaining Escrow: $ 0.00
Date Closed: 09/15/2008
Maturity Date: 04/01/2035

Borrower Number: 3685
Borrower Name: Kirby Westheimer
Property Address: 210 MERCER ST
Legal Address: See attached
Administrator: MTT

| Line-Item | Description | Requested Amount | Vendor/Payee Number and Name | Status | Method |
|---|---|---|---|---|---|
| 0020249 | Framing Material | $14,321.42 | Kirby Westheimer | | Wire |

| Request Description | Date | Distribution | Tran Code | Adjusted Amount | Approved By |
|---|---|---|---|---|---|
| From Commitment | 09/24/2008 | $14,321.42 | 1017 | | |
| From Alloc. Retainage | 09/24/2008 | $0.00 | 1010 | | |
| From Deposit | 09/24/2008 | $0.00 | 3040 | | |
| From Alloc. Retainage | 09/24/2008 | $0.00 | | | |
| From Escrow | 09/24/2008 | $0.00 | 3040 | | |
| From Alloc. Retainage | 09/24/2008 | $0.00 | | | |
| Equity Deposit | 09/24/2008 | $0.00 | 3040 | | |
| Equity Escrow | 09/24/2008 | $0.00 | 3040 | | |
| Equity Other | | $0.00 | | | |
| To Alloc. Retainage | | $0.00 | | | |

---

Note Number: ████6632    Unit #: 001

Remaining Commitment: $ 1,500,000.00
Remaining Deposit: $ 0.00
Remaining Escrow: $ 0.00
Date Closed: 09/15/2008
Maturity Date: 04/01/2035

Borrower Number: 3685
Borrower Name: Kirby Westheimer
Property Address: 210 MERCER ST
Legal Address: See attached
Administrator: MTT

| Line-Item | Description | Requested Amount | Vendor/Payee Number and Name | Status | Method |
|---|---|---|---|---|---|
| 0020250 | Framing labor | $30,448.62 | Kirby Westheimer | | Wire |

| Request Description | Date | Distribution | Tran Code | Adjusted Amount | Approved By |
|---|---|---|---|---|---|
| From Commitment | 09/24/2008 | $30,448.62 | 1017 | | |
| From Alloc. Retainage | 09/24/2008 | $0.00 | 1010 | | |
| From Deposit | 09/24/2008 | $0.00 | 3040 | | |
| From Alloc. Retainage | 09/24/2008 | $0.00 | 3011 | | |
| From Escrow | 09/24/2008 | $0.00 | 3040 | | |
| From Alloc. Retainage | 09/24/2008 | $0.00 | 3012 | | |
| Equity Deposit | 09/24/2008 | $0.00 | 3040 | | |
| Equity Escrow | 09/24/2008 | $0.00 | 3040 | | |
| Equity Other | | $0.00 | | | |
| To Alloc. Retainage | | $0.00 | | | |

CHPAVING 99

Construction Lending
Report Title: Advance Approval Form (Detail)

Time: 12:00:19 PM
Page: 6

Note Number: ███6632  
Borrower Number: 3685  
Borrower Name: Kirby Westheimer  
Property Address: 210 MERCER ST  
Legal Address: See attached  
Administrator: MTT

Unit #: 001

Remaining Commitment: $ 1,500,000.00  
Remaining Deposit: $ 0.00  
Remaining Escrow: $ 0.00  
Date Closed: 09/15/2008  
Maturity Date: 04/01/2035

| Line-Item | Description | Requested Amount | Vendor/Payee Number and Name | Status | Method |
|---|---|---|---|---|---|
| 0020259 | Basement framing material | $483.53 | Kirby Westheimer | | Wire |

| Request Description | Date | Distribution | Tran Code | Adjusted Amount | Approved By |
|---|---|---|---|---|---|
| From Commitment | 09/24/2008 | $483.53 | 1017 | | |
| From Alloc. Retainage | 09/24/2008 | $0.00 | 1010 | | |
| From Deposit | 09/24/2008 | $0.00 | 3040 | | |
| From Alloc. Retainage | 09/24/2008 | $0.00 | | | |
| From Escrow | 09/24/2008 | $0.00 | 3040 | | |
| From Alloc. Retainage | 09/24/2008 | $0.00 | | | |
| Equity Deposit | 09/24/2008 | $0.00 | 3040 | | |
| Equity Escrow | 09/24/2008 | $0.00 | 3040 | | |
| Equity Other | | $0.00 | | | |
| To Alloc. Retainage | | $0.00 | | | |

Note Number: ███6632  
Borrower Number: 3685  
Borrower Name: Kirby Westheimer  
Property Address: 210 MERCER ST  
Legal Address: See attached  
Administrator: MTT

Unit #: 001

Remaining Commitment: $ 1,500,000.00  
Remaining Deposit: $ 0.00  
Remaining Escrow: $ 0.00  
Date Closed: 09/15/2008  
Maturity Date: 04/01/2035

| Line-Item | Description | Requested Amount | Vendor/Payee Number and Name | Status | Method |
|---|---|---|---|---|---|
| 0020260 | basement framing lab | $2,244.00 | Kirby Westheimer | | Wire |

| Request Description | Date | Distribution | Tran Code | Adjusted Amount | Approved By |
|---|---|---|---|---|---|
| From Commitment | 09/24/2008 | $2,244.00 | 1017 | | |
| From Alloc. Retainage | 09/24/2008 | $0.00 | 1010 | | |
| From Deposit | 09/24/2008 | $0.00 | 3040 | | |
| From Alloc. Retainage | 09/24/2008 | $0.00 | | | |
| From Escrow | 09/24/2008 | $0.00 | 3040 | | |
| From Alloc. Retainage | 09/24/2008 | $0.00 | | | |
| Equity Deposit | 09/24/2008 | $0.00 | 3040 | | |
| Equity Escrow | 09/24/2008 | $0.00 | 3040 | | |
| Equity Other | | $0.00 | | | |
| To Alloc. Retainage | | $0.00 | | | |

CHPAVING 100

**A-225**

# EXHIBIT I

Case 3:12-cv-07080-AET-LHG    Document 68-4    Filed 08/18/15    Page 12 of 16 PageID: 952

Mortgage Services
Construction Lending
Report Title : Cost Breakdown Detail

Date: 9/24/2008
Time: 12:01:13 PM
Page: 1

Name: Kathy Westheimer
Borrower Number: 3685
Officer Code: 241

Account: 3632    Unit: 101
Note Number:
Address: 271 N MERCER ST
PRINCETON, NJ 08540

Note Date: 9/15/2008
Maturity Date: 4/1/2035

Message:

Legal Desc: See attached

Current Estimate: $ 2,567,123.42
Current Construction Amount: $ 2,567,123.42

|  | Current Commitment: | Receipt Amt. | Available Amt. | Accum. Paydown | Princ. Balance |
|---|---|---|---|---|---|
|  |  | 1,500,000.00 | 1,500,000.00 | $0.00 | $0.00 |
| Deposit: |  | 0.00 | 0.00 | 0.00 |  |
| Escrow: |  | 0.00 | 0.00 | 0.00 |  |
| Equity Deposit: |  | 0.00 | 0.00 | 0.00 |  |
| Equity Escrow: |  | 0.00 | 0.00 | 0.00 |  |
| Totals: |  | $1,500,000.00 | $1,500,000.00 | $0.00 | $0.00 |

## Construction Costs

| Item | Description | Cost Estimate | Equity Budgeted | Equity Received | Equity Due | Equity Disbursed | Allocated Com'tment | Hold/ Set Aside | Drawn Amt. | R % | Disbursed Commitment | Retainage Held | Retainage Released | Retainage Available | Available Funds | % Drawn |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 02 02 01 | Permit + surveys | 8,000.00 | 5,449.00 | 5,449.00 | 0.00 | 5,449.00 | 2,551.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 0.00 | 2,551.00 | 68.11% |
|  | PENDING : NON-APPROVED |  |  |  |  | 0.00 |  |  | 2,551.00 |  | 2,551.00 | 0.00 | 0.00 |  |  | 31.89% |
|  |  |  |  | Sub Total: 002 02 01 |  | 5,449.00 |  |  |  |  | 2,551.00 | 0.00 | 0.00 |  |  | 100.00% |
| 02 02 02 | PErmit Revision | 4,616.00 | 4,616.00 | 4,616.00 | 0.00 | 4,616.00 | 0.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |
| 02 02 03 | GM taxes | 4,000.00 | 1,483.98 | 1,483.98 | 0.00 | 1,483.98 | 2,516.02 | 0.00 | 0.00 | 0.0 | 2,516.02 | 0.00 | 0.00 | 0.00 | 2,516.02 | 37.10% |
|  | PENDING : NON-APPROVED |  |  |  |  | 0.00 |  |  |  |  |  | 0.00 | 0.00 |  |  | 62.90% |
|  |  |  |  | Sub Total: 002 02 03 |  | 1,483.98 |  |  |  |  | 2,516.02 | 0.00 | 0.00 |  |  | 100.00% |
| 03 02 04 | OFM taxes | 9,138.39 | 9,138.39 | 9,138.39 | 0.00 | 9,138.39 | 0.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |
| 03 02 05 | Field Toilet | 2,000.00 | 590.10 | 590.10 | 0.00 | 590.10 | 1,409.90 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 0.00 | 1,409.90 | 29.51% |
| 03 02 06 | Dumpsters | 8,691.35 | 8,691.35 | 8,691.35 | 0.00 | 8,691.35 | 0.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |
| 02 02 07 | Site Demo | 2,514.50 | 2,514.50 | 2,514.50 | 0.00 | 2,514.50 | 0.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |
| 32 02 08 | Equipment | 2,000.00 | 946.72 | 946.72 | 0.00 | 946.72 | 1,053.28 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 0.00 | 1,053.28 | 47.34% |
| 32 02 09 | Supervision | 36,000.00 | 26,393.83 | 26,393.83 | 0.00 | 26,393.83 | 9,606.17 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 0.00 | 9,606.17 | 73.32% |
| 12 02 10 | Roof Removal | 3,000.00 | 3,000.00 | 3,000.00 | 0.00 | 3,000.00 | 0.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |
| 12 02 11 | Gas relocation | 2,000.00 | 2,000.00 | 2,000.00 | 0.00 | 2,000.00 | 0.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |
| 12 02 12 | Mep Demo | 5,000.00 | 5,000.00 | 5,000.00 | 0.00 | 5,000.00 | 0.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |
| 12 02 13 | Oil Tank Remediation | 10,000.00 | 9,168.55 | 9,168.55 | 0.00 | 9,168.55 | 831.45 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |
| 12 02 14 | Concrete Cutting | 8,000.00 | 4,700.00 | 4,700.00 | 0.00 | 4,700.00 | 3,300.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |

A-227

Mortgage Services
Construction Lending
Report Title : Cost Breakdown Detail

Date: 9/24/2008
Time: 12:01:13 PM
Page: 2

| Item | Description | Cost Estimate | Equity Budgeted | Equity Received | Equity Due | Equity Disbursed | Allocated Commitment | Hold/ Set Aside | Disbursed Commitment | R % | Retainage Held | Retainage Released | Retainage Available | Available Funds | % Drawn |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 002 02 15 | Craw slab demo | 3,000.00 | 3,000.00 | 3,000.00 | 0.00 | 3,000.00 | 0.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |
| 002 02 16 | Building demo | 13,164.73 | 13,164.73 | 13,164.73 | 0.00 | 13,164.73 | 0.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |
| 002 02 17 | Garage demo | 3,000.00 | 3,000.00 | 3,000.00 | 0.00 | 3,000.00 | 0.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |
| 002 02 18 | Grubbing | 1,000.00 | 724.00 | 724.00 | 0.00 | 724.00 | 276.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 276.00 | 72.40% |
| 202 02 19 | Excavation | 6,013.68 | 6,013.68 | 6,013.68 | 0.00 | 6,013.68 | 0.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |
| 202 02 20 | Conc Removal | 2,803.00 | 2,803.00 | 2,803.00 | 0.00 | 2,803.00 | 0.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |
| '21 | Backfill | 10,000.00 | 5,161.17 | 5,161.17 | 0.00 | 5,161.17 | 4,838.83 | 0.00 | 4,838.83 | 0.0 | 0.00 | 0.00 | 0.00 | 4,838.83 | 51.61% |
| | PENDING : NON-APPROVED | | | | | 0.00 | | | 0.00 | | 0.00 | 0.00 | | | 48.39% |
| Sub Totals 002 02 21 | | | | 5,161.17 | | 5,161.17 | 4,838.83 | | 4,838.83 | | 0.00 | 0.00 | 0.00 | | 100.00% |
| 02 02 22 | Grassing Sod | 10,000.00 | 5,000.00 | 5,000.00 | 0.00 | 5,000.00 | 5,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 5,000.00 | 50.00% |
| 02 02 23 | Belgian Block | 20,000.00 | 10,000.00 | 10,000.00 | 0.00 | 10,000.00 | 10,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 10,000.00 | 50.00% |
| 02 02 24 | Paving Labor | 20,000.00 | 10,000.00 | 10,000.00 | 0.00 | 10,000.00 | 10,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 10,000.00 | 50.00% |
| 02 02 25 | Footings and Slabs | 23,250.00 | 23,000.00 | 23,000.00 | 0.00 | 23,000.00 | 250.00 | 0.00 | 250.00 | 0.0 | 0.00 | 0.00 | 0.00 | 250.00 | 98.92% |
| | PENDING : NON-APPROVED | | | | | 0.00 | | | 250.00 | | 0.00 | 0.00 | | | 1.08% |
| Sub Totals 002 02 25 | | | | 23,000.00 | | 23,000.00 | | | 250.00 | | 0.00 | 0.00 | 0.00 | | 100.00% |
| 12 02 26 | Concrete Walls | 26,400.00 | 26,400.00 | 26,400.00 | 0.00 | 26,400.00 | 0.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |
| 12 02 27 | Concrete Wall, Ev | 12,750.00 | 12,750.00 | 12,750.00 | 0.00 | 12,750.00 | 0.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |
| 02 02 28 | Conc walls Port Step | 50,000.00 | 29,400.00 | 29,400.00 | 0.00 | 29,400.00 | 20,600.00 | 0.00 | 20,600.00 | 0.0 | 0.00 | 0.00 | 0.00 | 20,600.00 | 58.80% |
| | PENDING : NON-APPROVED | | | | | 0.00 | | | 20,600.00 | | 0.00 | 0.00 | | | 41.20% |
| Sub Totals 002 02 28 | | | | 29,400.00 | | 29,400.00 | | | 20,600.00 | | 0.00 | 0.00 | 0.00 | | 100.00% |
| ...2 29 | Terr and Port footin | 20,000.00 | 9,500.00 | 9,500.00 | 0.00 | 9,500.00 | 10,500.00 | 0.00 | 10,500.00 | 0.0 | 0.00 | 0.00 | 0.00 | 10,500.00 | 47.50% |
| | PENDING : NON-APPROVED | | | | | 0.00 | | | 10,500.00 | | 0.00 | 0.00 | | | 52.50% |
| Sub Totals 002 02 29 | | | | 9,500.00 | | 9,500.00 | | | 10,500.00 | | 0.00 | 0.00 | 0.00 | | 100.00% |
| 1 02 30 | Terrace Slabs | 10,000.00 | 5,000.00 | 5,000.00 | 0.00 | 5,000.00 | 5,000.00 | 0.00 | 5,000.00 | 0.0 | 0.00 | 0.00 | 0.00 | 5,000.00 | 50.00% |
| | PENDING : NON-APPROVED | | | | | 0.00 | | | 5,000.00 | | 0.00 | 0.00 | | | 50.00% |
| Sub Totals 002 02 30 | | | | 5,000.00 | | 5,000.00 | | | 5,000.00 | | 0.00 | 0.00 | 0.00 | | 100.00% |
| 02 31 | Slab Stone | 1,500.00 | 873.96 | 873.96 | 0.00 | 873.96 | 626.04 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 626.04 | 58.26% |
| 02 32 | Terr and Port Steps | 12,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 12,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 12,000.00 | 0.00% |
| 02 33 | Crawl Slabs | 4,000.00 | 4,000.00 | 4,000.00 | 0.00 | 4,000.00 | 0.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |
| 02 34 | Brick Fireplace | 16,000.00 | 12,500.00 | 12,500.00 | 0.00 | 12,500.00 | 3,500.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 3,500.00 | 78.13% |
| 02 35 | Stone Labor | 50,000.00 | 4,537.87 | 4,537.87 | 0.00 | 4,537.87 | 45,462.13 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 45,462.13 | 9.08% |
| 02 36 | Stone Columns | 17,000.00 | 8,000.00 | 8,000.00 | 0.00 | 8,000.00 | 9,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 9,000.00 | 47.06% |

A-228

Mortgage Services
Construction Lending
Report Title : Cost Breakdown Detail

Date: 9/24/2008
Time: 12:01:13 PM
Page: 3

| Item | Description | Cost Estimate | Equity Budgeted | Equity Received | Equity Due | Equity Disbursed | Allocated Com'tment | Hold/ Set Aside | Disbursed Commitment | R % | Retainage Held | Retainage Released | Retainage Available | Available Funds | % Drawn |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 002.02.37 | Stone Veneer New | 15,000.00 | 8,050.00 | 8,050.00 | 0.00 | 8,050.00 | 6,950.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 6,950.00 | 53.67% |
| 002.02.39 | Stone Pavers | 15,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 15,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 15,000.00 | 0.00% |
| 002.02.40 | Fireplace Facings | 21,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 21,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 21,000.00 | 0.00% |
| 002.02.41 | slate roof material | 26,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 26,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 26,000.00 | 0.00% |
| 002.02.42 | Stucco New | 32,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 32,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 32,000.00 | 0.00% |
| 002.02.43 | Stucco exist | 20,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 20,000.00 | 0.00 | 4,000.00 | 0.0 | 0.00 | 0.00 | 0.00 | 20,000.00 | 20.00% |
| | PENDING : NON-APPROVED | | | | | | | | 4,000.00 | | 0.00 | 0.00 | 0.00 | 20,000.00 | 20.00% |
| | Sub Total: 002 02 .43 | | | 0.00 | 0.00 | 0.00 | | | 4,000.00 | | 0.00 | 0.00 | | | 20.00% |
| 302.02.44 | Steel Deck | 15,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 15,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 15,000.00 | 0.00% |
| 302.02.45 | Misc Steel | 2,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 2,000.00 | 0.00% |
| 302.02.46 | Steel Beams | 5,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 5,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 5,000.00 | 0.00% |
| 302.02.47 | Bronze Rail | 20,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 20,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 20,000.00 | 0.00% |
| 302.02.48 | Rail labor | 5,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 5,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 5,000.00 | 0.00% |
| 302.02.49 | Framing Material | 20,000.00 | 678.58 | 678.58 | 0.00 | 678.58 | 19,321.42 | 0.00 | 14,321.42 | 0.0 | 0.00 | 0.00 | 0.00 | 19,321.42 | 3.39% |
| | PENDING : NON-APPROVED | | | | | 678.58 | | | 14,321.42 | | 0.00 | 0.00 | 0.00 | | 71.61% |
| | Sub Total: 002 02 .49 | | | 678.58 | 0.00 | 678.58 | | | 14,321.42 | | 0.00 | 0.00 | | | 75.00% |
| 02.02.50 | Framing labor | 40,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 40,000.00 | 0.00 | 30,448.62 | 0.0 | 0.00 | 0.00 | 0.00 | 40,000.00 | 0.00% |
| | PENDING : NON-APPROVED | | | | | 0.00 | | | 30,448.62 | | 0.00 | 0.00 | 0.00 | | 76.12% |
| | Sub Total: 002 02 .50 | | | 0.00 | 0.00 | 0.00 | | | 30,448.62 | | 0.00 | 0.00 | | | 76.12% |
| 12.02.51 | Portico | 10,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 10,000.00 | 0.00% |
| 12.02.52 | Plaza | 10,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 10,000.00 | 0.00% |
| 12.02.53 | ext dormers | 5,505.50 | 5,505.50 | 5,505.50 | 0.00 | 5,505.50 | 0.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |
| 12.02.54 | ext frame materials | 5,554.41 | 5,554.41 | 5,554.41 | 0.00 | 5,554.41 | 0.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |
| 12.02.55 | int framing 123 | 5,000.00 | 5,000.00 | 5,000.00 | 0.00 | 5,000.00 | 0.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |
| 12.02.56 | interior frame B | 26,799.26 | 26,799.26 | 26,799.26 | 0.00 | 26,799.26 | 0.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |
| 2.02.57 | interior frame 1.Gen | 10,000.00 | 2,706.00 | 2,706.00 | 0.00 | 2,706.00 | 7,294.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 7,294.00 | 27.06% |
| 2.02.58 | interior frame sub | 8,556.70 | 8,556.70 | 8,556.70 | 0.00 | 8,556.70 | 1,443.30 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 1,443.30 | 85.57% |
| 2.02.59 | Basement framing mat | 3,000.00 | 2,516.47 | 2,516.47 | 0.00 | 2,516.47 | 483.53 | 0.00 | 483.53 | 0.0 | 0.00 | 0.00 | 0.00 | 483.53 | 83.88% |
| | PENDING : NON-APPROVED | | | | | 2,516.47 | | | 483.53 | | 0.00 | 0.00 | 0.00 | | 16.12% |
| | Sub Total: 002 02 .59 | | | 2,516.47 | 0.00 | 2,516.47 | | | 483.53 | | 0.00 | 0.00 | | | 100.00% |

CHPAVING 1U5

A-229

Mortgage Services
Construction Lending
Report Title : Cost Breakdown Detail

Date: 9/24/2008
Time: 12:01:13 PM
Page: 4

| Item | Description | Cost Estimate | Equity Budgeted | Equity Received | Equity Due | Equity Disbursed | Allocated Com'tment | Hold/ Set Aside | Disbursed Commitment | R % | Retainage Held | Retainage Released | Retainage Available | Available Funds | % Drawn |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 002 02 60 | basement framing lab PENDING / NON-APPROVED | 7,000.00 | 4,756.00 | 0.00 | 0.00 | 4,756.00 | 7,244.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 2,244.00 | 67.94% |
| | See Total: 002 02 60 | | 4,756.00 | 0.00 | 0.00 | 4,756.00 | 2,244.00 | 0.00 | 2,244.00 | 0.0 | 0.00 | 0.00 | 0.00 | | |
| | | | | | | | 2,244.00 | | 2,244.00 | | 0.00 | 0.00 | | | 100.00% |
| 002 02 61 | Ext trim,l | 10,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 10,000.00 | 0.00% |
| 002 02 62 | Ext trim, m | 10,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 10,000.00 | 0.00% |
| 002 02 63 | Stairs, prefab | 5,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 5,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 5,000.00 | 0.00% |
| 002 02 64 | Stair labor | 5,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 5,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 5,000.00 | 0.00% |
| X02 02 65 | Int trim material | 20,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 20,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 20,000.00 | 0.00% |
| X02 02 66 | Construction manageme | 30,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 30,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 30,000.00 | 0.00% |
| X02 02 67 | Int panelling | 60,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 60,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 60,000.00 | 0.00% |
| X02 02 68 | Int panelling,add | 50,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 50,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 50,000.00 | 0.00% |
| X02 02 69 | Cabinets, kitchen | 30,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 30,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 30,000.00 | 0.00% |
| X02 02 70 | Cabinets, bat, pat | 10,589.57 | 0.00 | 0.00 | 0.00 | 0.00 | 10,589.57 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 10,589.57 | 0.00% |
| X2 02 71 | Cabinets, bath | 10,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 10,000.00 | 0.00% |
| X2 02 72 | Cabinets, libarys | 20,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 20,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 20,000.00 | 0.00% |
| X2 02 73 | Cabinets, living, en | 10,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 10,000.00 | 0.00% |
| X2 02 74 | Stone counters | 20,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 20,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 20,000.00 | 0.00% |
| X2 02 75 | Roofing, shigns new | 40,000.00 | 8,114.80 | 8,114.80 | 0.00 | 8,114.80 | 31,885.20 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 31,885.20 | 20.29% |
| 02 02 76 | Reroof existing | 20,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 20,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 20,000.00 | 0.00% |
| ? 77 | Roofing, copper | 17,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 17,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 17,000.00 | 0.00% |
| 2x 02 78 | Copper scope adds | 6,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 6,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 6,000.00 | 0.00% |
| X2 02 79 | Gutters, downspouts | 10,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 10,000.00 | 0.00% |
| 12 02 80 | Insulation | 8,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 8,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 8,000.00 | 0.00% |
| 12 02 81 | Waterproofing | 5,000.00 | 975.00 | 975.00 | 0.00 | 975.00 | 4,025.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 4,025.00 | 19.50% |
| 12 02 82 | Drainage piping | 2,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 2,000.00 | 0.00% |
| 12 02 83 | windows | 182,683.00 | 134,278.49 | 134,278.49 | 0.00 | 134,278.49 | 48,404.51 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 48,404.51 | 73.50% |
| 12 02 84 | garage doors | 9,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 9,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 9,000.00 | 0.00% |
| 12 02 85 | interior doors and h | 20,000.00 | 150.00 | 150.00 | 0.00 | 150.00 | 19,850.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 19,850.00 | 0.75% |
| 12 02 86 | painting | 50,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 50,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 50,000.00 | 0.00% |
| 12 02 87 | wood flooring | 15,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 15,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 15,000.00 | 0.00% |
| 2 02 88 | Tile material and la | 30,000.00 | 2,300.00 | 2,300.00 | 0.00 | 2,300.00 | 27,700.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 27,700.00 | 0.00% |
| 2 02 89 | Gypsum board | 20,000.00 | 875.00 | 875.00 | 0.00 | 875.00 | 19,125.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 19,125.00 | 0.00% |

A-230

Case 3:12-cv-07080-AET-LHG    Document 68-4    Filed 08/18/15    Page 16 of 16 PageID: 956

Mortgage Services
Construction Lending
Report Title : Cost Breakdown Detail

Date: 9/24/2008
Time: 12:01:13 PM
Page: 5

| Item | Description | Cost Estimate | Equity Budgeted | Equity Received | Equity Due | Equity Disbursed | Allocated Com'tment | Hold/ Set Aside | Disbursed Commitment | R % | Retainage Held | Retainage Released | Retainage Available | Available Funds | % Drawn |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 002 02 90 | plaster cost | 10,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 10,000.00 | 0.00% |
| 002 02 91 | appliances | 50,000.00 | 3,600.00 | 3,600.00 | 0.00 | 3,600.00 | 46,400.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 46,400.00 | 7.20% |
| 002 02 92 | carpet | 29,848.03 | 0.00 | 0.00 | 0.00 | 0.00 | 29,848.03 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 29,848.03 | 0.00% |
| 002 02 93 | elevator | 45,000.00 | 10,000.00 | 10,000.00 | 0.00 | 10,000.00 | 35,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 35,000.00 | 22.22% |
| 002 02 94 | electrical | 67,000.00 | 8,954.66 | 8,954.66 | 0.00 | 8,954.66 | 58,045.34 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 58,045.34 | 13.37% |
| 202 02 95 | home automation | 65,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 65,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 65,000.00 | 0.00% |
| ' '96 | plumbing | 170,000.00 | 20,141.46 | 20,141.46 | 0.00 | 20,141.46 | 149,858.54 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 149,858.54 | 11.85% |
| X02 02 97 | HVAC | 110,000.00 | 67,137.00 | 67,137.00 | 0.00 | 67,137.00 | 42,863.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 42,863.00 | 61.03% |
| X02 02 98 | GM labor | 507,300.00 | 461,951.26 | 461,951.26 | 0.00 | 461,951.26 | 45,348.74 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 45,348.74 | 91.06% |
| X02 02 99 | contage | 22,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 22,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 22,000.00 | 0.00% |
| | ub Total Excluding Pending: | 2,567,123.42 | 1,067,123.42 | 1,067,123.42 | 0.00 | 1,067,123.42 | 1,500,000.00 | 0.00 | 0.00 | | 0.00 | 0.00 | 0.00 | 1,500,000.00 | 41.57% |
| | ub Total Including Pending: | | | | | 1,067,123.42 | | | 97,753.42 | | | | | 1,402,246.58 | 45.38% |
| | inal Total Excluding Pending: | $2,567,123.42 | $1,067,123.42 | $1,067,123.42 | $0.00 | $1,067,123.42 | $1,500,000.00 | 0.00 | $0.00 | | $0.00 | $0.00 | $0.00 | $1,500,000.00 | 41.57% |
| | inal Total Including Pending: | | | | | $1,067,123.42 | | | $6,020,472.81 | | | | | -$4,520,472.81 | 276.09% |

Cash Shortage or Outside-Source Equity :    $0.00

CHPAVING 107

**LUM, DRASCO & POSITAN LLC**
103 Eisenhower Parkway
Roseland, NJ  07068-1049
(973) 403-9000
(973) 403-9021 (FAX)
Attorneys for Defendant, Kirby Westheimer

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| | Case No. 12-cv-07080-JAP-LHG |
| BANK OF AMERICA, N.A., successor in interest to MERRILL LYNCH CREDIT CORPORATION, by and through its servicer and attorney-in-fact PHH MORTGAGE CORPORATION, | |
| Plaintiff, | **REPLY DECLARATION OF PAUL A. SANDARS, III, ESQ.** |
| vs. | |
| KIRBY WESTHEIMER, | |
| Defendant. | |

I, PAUL A. SANDARS, III, ESQ., of full age, hereby certifies and declares under penalty of perjury as follows:

1.      I am an attorney-at-law in the State of New Jersey, admitted to practice before this Court, and a Member with the law firm of Lum, Drasco & Positan LLC, attorneys for Defendant, Kirby Westheimer ("Defendant" or "Westheimer").

2.      I submit this Declaration in further support of Westheimer's Motion for

an Order pursuant to Fed. R. Civ. P. 60(b)(2) for relief from this Court's February 28, 2014 Order dismissing his Counterclaims and granting Summary Judgment in favor of Plaintiff, Bank of America, N.A., successor in interest to Merrill Lynch Credit Corporation, by and through its servicer and attorney-in-fact, PHH Mortgage Corporation ("Plaintiff" or "BOA").

3.      Attached hereto as Exhibit A is a true and correct copy of the report dated December 22, 2008 by Lenders Choice Network, Bates-stamped CHPAVING 709 - 730.

4.      Attached hereto as Exhibit B is a true and correct copy of the Advance Approval/Sign Off, dated December 22, 2008, Bates-stamped CHPAVING 691-698.

5.      Attached hereto as Exhibit C is a true and correct copy of the Cost Breakdown Detail, dated December 22, 2008, Bates-stamped CHPAVING 704-708.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

**LUM, DRASCO & POSITAN LLC**
Attorneys for Defendant, Kirby Westheimer


By: _/s/ PAUL A. SANDARS, III_____
    PAUL A. SANDARS, ESQ.
    A Member of the Firm

DATED: September 15, 2015

**A-233**

# EXHIBIT A



### Lenders Choice Network
1303 East Grand Avenue, Suite 115
Arroyo Grande, CA 93420

Phone (805) 474-1950                    Fax (805) 473-3405

| | |
|---|---|
| Attention: | **Matthew Seaman** |
| | **STARS** |
| Fax: | (904) 998.0984 |
| Date: | 12/22/2008 |
| Inspection Id: | 209774 |
| Loan Number: | ████ |
| Borrower Name: | Kirby Westheimer |
| Subject Property: | 210 Mercer St., Princeton, NJ 08540 |

# Lenders Choice Network

1303 East Grand Avenue, Suite 115
Arroyo Grande, CA 93420

Phone (805) 474-1950                          Fax (805) 473-3405

Inspection Id: 209774            Borrower: Kirby Westhelmer
Loan Number: ▮▮▮▮▮            Property: 210 Mercer St., Princeton, NJ 08540

| Stage 1 | | | |
|---|---|---|---|
| Field Toilet | 2000.00 | 100.00% | 2000.00 |
| Dumpsters | 8691.35 | 80.00% | 6953.08 |
| Site Demo | 2514.50 | 100.00% | 2514.50 |
| Roof Removal | 3000.00 | 100.00% | 3000.00 |
| Gas Relocation | 2000.00 | 100.00% | 2000.00 |
| Mep Demo | 5000.00 | 100.00% | 5000.00 |
| Oil Tank Remediation | 10000.00 | 100.00% | 10000.00 |
| Concrete Cutting | 8000.00 | 100.00% | 8000.00 |
| Craw Slab Demo | 3000.00 | 100.00% | 3000.00 |
| Building Demo | 13164.73 | 100.00% | 13164.73 |
| Garage Demo | 3000.00 | 100.00% | 3000.00 |
| Grubbing | 1000.00 | 100.00% | 1000.00 |
| Excavation | 6013.68 | 100.00% | 6013.68 |
| Conc. Removal | 2805.00 | 100.00% | 2805.00 |
| Backfill | 10000.00 | 100.00% | 10000.00 |
| Grassing Sod | 10000.00 | 0.00% | 0.00 |
| Belgian Block | 20000.00 | 50.00% | 10000.00 |
| Paving Labor | 20000.00 | 0.00% | 0.00 |
| Footings and Slabs | 23250.00 | 100.00% | 23250.00 |
| Concrete Walls | 26400.00 | 100.00% | 26400.00 |
| Concrete Walls, Ev. | 12750.00 | 100.00% | 12750.00 |
| Concrete Walls Port Step | 50000.00 | 100.00% | 50000.00 |
| Terr and Port Footings | 20000.00 | 100.00% | 20000.00 |
| Terrace Slabs | 10000.00 | 100.00% | 10000.00 |
| Slab Stone | 1500.00 | 100.00% | 1500.00 |
| Terr and Port Steps | 12000.00 | 75.00% | 9000.00 |
| Crawl Slabs | 4000.00 | 100.00% | 4000.00 |
| Brick Fireplace | 16000.00 | 100.00% | 16000.00 |
| Stone Labor | 50000.00 | 90.00% | 45000.00 |
| Stone Columns | 17000.00 | 100.00% | 17000.00 |
| Stone Veneer New | 15000.00 | 100.00% | 15000.00 |
| Sone Veneer Existing | 0.00 | 0.00% | 0.00 |
| Stone Pavers | 15000.00 | 75.00% | 11250.00 |
| Fireplace Facings | 21000.00 | 100.00% | 21000.00 |
| Slate Roof Material | 26000.00 | 70.00% | 18200.00 |
| Stucco New | 32000.00 | 75.00% | 24000.00 |
| Stucco Exist | 20000.00 | 75.00% | 15000.00 |
| Steel Deck | 15000.00 | 100.00% | 15000.00 |
| Misc Steel | 2000.00 | 100.00% | 2000.00 |
| Steel Beams | 5000.00 | 100.00% | 5000.00 |
| Bronze Rail | 20000.00 | 0.00% | 0.00 |
| Rail Labor | 5000.00 | 0.00% | 0.00 |
| Framing Material | 20000.00 | 100.00% | 20000.00 |
| Framing Labor | 40000.00 | 100.00% | 40000.00 |
| Portico | 10000.00 | 25.00% | 2500.00 |
| Piazza | 10000.00 | 75.00% | 7500.00 |
| Ext. Dormers | 5505.50 | 100.00% | 5505.50 |

CHPAVING 710

A-236

| | | | | |
|---|---|---:|---:|---:|
| | Ext. Frame Materials | 5554.41 | 100.00% | 5554.41 |
| | Int. Framing 123 | 5000.00 | 75.00% | 3750.00 |
| | Interior Frame B | 26799.26 | 60.00% | 16079.56 |
| | Interior Frame L Gm | 10000.00 | 50.00% | 5000.00 |
| | Interior Frame Sub | 10000.00 | 50.00% | 5000.00 |
| | Basement Framing Material | 3000.00 | 100.00% | 3000.00 |
| | Basement Framing Labor | 7000.00 | 100.00% | 7000.00 |
| | Ext. Trim Labor | 10000.00 | 75.00% | 7500.00 |
| | Ext. Trim Material | 10000.00 | 75.00% | 7500.00 |
| | Stairs, Prefab | 5000.00 | 0.00% | 0.00 |
| | Stair Labor | 5000.00 | 0.00% | 0.00 |
| | Int. Trim Material | 20000.00 | 25.00% | 5000.00 |
| | Int. Panelling | 60000.00 | 0.00% | 0.00 |
| | Int. Panelling, add | 50000.00 | 0.00% | 0.00 |
| | Cabinets, Kitchen | 30000.00 | 0.00% | 0.00 |
| | Cabinets, but, pnt | 10589.57 | 0.00% | 0.00 |
| | Cabinets, Bath | 10000.00 | 0.00% | 0.00 |
| | Cabinets, Librarys | 20000.00 | 0.00% | 0.00 |
| | Cabinets, Living, ent | 10000.00 | 0.00% | 0.00 |
| | Stone Counters | 20000.00 | 0.00% | 0.00 |
| | Roofing, Slaten new | 40000.00 | 50.00% | 20000.00 |
| | Reroof Existing | 20000.00 | 50.00% | 10000.00 |
| | Roofing, Copper | 17000.00 | 100.00% | 17000.00 |
| | Copper, scope adds | 6000.00 | 50.00% | 3000.00 |
| | Gutters, Downspouts | 10000.00 | 100.00% | 10000.00 |
| | Insulation | 8000.00 | 0.00% | 0.00 |
| | Waterproofing | 5000.00 | 50.00% | 2500.00 |
| | Drainage Piping | 2000.00 | 75.00% | 1500.00 |
| | Windows | 182683.00 | 100.00% | 182683.00 |
| | Garage Doors | 9000.00 | 0.00% | 0.00 |
| | Interior Doors and Hardware | 20000.00 | 0.00% | 0.00 |
| | Painting | 50000.00 | 0.00% | 0.00 |
| | Wood Flooring | 15000.00 | 0.00% | 0.00 |
| | Tile Material and Labor | 30000.00 | 0.00% | 0.00 |
| | Gypsum Board | 20000.00 | 0.00% | 0.00 |
| | Plaster Coat | 10000.00 | 0.00% | 0.00 |
| | Appliances | 50000.00 | 0.00% | 0.00 |
| | Carpet | 29848.03 | 0.00% | 0.00 |
| | Elevator | 45000.00 | 30.00% | 13500.00 |
| | Electrical | 67000.00 | 60.00% | 40200.00 |
| | Home Automation | 65000.00 | 30.00% | 19500.00 |
| | Plumbing | 170000.00 | 60.00% | 102000.00 |
| | HVAC | 110000.00 | 80.00% | 88000.00 |
| | Cottage | 22000.00 | 50.00% | 11000.00 |
| | | 1966069.03 | 56.54% | 1111573.46 |
| | TOTAL | 1966069.03 | 56.54% | 1111573.46 |

Notes:

Jac Vollenberg                    12/20/2008 9:00:00 AM
Inspector                         Date/Time

CHPAVING 711





209774 (1)

209774 (2)

CHPAVING 713



CHPAVING 714



209774 (8)

209774 (9)

CHPAVING 715



209774 (10)

209774 (11)

CHPAVING 716



209774 (12)

209774 (13)

CHPAVING 717



209774 (14)

209774 (15)

CHPAVING 718



209774 (17)

209774 (18)

CHPAVING 719



209774 (19)

209774 (21)

CHPAVING 720



209774 (22)

209774 (25)

CHPAVING 721



209774 (27)

209774 (30)

CHPAVING 722



209774 (31)

209774 (32)

CHPAVING 723



209774 (34)

209774 (35)

CHPAVING 724



209774 (36)

209774 (39)

CHPAVING 725



209774 (46)

209774 (48)

CHPAVING 726



209774 (49)

209774 (50)

CHPAVING 727



209774 (S1)

209774 (S2)

CHPAVING 728



209774 (54)

209774 (57)

CHPAVING 729



209774 (61)

CHPAVING 730

# EXHIBIT B

Mortgage Services
Construction Lending
Report Title : Advance Approval / Sign-Off

Date: 12/22/2008
Time: 10:53:53 AM
Page: 1

*PA ← MrSaid ot w/out Lhop.
Ratocked lostone.*

## Advance Approval / Sign-Off

Borrower Number: 3685
Name: Kirby Westheimer;
Property Address: 210 MERCER ST
PRINCETON, NJ 08540
241

Officer:

Note Number :        Unit : 001

| Line-Item | Description | Original Cost | Available | As If Disbursed | As If Retained | Req. Amt | Avail. After Disbursement | As If %D | %C |
|---|---|---|---|---|---|---|---|---|---|
| 002 0209 | Supervision | $36,000.00 | $9,606.17 | $9,606.17 | $0.00 | $9,606.17 | $0.00 | 100.00% | 48.00% |
| 002 0223 | Belgian Block | $20,000.00 | $10,000.00 | $10,000.00 | $0.00 | $10,000.00 | $0.00 | 100.00% | 0.00% |
| 002 0224 | Paving Labor | $20,000.00 | $10,000.00 | $10,000.00 | $0.00 | $10,000.00 | $0.00 | 100.00% | 0.00% |
| 002 0232 | Terr And Port Steps | $12,000.00 | $3,000.00 | $3,000.00 | $0.00 | $3,000.00 | $0.00 | 100.00% | 75.00% |
| 002 0235 | Stone Labor | $50,000.00 | $17,500.00 | $17,500.00 | $0.00 | $17,500.00 | $0.00 | 100.00% | 65.00% |
| 002 0240 | Fireplace Facings | $21,000.00 | $15,750.00 | $15,750.00 | $0.00 | $15,750.00 | $0.00 | 100.00% | 25.00% |
| 002 0241 | Slate Roof Material | $26,000.00 | $1,000.00 | $1,000.00 | $0.00 | $1,000.00 | $0.00 | 100.00% | 10.00% |
| 002 0242 | Stucco New | $32,000.00 | $19,200.00 | $10,019.60 | $0.00 | $10,019.60 | $9,180.40 | 71.31% | 40.00% |
| 002 0294 | eletrical | $67,000.00 | $40,937.71 | $14,137.71 | $0.00 | $14,137.71 | $26,800.00 | 60.00% | 60.00% |
| 002 0296 | plumbing | $170,000.00 | $149,858.54 | $64,858.54 | $0.00 | $64,858.54 | $85,000.00 | 50.00% | 50.00% |
| | | | $276,852.42 | $155,872.02 | $0.00 | $155,872.02 | | | |

Amount Drawn To Date          $428,797.59

Amount Remaining To Draw       $1,071,202.41

Maximum Advance Amount         $155,872.02

If Over-Line, Officer Must Initial
Explanation of Over-Line Draw :

Approved Amount to Advance:

Advance Approval Form Totals:        $155,872.02

CHPAVING  752

**A-258**

Mortgage Services
Construction Lending
Report Title : Advance Approval / Sign-Off

Date: 12/22/2008
Time: 10:53:53 AM
Page: 2

**Collateral Exception Status For :**          Note Number :                     Unit : 001

**Borrower Documentation Exceptions**
*** No Borrower Document Exceptions ***

**Master Note Documentation Exceptions**
*** No Master Note Document Exceptions ***

**Unit Documentation Exceptions**                                    001

001   05   00   Flood Insurance                                      /Past Due      NOT REQUIRED
                *Document waived on: 09/24/2008 by: MTT*
001   07   00   Title Update                                         /Past Due
002   14   00   See notes                                            /Past Due

CHPAVING 753



CHPAVING 754



Mortgage Services
Construction Lending
CHAVING 755

Date: 12-22-2008
Time: 10:28:08
Page: 1

| | Delivered | | Description | | Stricke | | Entry |
|---|---|---|---|---|---|---|---|
| 09/24/2008 12:16:44 | Stricke | fund to client per bldr | | 09/24/2008 12:16:44 | Stricke | | No |

Mortgage Services
'Construction Lending
Report Title: Advance Approval Form (Detail)

Date: 12/22/2008
Time: 10:54:08 AM
Page: 1

Note Number: [redacted]
Borrower Number: 3685
Borrower Name: Kirby Westheimer
Property Address: 210 MERCER ST
Legal Address: See attached
Administrator: TIL

Unit #: 001

Remaining Commitment: $ 1,071,202.41
Remaining Deposit: $ 0.00
Remaining Escrow: $ 0.00
Date Closed: 09/15/2008
Maturity Date: 04/01/2035

| Line-Item | Description | Requested Amount | Vendor/Payee Number and Name | Status | Method |
|-----------|-------------|------------------|------------------------------|--------|--------|
| 0020294 | eletrical | $14,137.71 | Kirby Westheimer | | Wire |

| Request Description | Date | Distribution | Tran Code | Adjusted Amount | Approved By |
|---------------------|------|--------------|-----------|-----------------|-------------|
| From Commitment | 12/22/2008 | $14,137.71 | 1017 | | |
| From Alloc. Retainage | 12/22/2008 | $0.00 | 1010 | | |
| From Deposit | 12/22/2008 | $0.00 | 3040 | | |
| From Alloc. Retainage | 12/22/2008 | $0.00 | | | |
| From Escrow | 12/22/2008 | $0.00 | 3040 | | |
| From Alloc. Retainage | 12/22/2008 | $0.00 | | | |
| Equity Deposit | 12/22/2008 | $0.00 | 3040 | | |
| Equity Escrow | 12/22/2008 | $0.00 | 3040 | | |
| Equity Other | | $0.00 | | | |
| To Alloc. Retainage | | $0.00 | | | |

Note Number: [redacted]
Borrower Number: 3685
Borrower Name: Kirby Westheimer
Property Address: 210 MERCER ST
Legal Address: See attached
Administrator: TIL

Unit #: 001

Remaining Commitment: $ 1,071,202.41
Remaining Deposit: $ 0.00
Remaining Escrow: $ 0.00
Date Closed: 09/15/2008
Maturity Date: 04/01/2035

| Line-Item | Description | Requested Amount | Vendor/Payee Number and Name | Status | Method |
|-----------|-------------|------------------|------------------------------|--------|--------|
| 0020296 | plumbing | $64,858.54 | Kirby Westheimer | | Wire |

| Request Description | Date | Distribution | Tran Code | Adjusted Amount | Approved By |
|---------------------|------|--------------|-----------|-----------------|-------------|
| From Commitment | 12/22/2008 | $64,858.54 | 1017 | | |
| From Alloc. Retainage | 12/22/2008 | $0.00 | 1010 | | |
| From Deposit | 12/22/2008 | $0.00 | 3040 | | |
| From Alloc. Retainage | 12/22/2008 | $0.00 | | | |
| From Escrow | 12/22/2008 | $0.00 | 3040 | | |
| From Alloc. Retainage | 12/22/2008 | $0.00 | | | |
| Equity Deposit | 12/22/2008 | $0.00 | 3040 | | |
| Equity Escrow | 12/22/2008 | $0.00 | 3040 | | |
| Equity Other | | $0.00 | | | |
| To Alloc. Retainage | | $0.00 | | | |

CHPAVING 756

Mortgage Services
Construction Lending
Report Title: Advance Approval Form (Detail)

Date: 12/22/2008
Time: 10:54:08 AM
Page: 2

---

Note Number:
Borrower Number: 3685
Borrower Name: Kirby Westheimer
Property Address: 210 MERCER ST
Legal Address: See attached
Administrator: TIL

Unit #: 001

Remaining Commitment: $ 1,071,202.41
Remaining Deposit: $ 0.00
Remaining Escrow: $ 0.00
Date Closed: 09/15/2008
Maturity Date: 04/01/2035

| Line-Item | Description | Requested Amount | Vendor/Payee Number and Name | Status | Method |
|-----------|-------------|------------------|------------------------------|--------|--------|
| 0020209 | Supervision | $9,606.17 | Kirby Westheimer | | Wire |

| Request Description | Date | Distribution | Tran Code | Adjusted Amount | Approved By |
|---------------------|------|--------------|-----------|-----------------|-------------|
| From Commitment | 12/22/2008 | $9,606.17 | 1017 | | |
| From Alloc. Retainage | 12/22/2008 | $0.00 | 1010 | | |
| From Deposit | 12/22/2008 | $0.00 | 3040 | | |
| From Alloc. Retainage | 12/22/2008 | $0.00 | 3040 | | |
| From Escrow | 12/22/2008 | $0.00 | 3040 | | |
| From Alloc. Retainage | 12/22/2008 | $0.00 | 3040 | | |
| Equity Deposit | 12/22/2008 | $0.00 | 3040 | | |
| Equity Escrow | 12/22/2008 | $0.00 | 3040 | | |
| Equity Other | | $0.00 | | | |
| To Alloc. Retainage | | $0.00 | | | |

---

Note Number:
Borrower Number: 3685
Borrower Name: Kirby Westheimer
Property Address: 210 MERCER ST
Legal Address: See attached
Administrator: TIL

Unit #: 001

Remaining Commitment: $ 1,071,202.41
Remaining Deposit: $ 0.00
Remaining Escrow: $ 0.00
Date Closed: 09/15/2008
Maturity Date: 04/01/2035

| Line-Item | Description | Requested Amount | Vendor/Payee Number and Name | Status | Method |
|-----------|-------------|------------------|------------------------------|--------|--------|
| 0020223 | Belgian Block | $10,000.00 | Kirby Westheimer | | Wire |

| Request Description | Date | Distribution | Tran Code | Adjusted Amount | Approved By |
|---------------------|------|--------------|-----------|-----------------|-------------|
| From Commitment | 12/22/2008 | $10,000.00 | 1017 | | |
| From Alloc. Retainage | 12/22/2008 | $0.00 | 1010 | | |
| From Deposit | 12/22/2008 | $0.00 | 3040 | | |
| From Alloc. Retainage | 12/22/2008 | $0.00 | 3040 | | |
| From Escrow | 12/22/2008 | $0.00 | 3040 | | |
| From Alloc. Retainage | 12/22/2008 | $0.00 | 3040 | | |
| Equity Deposit | 12/22/2008 | $0.00 | 3040 | | |
| Equity Escrow | 12/22/2008 | $0.00 | 3040 | | |
| Equity Other | | $0.00 | | | |
| To Alloc. Retainage | | $0.00 | | | |

CHPAVING 757

Mortgage Services
Construction Lending
Report Title: Advance Approval Form (Detail)

Date: 12/22/2008
Time: 10:54:08 AM
Page: 3

---

Note Number: ▮▮▮
Borrower Number: 3685
Borrower Name: Kirby Westheimer
Property Address: 210 MERCER ST
Legal Address: See attached
Administrator: TIL

Unit #: 001

Remaining Commitment: $ 1,071,202.41
Remaining Deposit: $ 0.00
Remaining Escrow: $ 0.00
Date Closed: 09/15/2008
Maturity Date: 04/01/2035

| Line-Item | Description | Requested Amount | Vendor/Payee Number and Name | Status | Method |
|-----------|-------------|------------------|------------------------------|--------|--------|
| 0020224 | Paving Labor | $10,000.00 | Kirby Westheimer | | Wire |

| Request Description | Date | Distribution | Tran Code | Adjusted Amount | Approved By |
|---------------------|------|--------------|-----------|-----------------|-------------|
| From Commitment | 12/22/2008 | $10,000.00 | 1017 | | |
| From Alloc. Retainage | 12/22/2008 | $0.00 | 1010 | | |
| From Deposit | 12/22/2008 | $0.00 | 3040 | | |
| From Alloc. Retainage | 12/22/2008 | $0.00 | 3040 | | |
| From Escrow | 12/22/2008 | $0.00 | 3040 | | |
| From Alloc. Retainage | 12/22/2008 | $0.00 | 3040 | | |
| Equity Deposit | 12/22/2008 | $0.00 | 3040 | | |
| Equity Escrow | 12/22/2008 | $0.00 | 3040 | | |
| Equity Other | | $0.00 | | | |
| To Alloc. Retainage | | $0.00 | | | |

---

Note Number: ▮▮▮
Borrower Number: 3685
Borrower Name: Kirby Westheimer
Property Address: 210 MERCER ST
Legal Address: See attached
Administrator: TIL

Unit #: 001

Remaining Commitment: $ 1,071,202.41
Remaining Deposit: $ 0.00
Remaining Escrow: $ 0.00
Date Closed: 09/15/2008
Maturity Date: 04/01/2035

| Line-Item | Description | Requested Amount | Vendor/Payee Number and Name | Status | Method |
|-----------|-------------|------------------|------------------------------|--------|--------|
| 0020232 | Terr And Port Steps | $3,000.00 | Kirby Westheimer | | Wire |

| Request Description | Date | Distribution | Tran Code | Adjusted Amount | Approved By |
|---------------------|------|--------------|-----------|-----------------|-------------|
| From Commitment | 12/22/2008 | $3,000.00 | 1017 | | |
| From Alloc. Retainage | 12/22/2008 | $0.00 | 1010 | | |
| From Deposit | 12/22/2008 | $0.00 | 3040 | | |
| From Alloc. Retainage | 12/22/2008 | $0.00 | 3040 | | |
| From Escrow | 12/22/2008 | $0.00 | 3040 | | |
| From Alloc. Retainage | 12/22/2008 | $0.00 | 3040 | | |
| Equity Deposit | 12/22/2008 | $0.00 | 3040 | | |
| Equity Escrow | 12/22/2008 | $0.00 | 3040 | | |
| Equity Other | | $0.00 | | | |
| To Alloc. Retainage | | $0.00 | | | |

CHPAVING 758

Mortgage Services
Construction Lending
Report Title: Advance Approval Form (Detail)

Date: 12/22/2008
Time: 10:54:08 AM
Page: 4

| Note Number: ▇ | Unit #: 001 | Remaining Commitment: $ 1,071,202.41 |
| Borrower Number: 3685 | | Remaining Deposit: $ 0.00 |
| Borrower Name: Kirby Westheimer | | Remaining Escrow: $ 0.00 |
| Property Address: 210 MERCER ST | | Date Closed: 09/15/2008 |
| Legal Address: See attached | | Maturity Date: 04/01/2035 |
| Administrator: TIL | | |

| Line-Item | Description | Requested Amount | Vendor/Payee Number and Name | Status | Method |
|---|---|---|---|---|---|
| 0020235 | Stone Labor | $17,500.00 | Kirby Westheimer | | Wire |

| Request Description | Date | Distribution | Tran Code | Adjusted Amount | Approved By |
|---|---|---|---|---|---|
| From Commitment | 12/22/2008 | $17,500.00 | 1017 | | |
| From Alloc. Retainage | 12/22/2008 | $0.00 | 1010 | | |
| From Deposit | 12/22/2008 | $0.00 | 3040 | | |
| From Alloc. Retainage | 12/22/2008 | $0.00 | 3040 | | |
| From Escrow | 12/22/2008 | $0.00 | 3040 | | |
| From Alloc. Retainage | 12/22/2008 | $0.00 | 3040 | | |
| Equity Deposit | 12/22/2008 | $0.00 | 3040 | | |
| Equity Escrow | 12/22/2008 | $0.00 | 3040 | | |
| Equity Other | | $0.00 | | | |
| To Alloc. Retainage | | $0.00 | | | |

| Note Number: ▇ | Unit #: 001 | Remaining Commitment: $ 1,071,202.41 |
| Borrower Number: 3685 | | Remaining Deposit: $ 0.00 |
| Borrower Name: Kirby Westheimer | | Remaining Escrow: $ 0.00 |
| Property Address: 210 MERCER ST | | Date Closed: 09/15/2008 |
| Legal Address: See attached | | Maturity Date: 04/01/2035 |
| Administrator: TIL | | |

| Line-Item | Description | Requested Amount | Vendor/Payee Number and Name | Status | Method |
|---|---|---|---|---|---|
| 0020240 | Fireplace Facings | $15,750.00 | Kirby Westheimer | | Wire |

| Request Description | Date | Distribution | Tran Code | Adjusted Amount | Approved By |
|---|---|---|---|---|---|
| From Commitment | 12/22/2008 | $15,750.00 | 1017 | | |
| From Alloc. Retainage | 12/22/2008 | $0.00 | 1010 | | |
| From Deposit | 12/22/2008 | $0.00 | 3040 | | |
| From Alloc. Retainage | 12/22/2008 | $0.00 | 3040 | | |
| From Escrow | 12/22/2008 | $0.00 | 3040 | | |
| From Alloc. Retainage | 12/22/2008 | $0.00 | 3040 | | |
| Equity Deposit | 12/22/2008 | $0.00 | 3040 | | |
| Equity Escrow | 12/22/2008 | $0.00 | 3040 | | |
| Equity Other | | $0.00 | | | |
| To Alloc. Retainage | | $0.00 | | | |

CHPAVING 759

Mortgage Services
Construction Lending
Report Title: Advance Approval Form (Detail)

Date: 12/22/2008
Time: 10:54:08 AM
Page: 5

| Note Number: | | Unit #: 001 | | | Remaining Commitment: $ 1,071,202.41 |
|---|---|---|---|---|---|
| Borrower Number: | 3685 | | | | Remaining Deposit: $ 0.00 |
| Borrower Name: | Kirby Westheimer | | | | Remaining Escrow: $ 0.00 |
| Property Address: | 210 MERCER ST | | | | Date Closed: 09/15/2008 |
| Legal Address: | See attached | | | | Maturity Date: 04/01/2035 |
| Administrator: | TIL | | | | |

| Line-Item | Description | Requested Amount | Vendor/Payee Number and Name | Status | Method |
|---|---|---|---|---|---|
| 0020241 | Slate Roof Material | $1,000.00 | Kirby Westheimer | | Wire |

| Request Description | Date | Distribution | Tran Code | Adjusted Amount | Approved By |
|---|---|---|---|---|---|
| From Commitment | 12/22/2008 | $1,000.00 | 1017 | | |
| From Alloc. Retainage | 12/22/2008 | $0.00 | 1010 | | |
| From Deposit | 12/22/2008 | $0.00 | 3040 | | |
| From Alloc. Retainage | 12/22/2008 | $0.00 | 3040 | | |
| From Escrow | 12/22/2008 | $0.00 | 3040 | | |
| From Alloc. Retainage | 12/22/2008 | $0.00 | 3040 | | |
| Equity Deposit | 12/22/2008 | $0.00 | 3040 | | |
| Equity Escrow | 12/22/2008 | $0.00 | 3040 | | |
| Equity Other | | $0.00 | | | |
| To Alloc. Retainage | | $0.00 | | | |

| Note Number: | | Unit #: 001 | | | Remaining Commitment: $ 1,071,202.41 |
|---|---|---|---|---|---|
| Borrower Number: | 3685 | | | | Remaining Deposit: $ 0.00 |
| Borrower Name: | Kirby Westheimer | | | | Remaining Escrow: $ 0.00 |
| Property Address: | 210 MERCER ST | | | | Date Closed: 09/15/2008 |
| Legal Address: | See attached | | | | Maturity Date: 04/01/2035 |
| Administrator: | TIL | | | | |

| Line-Item | Description | Requested Amount | Vendor/Payee Number and Name | Status | Method |
|---|---|---|---|---|---|
| 0020242 | Stucco New | $10,019.60 | Kirby Westheimer | | Wire |

| Request Description | Date | Distribution | Tran Code | Adjusted Amount | Approved By |
|---|---|---|---|---|---|
| From Commitment | 12/22/2008 | $10,019.60 | 1017 | | |
| From Alloc. Retainage | 12/22/2008 | $0.00 | 1010 | | |
| From Deposit | 12/22/2008 | $0.00 | 3040 | | |
| From Alloc. Retainage | 12/22/2008 | $0.00 | 3040 | | |
| From Escrow | 12/22/2008 | $0.00 | 3040 | | |
| From Alloc. Retainage | 12/22/2008 | $0.00 | 3040 | | |
| Equity Deposit | 12/22/2008 | $0.00 | 3040 | | |
| Equity Escrow | 12/22/2008 | $0.00 | 3040 | | |
| Equity Other | | $0.00 | | | |
| To Alloc. Retainage | | $0.00 | | | |

CHPAVING 760

# EXHIBIT C

Mortgage Services
Construction Lending
Report Title : Cost Breakdown Detail

Date: 12/22/2008
Time: 10:54:21 AM
Page: 1

Name: Kirby Westheimer
Borrower Number: 3685
Officer Code: 241
Account:
Note Number:
Address: 210 MERCER ST
PRINCETON, NJ 08540
Note Date: 9/15/2008
Maturity Date: 4/1/2015

Units: 001

Manager:

Legal Desc: See attached

Current Estimate: $ 2,567,123.42
Current Construction Amount: $ 2,567,123.42

| | Current Commitment: | 1,500,000.00 | Receipt Amt. | Drawn Amt. 428,797.59 | Available Amt. 1,071,202.41 | Princ. Balance $428,797.59 |
| --- | --- | --- | --- | --- | --- | --- |
| | Deposits: | 0.00 | | 0.00 | 0.00 | |
| | Escrow: | 0.00 | | 0.00 | 0.00 | |
| | Equity Deposit: | 0.00 | | 0.00 | 0.00 | |
| | Equity Escrow: | 0.00 | | 0.00 | 0.00 | |
| | Totals: | $1,500,000.00 | | $428,797.59 | $1,071,202.41 | |

| Item | Description | Cost Estimate | Equity Budgeted | Equity Received | Equity Due | Equity Disbursed | Allocated Con/Invest | Hold/ Set Aside | Disbursed Commitment | R % | Drawn Amt. | Retainage Hold | Retainage Released | Retainage Available | Accum. Paydown | Retainage Available | Available Funds | % Drawn |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | | | | | | | | | | | $0.00 | | $428,797.59 | |
| **Construction Costs** | | | | | | | | | | | | | | | | | | |
| 02 02 01 | Permits + surveys | 8,000.00 | 5,449.00 | 5,449.00 | 0.00 | 5,449.00 | 2,551.00 | 0.00 | 2,551.00 | 0.0 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |
| 02 02 02 | PErmit fireicion | 4,516.00 | 4,516.00 | 4,516.00 | 0.00 | 4,516.00 | 0.00 | 0.00 | 0.00 | 0.0 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |
| 02 02 03 | GM taxes | 4,000.00 | 1,483.98 | 1,483.98 | 0.00 | 1,483.98 | 2,516.02 | 0.00 | 2,516.02 | 0.0 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |
| 02 02 04 | GFM taxes | 9,138.39 | 9,138.39 | 9,138.39 | 0.00 | 9,138.39 | 0.00 | 0.00 | 0.00 | 0.0 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |
| 07 ?2 05 | Field Toilet | 2,000.00 | 590.10 | 590.10 | 0.00 | 590.10 | 1,409.90 | 0.00 | 1,499.90 | 0.0 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |
| 0, ,2 06 | Dumpsters | 8,691.35 | 8,691.35 | 8,691.35 | 0.00 | 8,691.35 | 0.00 | 0.00 | 0.00 | 0.0 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |
| 12 02 07 | Site Demo | 2,514.50 | 2,514.50 | 2,514.50 | 0.00 | 2,514.50 | 0.00 | 0.00 | 0.00 | 0.0 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |
| 12 02 08 | Equipment | 2,000.00 | 946.72 | 946.72 | 0.00 | 946.72 | 1,053.28 | 0.00 | 1,053.28 | 0.0 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 100 00% |
| 12 02 09 | Supervision | 36,000.00 | 26,393.83 | 26,393.83 | 0.00 | 26,393.83 | 9,606.17 | 0.00 | 0.00 | 0.0 | 9,606.17 | 0.00 | 0.00 | 0.00 | 0.00 | | 9,606.17 | 73.23% |
| | PENDING : NON-APPROVED | | | | | 0.00 | | | 9,606.17 | | 9,606.17 | 0.00 | 0.00 | | | | | 26.68% |
| | | | | Sub Totals 602 | 82 09 | 26,393.83 | | | | | | | | | | | | 100.00% |
| 12 02 10 | Roof Removal | 3,000.00 | 3,000.00 | 3,000.00 | 0.00 | 3,000.00 | 0.00 | 0.00 | 0.00 | 0.0 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |
| 12 02 11 | Gas relocation | 2,000.00 | 2,000.00 | 2,000.00 | 0.00 | 2,000.00 | 0.00 | 0.00 | 0.00 | 0.0 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |
| 12 02 12 | Mep Demo | 5,000.00 | 5,000.00 | 5,000.00 | 0.00 | 5,000.00 | 0.00 | 0.00 | 0.00 | 0.0 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |
| 12 02 13 | Oil Tank Remediation | 10,000.00 | 9,168.55 | 9,168.55 | 0.00 | 9,168.55 | 831.45 | 0.00 | 831.45 | 0.0 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |
| 12 02 14 | Concrete Cutting | 8,000.00 | 4,700.00 | 4,700.00 | 0.00 | 4,700.00 | 3,300.00 | 0.00 | 3,300.00 | 0.0 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |
| 12 02 15 | Craw lslz demo | 3,000.00 | 3,000.00 | 3,000.00 | 0.00 | 3,000.00 | 0.00 | 0.00 | 0.00 | 0.0 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |
| 12 02 16 | Building demo | 13,164.73 | 13,164.73 | 13,164.73 | 0.00 | 13,164.73 | 0.00 | 0.00 | 0.00 | 0.0 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |

CHPAVING 763

Mortgage Services
Construction Lending
Report Title : Cost Breakdown Detail

Date: 12/22/2008
Time: 10:54:21 AM
Page: 2

| Item | Description | Cost Estimate | Equity Budgeted | Equity Received | Equity Due | Equity Disbursed | Allocated Commitment | Hold/ Set Aside | Disbursed Commitment | R % | Retainage Held | Retainage Released | Retainage Available | Available Funds | % Drawn |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 002 02 17 | Garage demo | 3,000.00 | 3,000.00 | 3,000.00 | 0.00 | 3,000.00 | 0.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |
| 002 02 18 | Grubbing | 1,000.00 | 724.00 | 724.00 | 0.00 | 724.00 | 276.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 276.00 | 72.40% |
| 002 02 19 | Excavation | 6,013.68 | 6,013.68 | 6,013.68 | 0.00 | 6,013.68 | 0.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |
| 002 02 20 | Conc Removal | 2,805.00 | 2,805.00 | 2,805.00 | 0.00 | 2,805.00 | 0.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |
| 002 02 21 | Backfill | 10,000.00 | 5,161.17 | 5,161.17 | 0.00 | 5,161.17 | 4,838.83 | 0.00 | 4,838.83 | 0.0 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |
| J 22 | Grassing Sod | 10,000.00 | 5,000.00 | 5,000.00 | 0.00 | 5,000.00 | 5,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 5,000.00 | 50.00% |
| 002 02 23 | Belgian Block | 20,000.00 | 10,000.00 | 10,000.00 | 0.00 | 10,000.00 | 10,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 10,000.00 | 50.00% |
| | PENDING : NON-APPROVED | | | | | 0.00 | | | | | | 0.00 | | | 50.00% |
| | Sub Total: 002 02 23 | | | | | 10,000.00 | | | 10,000.00 | | | | | | 100.00% |
| 002 02 24 | Paving Labor | 20,000.00 | 10,000.00 | 10,000.00 | 0.00 | 10,000.00 | 10,000.00 | 0.00 | 10,000.00 | 0.0 | 0.00 | 0.00 | 0.00 | 10,000.00 | 50.00% |
| | PENDING : NON-APPROVED | | | | | 0.00 | | | | | | | | | 50.00% |
| | Sub Total: 002 02 24 | | | | | 10,000.00 | | | 10,000.00 | | | | | | 100.00% |
| 02 02 25 | Feetings and Slabs | 23,250.00 | 23,000.00 | 23,000.00 | 0.00 | 23,000.00 | 250.00 | 0.00 | 250.00 | 0.0 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |
| 02 02 26 | Concrete Walls | 26,400.00 | 26,400.00 | 26,400.00 | 0.00 | 26,400.00 | 0.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |
| 02 02 27 | Concrete Wall, Ev | 12,750.00 | 12,750.00 | 12,750.00 | 0.00 | 12,750.00 | 0.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |
| 02 02 28 | Conc walls Pent Step | 50,000.00 | 29,400.00 | 29,400.00 | 0.00 | 29,400.00 | 20,600.00 | 0.00 | 20,600.00 | 0.0 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |
| 02 02 29 | Terr and Pent footin | 20,000.00 | 9,500.00 | 9,500.00 | 0.00 | 9,500.00 | 10,500.00 | 0.00 | 10,500.00 | 0.0 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |
| 02 02 30 | Terrace Slabs | 10,000.00 | 5,000.00 | 5,000.00 | 0.00 | 5,000.00 | 5,000.00 | 0.00 | 5,000.00 | 0.0 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |
| 31 | Slab Stone | 1,500.00 | 873.96 | 873.96 | 0.00 | 873.96 | 626.04 | 0.00 | 626.04 | 0.0 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |
| 02 02 32 | Terr and Pent Steps | 12,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 12,000.00 | 0.00 | 9,000.00 | 0.0 | 0.00 | 0.00 | 0.00 | 3,000.00 | 75.00% |
| | PENDING : NON-APPROVED | | | | | 0.00 | | | 3,000.00 | | | | | 3,000.00 | 25.00% |
| | Sub Total: 002 02 32 | | | | | 0.00 | | | 12,000.00 | | | | | | 100.00% |
| 32 02 33 | Crawl Slabs | 4,000.00 | 4,000.00 | 4,000.00 | 0.00 | 4,000.00 | 0.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |
| 32 02 34 | Brick Fireplace | 16,000.00 | 12,500.00 | 12,500.00 | 0.00 | 12,500.00 | 3,500.00 | 0.00 | 3,500.00 | 0.0 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |
| 32 02 35 | Stone Labor | 50,000.00 | 4,537.87 | 4,537.87 | 0.00 | 4,537.87 | 45,462.13 | 0.00 | 27,962.13 | 0.0 | 0.00 | 0.00 | 0.00 | 17,500.00 | 65.00% |
| | PENDING : NON-APPROVED | | | | | 0.00 | | | 17,500.00 | | | | | | 35.00% |
| | Sub Total: 002 02 35 | | | | | 4,537.87 | | | 45,462.13 | | | | | | 100.00% |
| 32 02 36 | Stone Columns | 17,000.00 | 8,000.00 | 8,000.00 | 0.00 | 8,000.00 | 9,000.00 | 0.00 | 9,000.00 | 0.0 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |
| 32 02 37 | Stone Veneer New | 15,000.00 | 8,050.00 | 8,050.00 | 0.00 | 8,050.00 | 6,950.00 | 0.00 | 6,950.00 | 0.0 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |
| 32 02 39 | Stone Pavers | 15,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 15,000.00 | 0.00 | 11,250.00 | 0.0 | 0.00 | 0.00 | 0.00 | 3,750.00 | 75.00% |

CHPAVING 764

Mortgage Services
Construction Lending
Report Title : Cost Breakdown Detail

Date: 12/22/2008
Time: 10:54:21 AM
Page: 3

| Item | Description | Cost Estimate | Equity Budgeted | Equity Received | Equity Due | Equity Disbursed | Allocated Commitment | Hold/Set Aside | Disbursed Commitment | R % | Retainage Held | Retainage Released | Retainage Available | Available Funds | % Drawn |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 002 02 40 | Fireplace Facings | 21,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 21,000.00 | 0.00 | 5,250.00 | 0.0 | 0.00 | 0.00 | 0.00 | 15,750.00 | 25.00% |
| | PENDING : NON-APPROVED | | | | | | | | 15,750.00 | | 0.00 | 0.00 | | | 75.00% |
| | | | | Sub Total: 002 02 40 | | | | | 21,000.00 | | 0.00 | 0.00 | | | 100.00% |
| 002 02 41 | misc roof material | 26,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 26,000.00 | 0.00 | 25,000.00 | 0.0 | 0.00 | 0.00 | 0.00 | 1,000.00 | 96.15% |
| | PENDING : NON-APPROVED | | | | | | | | 1,000.00 | | 0.00 | 0.00 | | | 3.85% |
| | | | | Sub Total: 002 02 41 | | | | | 26,000.00 | | 0.00 | 0.00 | | | 100.00% |
| 002 02 42 | Stucco Note | 32,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 32,000.00 | 0.00 | 12,800.00 | 0.0 | 0.00 | 0.00 | 0.00 | 19,200.00 | 40.00% |
| | PENDING : NON-APPROVED | | | | | | | | 10,011.60 | | 0.00 | 0.00 | | | 31.31% |
| | | | | Sub Total: 002 02 42 | | | | | 22,819.60 | | 0.00 | 0.00 | | | 71.31% |
| 02 02 43 | Stucco n/at | 20,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 20,000.00 | 0.00 | 4,000.00 | 0.0 | 0.00 | 0.00 | 0.00 | 16,000.00 | 20.00% |
| 02 02 44 | Steel Deck | 15,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 15,000.00 | 0.00 | 15,000.00 | 0.0 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |
| 02 02 45 | Misc Steel | 2,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,000.00 | 0.00 | 2,000.00 | 0.0 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |
| 02 02 46 | Steel Beams | 5,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 5,000.00 | 0.00 | 5,000.00 | 0.0 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |
| 02 02 47 | Bronze Rail | 20,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 20,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 20,000.00 | 0.00% |
| 02 02 48 | Rail labor | 5,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 5,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 5,000.00 | 0.00% |
| 02 02 49 | Framing Material | 20,000.00 | 678.58 | 678.58 | 0.00 | 678.58 | 19,321.42 | 0.00 | 17,321.42 | 0.0 | 0.00 | 0.00 | 0.00 | 2,000.00 | 90.00% |
| 02 02 50 | Framing labor | 40,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 40,000.00 | 0.00 | 36,000.00 | 0.0 | 0.00 | 0.00 | 0.00 | 4,000.00 | 90.00% |
| 02 02 51 | Portico | 10,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 10,000.00 | 30.0% |
| 02 02 52 | Pizza | 10,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10,000.00 | 0.00 | 7,500.00 | 0.0 | 0.00 | 0.00 | 0.00 | 2,500.00 | 75.00% |
| 02 02 53 | ext dormers | 5,505.50 | 5,505.50 | 5,505.50 | 0.00 | 5,505.50 | 0.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |
| 02 02 54 | ext framg materials | 5,554.41 | 5,554.41 | 5,554.41 | 0.00 | 5,554.41 | 0.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |
| 02 02 55 | int framing 123 | 5,000.00 | 5,000.00 | 5,000.00 | 0.00 | 5,000.00 | 0.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |
| 02 02 56 | interior frame B | 26,799.26 | 26,799.26 | 26,799.26 | 0.00 | 26,799.26 | 0.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |
| 02 02 57 | interior frame L Gen | 10,000.00 | 2,706.00 | 2,706.00 | 0.00 | 2,706.00 | 7,294.00 | 0.00 | 2,294.00 | 0.0 | 0.00 | 0.00 | 0.00 | 5,000.00 | 50.00% |
| 02 02 58 | interior frame sub | 10,000.00 | 8,556.70 | 8,556.70 | 0.00 | 8,556.70 | 1,443.30 | 0.00 | 483.53 | 0.0 | 0.00 | 0.00 | 0.00 | 1,443.30 | 83.57% |
| 02 02 59 | Basement framing mat | 3,000.00 | 2,516.47 | 2,516.47 | 0.00 | 2,516.47 | 483.53 | 0.00 | 483.53 | 0.0 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |
| 02 02 60 | basement framing lab | 7,000.00 | 4,756.00 | 4,756.00 | 0.00 | 4,756.00 | 2,244.00 | 0.00 | 2,244.00 | 0.0 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |
| 02 02 61 | Ext trim J | 10,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10,000.00 | 0.00 | 5,000.00 | 0.0 | 0.00 | 0.00 | 0.00 | 5,000.00 | 50.00% |
| 02 02 62 | Ext trim, P | 10,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10,000.00 | 0.00 | 10,000.00 | 0.0 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |
| 02 02 63 | Stairs, prefab | 5,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 5,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 5,000.00 | 0.0% |
| 02 02 64 | Stair labor | 5,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 5,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 5,000.00 | 0.0% |
| 02 02 65 | Ext trim material | 20,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 20,000.00 | 0.00 | 20,000.00 | 0.0 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |

SCHPAVING 765

Mortgage Services
Construction Lending
Report Title : Cost Breakdown Detail

Date: 12/22/2008
Time: 10:54:21 AM
Page: 4

| Item | Description | Cost Estimate | Equity Budgeted | Equity Received | Equity Due | Equity Disbursed | Allocated Commitment | Hold/ Set Aside | Disbursed Commitment | R % | Retainage Held | Retainage Released | Retainage Available | Available Funds | % Drawn |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 002.02.66 | Construction mangemt | 30,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 30,000.00 | 0.00 | 14,400.00 | 0.0 | 0.00 | 0.00 | 0.00 | 15,600.00 | 48.00% |
| 000.02.67 | lst paneling | 60,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 60,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 60,000.00 | 0.00% |
| 002.02.68 | lst paneling,add | 50,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 50,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 50,000.00 | 0.00% |
| 002.02.69 | Cabinets, kitchen | 30,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 30,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 30,000.00 | 0.00% |
| 202.02.70 | Cabinets, bed, pet | 10,589.57 | 0.00 | 0.00 | 0.00 | 0.00 | 10,589.57 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 10,589.57 | 0.00% |
| 171 | Cabinets, bath | 10,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 10,000.00 | 0.00% |
| N02.02.72 | Cabinets, librarys | 20,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 20,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 20,000.00 | 0.00% |
| 002.02.73 | Cabinets, living, en | 10,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 10,000.00 | 0.00% |
| N02.02.74 | Stone counters | 20,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 20,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 20,000.00 | 0.00% |
| 002.02.75 | Roofing, slates new | 40,000.00 | 8,114.80 | 8,114.80 | 0.00 | 8,114.80 | 31,885.20 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 31,885.20 | 20.29% |
| 02.02.76 | Reroof existing | 20,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 20,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 20,000.00 | 0.00% |
| 02.02.77 | Roofing, copper | 17,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 17,000.00 | 0.00 | 17,000.00 | 0.0 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00% |
| 02.02.78 | Copper scope adds | 6,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 6,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 6,000.00 | 0.00% |
| 02.02.79 | Gutters, downspouts | 10,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10,000.00 | 0.00 | 7,500.00 | 0.0 | 0.00 | 0.00 | 0.00 | 2,500.00 | 75.00% |
| 02.02.80 | Insulation | 8,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 8,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 8,000.00 | 0.00% |
| 02.02.81 | Waterproofing | 5,000.00 | 975.00 | 975.00 | 0.00 | 975.00 | 4,025.00 | 0.00 | 1,525.00 | 0.0 | 0.00 | 0.00 | 0.00 | 2,500.00 | 50.00% |
| 02.02.82 | Drainage piping | 2,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,000.00 | 0.00 | 1,500.00 | 0.0 | 0.00 | 0.00 | 0.00 | 500.00 | 75.00% |
| 02.02.83 | windows | 182,683.00 | 134,278.49 | 134,278.49 | 0.00 | 134,278.49 | 48,404.51 | 0.00 | 39,270.36 | 0.0 | 0.00 | 0.00 | 0.00 | 9,134.15 | 95.00% |
| 184 | garage doors | 9,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 9,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 9,000.00 | 0.00% |
| 12.02.85 | interior doors and h | 20,000.00 | 150.00 | 150.00 | 0.00 | 150.00 | 19,850.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 19,850.00 | 0.75% |
| 12.02.86 | painting | 50,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 50,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 50,000.00 | 0.00% |
| 12.02.87 | wood flooring | 15,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 15,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 15,000.00 | 0.00% |
| 02.02.88 | Tile material and la | 29,000.00 | 2,300.00 | 2,300.00 | 0.00 | 2,300.00 | 27,700.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 27,700.00 | 7.67% |
| 02.02.89 | Gypsumboard | 20,000.00 | 875.00 | 875.00 | 0.00 | 875.00 | 19,125.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 19,125.00 | 4.38% |
| 2.02.90 | plaster trim | 10,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10,000.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 10,000.00 | 0.00% |
| 2.02.91 | appliances | 50,000.00 | 3,600.00 | 3,600.00 | 0.00 | 3,600.00 | 46,400.00 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 46,400.00 | 7.20% |
| 2.02.92 | carpet | 29,848.03 | 0.00 | 0.00 | 0.00 | 0.00 | 29,848.03 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 29,848.03 | 0.00% |
| 2.02.93 | elevator | 45,000.00 | 10,000.00 | 10,000.00 | 0.00 | 10,000.00 | 35,000.00 | 0.00 | 3,500.00 | 0.0 | 0.00 | 0.00 | 0.00 | 31,500.00 | 30.00% |
| 2.02.94 | electrical | 67,000.00 | 8,954.66 | 8,954.66 | 0.00 | 8,954.66 | 58,045.34 | 0.00 | 17,107.63 | 0.0 | 0.00 | 0.00 | 0.00 | 40,937.71 | 38.50% |
| | PENDING : NON-APPROVED | | | | | | | | 14,337.71 | | | | | | |
| | Sub Totals 002 02 94 | 65,000.00 | 8,954.66 | 8,954.66 | 0.00 | 8,954.66 | | 0.00 | 31,245.34 | 0.0 | 0.00 | 0.00 | 0.00 | | |
| 2.02.95 | home automation | 65,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 65,000.00 | 0.00 | 19,500.00 | 0.0 | 0.00 | 0.00 | 0.00 | 45,500.00 | 30.00% |

CHPAVING 766

Mortgage Services
Construction Lending
Report Title : Cost Breakdown Detail

Date: 12/22/2008
Time: 10:54:21 AM
Page: 5

| Item | Description | Cost Estimate | Equity Budgeted | Equity Received | Equity Due | Equity Disbursed | Allocated Commitment | Hold/ Set Aside | Disbursed Commitment | R % | Retainage Held | Retainage Released | Retainage Available | Available Funds | % Drawn |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 002 02 96 | plumbing | 170,000.00 | 20,141.46 | 20,141.46 | 0.00 | 20,141.46 | 149,858.54 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 149,858.54 | 11.85% |
| | PENDING : NON-APPROVED | | | | | 0.00 | | | 0.00 | | 0.00 | 0.00 | | | 38.15% |
| | Sub Total 002 02 96 | | | | | 20,141.46 | | | 64,838.54 | | 0.00 | 0.00 | | | 50.00% |
| | | | | | | 20,141.46 | | | 64,838.54 | | 0.00 | 0.00 | | | 50.00% |
| 002 02 97 | HVAC | 110,000.00 | 67,137.00 | 67,137.00 | 0.00 | 67,137.00 | 42,863.00 | 0.00 | 9,863.00 | 0.0 | 0.00 | 0.00 | 0.00 | 33,000.00 | 70.00% |
| 002 02 98 | GM labor | 507,300.00 | 461,951.26 | 461,951.26 | 0.00 | 461,951.26 | 45,348.74 | 0.00 | 0.00 | 0.0 | 0.00 | 0.00 | 0.00 | 45,348.74 | 91.06% |
| 1 99 | cartage | 22,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 22,000.00 | 0.00 | 6,600.00 | 0.0 | 0.00 | 0.00 | 0.00 | 15,600.00 | 30.00% |
| | Sub Total Excluding Pending: | 2,567,123.42 | 1,067,123.42 | 1,067,123.42 | 0.00 | 1,067,123.42 | 1,500,000.00 | 0.00 | 428,797.59 | | 0.00 | 0.00 | 0.00 | 1,071,202.41 | 58.27% |
| | Sub Total Including Pending: | | | | | 1,067,123.42 | | | 584,669.61 | | 0.00 | 0.00 | | 915,330.39 | 64.34% |
| | Final Total Excluding Pending: | $2,567,123.42 | $1,067,123.42 | $1,067,123.42 | $0.00 | $1,067,123.42 | $1,500,000.00 | 0.00 | $428,797.59 | | $0.00 | $0.00 | $0.00 | $1,071,202.41 | 58.27% |
| | Final Total Including Pending: | | | | | $1,067,123.42 | | | $6,053,750.11 | | $0.00 | $0.00 | | -$4,553,750.11 | 277.59% |

Cash Shortage or Outside-Source Equity :    $0.00

CHPAVING 767